**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

DANIEL HUGHES, et al.,

               Plaintiffs,

     -against-

REZA ZARRAB and
TÜRKIYE HALK BANKASI A.Ş., a/k/a
"HALKBANK,"

               Defendants.

Civil Action No: 23-cv-6481 (MKV)

Oral argument requested

---

**MEMORANDUM IN SUPPORT OF DEFENDANT TÜRKIYE HALK BANKASI A.Ş.'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Robert M. Cary (RC2605)
Simon A. Latcovich (admitted *pro hac vice*)
Eden Schiffmann (*pro hac vice* pending)
James W. Kirkpatrick (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024

650 Fifth Avenue, Suite 1500
New York, New York 10019

Phone: (202) 434-5000
Fax:    (202) 434-5029
Email:  rcary@wc.com

*Attorneys for Defendant Türkiye Halk Bankasi A.Ş.*

Dated:  December 22, 2023

## TABLE OF CONTENTS

Page

BACKGROUND ............................................................................................................. 2

ARGUMENT ................................................................................................................... 4

I.     THE COURT LACKS JURISDICTION UNDER THE FOREIGN SOVEREIGN
       IMMUNITIES ACT ............................................................................................... 4

       A.     Halkbank Is an Agency or Instrumentality of Türkiye. ....................................... 5

       B.     No Exception to Immunity Applies. ................................................................. 7

II.    THE ATA'S FOREIGN STATE EXCEPTION BARS PLAINTIFFS' CLAIMS .............. 10

III.   PLAINTIFFS HAVE NOT PLEADED PERSONAL JURISDICTION OVER
       HALKBANK. ....................................................................................................... 10

IV.    THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER THE
       DOCTRINE OF *FORUM NON CONVENIENS*. ..................................................... 15

       A.     Plaintiffs' Decision To Sue in New York Merits Reduced Deference. ................... 16

       B.     Türkiye Is an Adequate Forum for This Dispute. ............................................ 17

       C.     Private and Public Interests Factors Strongly Favor Dismissal. ......................... 18

              1.     Private Interest Factors Strongly Favor Dismissal. ................................ 18

              2.     Public Interest Factors Strongly Favor Dismissal. ................................. 19

       D.     Dismissal Would Comport with the Anti-Terrorism Act's Requirements ............... 20

V.     PLAINTIFFS FAIL TO STATE ANTI-TERRORISM ACT CLAIMS. ........................ 21

       A.     Plaintiffs Fail To Allege a Designated FTO Committed the Attacks at Issue ........... 21

       B.     Plaintiffs Fail To State Aiding-and-Abetting Liability. ..................................... 22

              1.     Plaintiffs Fail To Allege Halkbank's General Awareness That It Had
                     Assumed a Role in Terrorist Activities. ................................................ 23

              2.     Plaintiffs Fail To Allege Halkbank Aided and Abetted the Terrorist
                     Attacks That Injured Plaintiffs ......................................................... 24

       C.     Plaintiffs Fail To State Conspiracy Liability ................................................... 26

       D.     Sixty-three Plaintiffs' Claims Are Time-Barred. ............................................ 28

CONCLUSION .............................................................................................................. 30

# **TABLE OF AUTHORITIES**

Page

## **CASES**

*Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002) ......................................................... 17, 18, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 21, 22

*Base Metal Trading SA v. Russian Aluminum,* 253 F. Supp. 2d 681 (S.D.N.Y. 2003) ................................ 16

*Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021) .......................................... 14

*Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856 (D.C. Cir. 2022) ........................................*passim*

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255 (2017) ...................................... 10, 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................ 14

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022) ............................................ 22

*Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012 (2d Cir. 1993) ...................................... 5

*Corcoran v. N.Y. Power Auth.*, 202 F.3d 530 (2d Cir. 1999) ............................................ 29

*Daou v. BLC Bank, S.A.L.*, 42 F.4th 120 (2d Cir. 2022) ........................................... 9, 12

*Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493 (S.D.N.Y. 2007) ...................................... 19

*Est. of Henkin v. Kuveyt Türk Katilim Bankasi A.Ş.*,
    2023 WL 4850999 (E.D.N.Y. July 28, 2023) ...................................................... 12, 13

*Eur. Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014) .......................................... 7

*Filler v. Hanvit Bank*, 378 F.3d 213 (2d Cir. 2004) ................................................. 6, 7

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) .................................... 14

*Freeman v. HSBC Holdings PLC*, 57 F.4th 66 (2d Cir. 2023) ...................................... 26, 27, 28

*Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006) ................................................. 8

*Goldberg v. UBS AG*, 660 F. Supp. 2d 410 (E.D.N.Y. 2009) .......................................... 20

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) .................................................. 24

*In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71 (2d Cir. 2008) .................................... 6

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659 (2d Cir. 2013) .................................. 10

ii

Page

Cases—continued:

*Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945) ................................................................10

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) ........................................15, 16, 17, 18

*Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759 (2019) ........................................................................8

*Kingstown Cap. Mgmt., L.P. v. Vitek*, 2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020)..................19

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44 (2d Cir. 1991) ..........................................13

*Mercier v. Sheraton Int'l., Inc.*, 981 F.2d 1345 (1st Cir. 1992) ..............................................18

*Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine*, 311 F.3d 488 (2d Cir. 2002) ......... 15, 18

*Murphy v. Korea Asset Mgmt. Corp.*, 421 F. Supp. 2d 627 (S.D.N.Y. 2005) ...............................6, 7

*Norex Petrol., Ltd. v. Access Indus.*, 416 F.3d 146 (2d Cir. 2005) ....................................15, 16, 17

*Northpark Nat'l Bank v. Bankers Tr. Co.*, 572 F. Supp. 520 (S.D.N.Y. 1983)................................14

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) ........................................................8, 9

*Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331 (11th Cir. 2020) ........................................17

*Owens v. Turkiye Halk Bankasi A.S.*, 2021 WL 638975 (S.D.N.Y. Feb. 16, 2021) ...........................*passim*

*Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67 (2d Cir.1998) ............................................28

*Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 476 F.3d 140 (2d Cir. 2007) .....................7

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995)......................................................29

*Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64 (2d Cir. 2003)...........................16, 18

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ..................................................9

*Robinson v. Gov't of Malaysia*, 269 F.3d 133 (2d Cir. 2001) ....................................................5

*Samantar v. Yousuf*, 560 U.S. 305 (2010).............................................................................7

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) .......................................................................4

*Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019)..................................23, 24, 25

Page

Cases—continued:

*Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980) ........................................................... 29

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422 (2007) .................................. 4

*Spencer Stuart Hum. Res. Consultancy (Shanghai) Co. v. Am. Indus. Acquisition Corp.*,
    2017 WL 4570791 (S.D.N.Y. Oct. 12, 2017) ................................................................ 19

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) .......................................................... 13

*Starostenko v. UBS AG (A Swiss Bank)*, 2023 WL 34947 (S.D.N.Y. Jan. 4, 2023) .................. 13

*Strauss v. Credit Lyonnais, S.A.*, 2007 WL 2296832 (E.D.N.Y. Aug. 6, 2007) ................... 29, 30

*Türedi v. Coca Cola Co.*, 460 F. Supp. 2d 507 (S.D.N.Y. 2006) ............................................. 19

*Türedi v. Coca-Cola Co.*, 343 F. App'x 623 (2d Cir. 2009) ....................................... 15, 17, 18

*Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264 (2023) ........................................... 5

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) ..................................................... 21, 24, 25, 26

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135 (2d Cir. 2001) .............. 10

*United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336 (2d Cir. 2021) ............................. 6, 9

*Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230 (2d Cir. 2002) .................... 5, 9

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) ................................... 10, 11

*Wilson v. Eckhaus*, 349 F. App'x 649 (2d Cir. 2009) .............................................................. 19, 20

*Wilson v. ImageSat Intern. N.V.*, 2008 WL 2851511 (S.D.N.Y. July 22, 2008),
    *as amended* (July 30, 2008) .......................................................................................... 19

**STATUTES**

8 U.S.C. § 1189 ....................................................................................................................... 21

18 U.S.C.
    § 2333 ............................................................................................................................. 10
    § 2333(d) ......................................................................................................................... 23
    § 2333(d)(2) .............................................................................................................*passim*
    § 2334(d) ....................................................................................................................... 15, 20

Page

Statutes—continued:

18 U.S.C.—continued:
  § 2334(d)(1) ........................................................................................................20
  § 2334(d)(2) ........................................................................................................20
  § 2334(d)(3) ........................................................................................................20
  § 2335(a) ..............................................................................................................28
  § 2337(2) ..........................................................................................................1, 10

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ....................................*passim*
  § 1603(a) ................................................................................................................5
  § 1603(b) ................................................................................................................5
  § 1603(b)(2) .........................................................................................................5, 6
  § 1604 .................................................................................................................4, 6
  § 1605(a)(2) ...........................................................................................................8
  § 1605A(a) .............................................................................................................7
  § 1605B(b) .............................................................................................................7
  § 1605B(b)-(c) ......................................................................................................10

Anti-Terrorism Act, Pub. L. No. 101-519, 104 Stat. 2240 (1990) ............................*passim*

Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632 (2013)...............................................29

## OTHER AUTHORITIES

Ali Alfoneh, *How Intertwined Are the Revolutionary Guards in Iran's Economy?*,
  AEI (Oct. 22, 2007) ..............................................................................................12

*Dependence on Oil from Iran*, Wash. Post (Jan. 13, 2012), https://tinyurl.com/52nbddan ........................2

*Gravamen, Black's Law Dictionary* (11th ed. 2019)................................................................8

Restatement (First) Conflict of Laws § 377 cmt. a, note 1 (Am. Law Inst. 1934)...................9

Statement by Sec. Clinton Regarding Significant Reduction of Iranian Crude Oil Purchases
  (Jun. 11, 2012), http://tinyurl.com/5n7x53dp .......................................................................2

*Turkish Soldier Killed in Attack on Embassy Vehicle in Kabul*, Associated Press (Feb. 26, 2015),
  http://tinyurl.com/yc7dtmvv ...................................................................................................1

The Complaint alleges that Türkiye Halk Bankasi A.Ş. ("Halkbank"), a Turkish state bank, aided and abetted or conspired to commit terrorist attacks against U.S. troops in Afghanistan.

That is false.  Halkbank abhors terrorism and denies the Complaint's allegations in the strongest possible terms.  Türkiye and the United States are NATO allies. Turkish soldiers served alongside U.S. soldiers in Afghanistan during all relevant times, and died there from similar terrorist attacks.[1]  The notion that a Turkish state bank would aid and abet terrorist attacks on the troops of a NATO ally serving alongside Turkish soldiers defies reason and is offensive.  This incoherence alone should doom Plaintiffs' Complaint, but the Complaint fails for numerous other reasons as well.

First, Plaintiffs fail to clear several jurisdictional hurdles.  Because it is majority-owned by Türkiye, Halkbank is entitled to sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "FSIA").  The Anti-Terrorism Act ("ATA") also expressly carves foreign sovereigns out of ATA liability.  18 U.S.C. § 2337(2).  Plaintiffs also failed to plead personal jurisdiction over Halkbank, and this Court should separately dismiss the Complaint for *forum non conveniens*.

Plaintiffs' claims only get worse if the Court reaches the merits.  Halkbank processed U.S.-authorized purchases of Iranian oil on behalf of Türkiye.  Plaintiffs allege that because certain transfers involving these oil proceeds violated U.S. sanctions and benefitted Iran, Halkbank aided and abetted or conspired to commit all terrorist attacks committed by groups with any ties to Iran.  But Plaintiffs cannot tie Halkbank's alleged sanctions evasion to terrorism, much less the attacks at issue in this case. They do not allege that any of the funds that evaded sanctions funded terrorism, or that anyone at Halkbank ever expressed knowledge of or intent to support terrorism.  Courts have rejected similar attempts to conflate alleged sanctions violations with terrorism, confirming that the ATA's text requires conscious, voluntary, culpable, or intentional participation *in terrorism*.

---

[1] *E.g.*, *Turkish Soldier Killed in Attack on Embassy Vehicle in Kabul*, Associated Press (Feb. 26, 2015), http://tinyurl.com/yc7dtmvv.

Plaintiffs further fail to plausibly allege that the attacks here were committed by designated terrorist organizations, as the ATA requires. They also fail to state a claim for aiding and abetting liability because they cannot plead that Halkbank was "generally aware" that it was "assuming a role in terrorist activities," much less that it "aided and abetted" the attacks at issue. Plaintiffs fail to allege that Halkbank "conspired" with the terrorists, because they fail to allege any agreement or "common intent." And sixty-three plaintiffs' claims are time-barred. The Complaint should be dismissed.

## BACKGROUND

From 2012 to 2016, the United States imposed sanctions targeting Iran's oil industry in an effort to put pressure on Iran's economy. *See, e.g.*, Statement by Sec. Clinton Regarding Significant Reduction of Iranian Crude Oil Purchases (Jun. 11, 2012), http://tinyurl.com/5n7x53dp.

Access to Iranian oil was, however, critical to sustaining the economies of principal United States allies that lack their own oil reserves—particularly Japan, India, South Korea, and Türkiye. *See Dependence on Oil from Iran*, Wash. Post (Jan. 13, 2012), https://tinyurl.com/52nbddan; ECF 1 ("Compl.") ¶ 83. Accordingly, U.S. Secretaries of State Clinton and Kerry specifically approved these nations' continued purchase of Iranian oil, based on their findings that these nations had "significantly reduced" the volume of those purchases. *See, e.g.*, Statement by Sec. Clinton, *supra*. At all relevant times, the United States expressly *approved* Turkish government purchases of oil and gas from Iran, including from the National Iranian Oil Company ("NIOC").

NIOC's proceeds from these lawful sales to Türkiye were deposited at Halkbank accounts located in Türkiye. Compl. ¶ 83. Although Plaintiffs assert that Iran's "money was effectively frozen" in these accounts, *id.*, Plaintiffs elsewhere acknowledge that at all times NIOC was permitted to use its oil funds at Halkbank for various approved purposes, such as purchasing gold and other goods in Türkiye that would be "repatriated to Iran," *id.* ¶ 88, or to purchase "humanitarian" products such as "food and medicine," *id.* ¶ 93. (Plaintiffs also allege that Iran's "money is fungible." *Id.* ¶ 25.)

Plaintiffs allege, however, that Halkbank participated in a scheme with co-defendant Reza Zarrab, NIOC, Iranian officials, and others to give Iran unfettered access to the funds held at Halkbank.  *Id.* ¶¶ 84, 93.  Halkbank denies these allegations.

According to the Complaint, former Halkbank employees helped "coach[] … Zarrab [how to] fill out required paperwork to give the appearance of compliance with sanctions laws."  *Id.* ¶ 87.  Plaintiffs allege that NIOC was therefore able to move oil money from NIOC accounts to accounts of businesses controlled by Zarrab.  *Id.* ¶ 84.  Zarrab then allegedly used the Iranian funds to "purchase gold in Türkiye from a third party" under the false pretenses that he was engaging in permitted gold transactions intended for repatriation to Iran.  *Id.* ¶ 84.

Instead, Zarrab allegedly "exported [gold] to [his] companies in Dubai, which sold it to another third party," thus converting the gold to cash.  *Id.*  "Zarrab would then take instructions from his [alleged Iranian] co-conspirators about what to do with the proceeds of the gold sale," including "mak[ing] payments on [Iran's] behalf."  *Id.*  At some point, Zarrab allegedly replaced fraudulent gold transactions with fraudulent food and medicine transactions.  *Id.* ¶ 93.  Plaintiffs allege that—several steps *after* leaving Halkbank—some of the proceeds of the fraudulent transactions were processed by U.S. banks when Zarrab fulfilled certain Iranian payment requests.  *Id.* ¶ 84.  Plaintiffs do not allege that Halkbank had any control over the funds the scheme produced after the money left Halkbank, nor that Halkbank directed or knew that the funds would pass through the United States.

Plaintiffs allege that NIOC was itself controlled by a division of the Iranian Revolutionary Guard Corps ("IRGC"), that a *separate* division of the IRGC supported al-Qaeda and the Taliban, and that al-Qaeda and the Taliban in turn allegedly "planned and executed attacks on Americans in Afghanistan."  *See id.* ¶¶ 22-39.

Plaintiffs are 151 American service members and civilians, or the estates, survivors, or heirs of those service members and civilians, who were killed or injured in twenty-seven terrorist attacks

3

between 2012 and 2020 in Afghanistan or Syria. *Id.* ¶ 4. On July 26, 2023, Plaintiffs filed the instant lawsuit against Halkbank and Zarrab. ECF 1. Plaintiffs claim that Halkbank's participation in the alleged sanctions evasion scheme makes it liable for aiding and abetting the attacks against Plaintiffs, or of conspiring with the terrorists who committed those attacks. *See* 18 U.S.C. § 2333(d)(2).

Plaintiffs do not allege that any of the specific money Iran gained access to through the scheme was used to support, plan, or commit the attacks at issue. Plaintiffs do not allege that Halkbank or any of its employees knew about any of these attacks, much less that Halkbank or any of its employees planned or participated in any of the attacks. Nor do Plaintiffs allege that Halkbank or any of its employees at any time expressed support for terrorism, or even acknowledged that helping NIOC access its funds could or would fund terrorism.

Instead, Plaintiffs assert that Halkbank is liable for conspiring with terrorists or aiding and abetting specified terrorist acts because it helped NIOC improperly gain increased access to its oil revenues, at a time when Halkbank should have known that NIOC was controlled by a division of the IRGC, and that a different division of the IRGC provided support to the Taliban and al-Qaeda, and that the Taliban and al-Qaeda would commit attacks against U.S. persons in Afghanistan and Syria.

## **ARGUMENT**

## I.   **THE COURT LACKS JURISDICTION UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.**[2]

"The [FSIA] provides the sole basis for obtaining [civil] jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (internal quotation marks omitted); *see* 28 U.S.C. § 1604. To invoke immunity, Halkbank "must present a prima facie case" that

---

[2] This Court can "choose among threshold grounds for denying audience to a case on the merits," relying on any of the foreign sovereign immunity, personal jurisdiction, or *forum non conveniens* grounds discussed below without deciding the other issues presented by the motion. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425, 431 (2007) (citation omitted).

it falls within the statutory definition of a "foreign state." *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241, 242 (2d Cir. 2002) (cleaned up); *see* 28 U.S.C. § 1603(a)-(b). Plaintiffs must then show that an immunity exception applies. *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993). Courts consider "factual submissions, including affidavits, submitted to the court in order to resolve a factual dispute." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140-41 (2d Cir. 2001).[3]

### A.   Halkbank Is an Agency or Instrumentality of Türkiye.

The FSIA's definition of "foreign state" includes any "agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). To qualify as an "agency or instrumentality," an entity must (1) be "a separate legal person, corporate or otherwise"; (2) be "an organ of a foreign state" *or* have "a majority of [its] shares or other ownership interest … owned by a foreign state"; and (3) be neither a citizen of a U.S. State nor be created under the laws of any third country. *Id.* § 1603(b). There is no dispute that Halkbank meets the first and third requirements; it is a corporation "headquartered in Türkiye," Compl. ¶ 5, and Plaintiffs do not dispute that Halkbank is "organized under Turkish law," Yasin Decl. ¶ 2.1; *see* Compl. ¶¶ 8, 60, ECF 23 at 1.

The remaining requirement is that Halkbank must be either majority-"owned by a foreign state" or "an organ of a foreign state." 28 U.S.C. § 1603(b)(2). Halkbank is both.

In the first instance, 91.49% of Halkbank's shares are directly owned by the Republic of Türkiye. Yasin Decl. ¶ 2.3; Sevimli Decl. ¶ 5; *see Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 267 (2023) (Halkbank is "a bank owned by the Republic of Turkey"); *id.* at 282 (Gorsuch, J.) ("Halkbank is a corporation that is majority-owned by the government of Turkey. Accordingly, it

---

[3] In support of its immunity, *forum non conveniens*, and statute of limitations arguments, Halkbank respectfully submits the Declarations of Dr. Melikşah Yasin ("Yasin Decl."), an expert in Turkish administrative law; Dr. Nuray Ekşi ("Ekşi Decl."), an expert in Turkish private law; Mehmet Sevimli ("Sevimli Decl."), Halkbank's Chief Legal Advisor; and Robert M. Cary ("Cary Decl."), an attorney at Williams & Connolly LLP and counsel for Halkbank.

qualifies as a foreign state entitled to immunity from suit under § 1604.") (citation omitted); *United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336, 341-42 & n.8 (2d Cir. 2021) (same).

Plaintiffs mistakenly dispute that Türkiye "directly" owns Halkbank shares, Compl. ¶ 60, alleging that Halkbank's shares are "owned by the [Turkish] Wealth Fund, a sovereign wealth fund … owned by the Government of Türkiye," *id.* ¶ 8.  As Halkbank's Turkish administrative law expert explains, however, Halkbank's shares are "owned by the state directly."  Yasin Decl. ¶ 3.1.  Although they are "held *as part of* the [Turkish Wealth Fund] bundle of assets," that fund "does not have a legal entity status and is a portfolio, which consists of a bundle of commodity assets." *Id.* (emphasis added). The "Turkish Wealth Fund" is just the name of the portfolio of assets in which Türkiye directly holds Halkbank (and other) shares.  Türkiye itself remains the direct owner.  *See id.*; Amicus Br. of Republic of Türkiye 13-14, *United States v. Turkiye Halk Bankasi A.S.*, No. 20-3499 (2d Cir. Aug. 9, 2023).

Halkbank also qualifies for sovereign immunity as an "organ of a foreign state."  28 U.S.C. § 1603(b)(2).  "[T]he term 'organ' should be interpreted broadly," and could include "a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, [or] an export association." *Murphy v. Korea Asset Mgmt. Corp.*, 421 F. Supp. 2d 627, 640 (S.D.N.Y. 2005) (citations omitted), *aff'd*, 190 F. App'x 43 (2d Cir. 2006).

"Although there is no specific test for 'organ' status under the FSIA," the Second Circuit has identified five "relevant" factors: "(1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the foreign country; and (5) how the entity is treated under foreign state law." *Filler v. Hanwit Bank*, 378 F.3d 213, 217 (2d Cir. 2004).  This is "a balancing process, without particular emphasis on any given factor and without requiring that every factor" is satisfied.  *In re Terrorist Attacks*

*on Sept. 11, 2001*, 538 F.3d 71, 85 (2d Cir. 2008) (quoting *Murphy*, 421 F. Supp. 2d at 641), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010).  Halkbank is clearly an organ of Türkiye:

*First*, the Turkish Legislature created Halkbank by statute for the purpose of providing credit to particular industries and developing the Turkish economy.  Yasin Decl. ¶ 2.2; Sevimli Decl. ¶ 3.

*Second*, Halkbank performs numerous functions ordinarily associated with government action.  It provides loans backed by the Turkish treasury.  Sevimli Decl. ¶ 9(b); Yasin Decl. ¶ 2.6.  It collects taxes on behalf of the government.  Yasin Decl. ¶ 2.6; Sevimli Decl. ¶ 9(a).  And it operates several government programs, including additional loan and social safety net programs and offers government-sponsored relief during national emergencies.  Sevimli Decl. ¶ 9(c)-(d); Yasin Decl. ¶ 2.6.  These are "quintessential government purpose[s]."  *See, e.g.*, *Murphy*, 421 F. Supp. 2d at 642.

*Third*, the Turkish government—which owns more than 91% of Halkbank's shares—"actively supervises" Halkbank.  *Filler*, 378 F.3d at 217.  The Minister of Treasury and Finance exercises the government's ownership, "determine[s] the board of directors of the bank and hence the senior management" of Halkbank, and has ultimate authority over the administration of the bank.  Yasin Decl. ¶ 2.7; Sevimli Decl. ¶ 7.  And various government agencies also conduct oversight through state audits that apply only to public entities.  Yasin Decl. ¶ 2.4; Sevimli Decl. ¶ 7.  This degree of direct government involvement amply satisfies the supervision factor.  *See Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 476 F.3d 140, 143 (2d Cir. 2007) (per curiam); *Eur. Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 145 (2d Cir. 2014), *reversed on other grounds*, 579 U.S. 325 (2016).

### B.     No Exception to Immunity Applies.

Congress abrogated immunity for terrorism claims in only two, narrow circumstances: *first*, for some claims against "designated … state sponsor[s] of terrorism," 28 U.S.C. § 1605A(a); and *second*, for certain injuries "caused by … an act of international terrorism *in the United States*," *id.* § 1605B(b)

(emphasis added).  Because Halkbank is not a designated state sponsor of terrorism and the alleged attacks occurred overseas, neither terrorism exception applies.  Plaintiffs do not assert otherwise.

Plaintiffs instead try to circumvent the terrorism exceptions by shoehorning their ATA claims into the commercial-activities exception.  *See* Compl. ¶ 60.  But that exception, which exists "to enable persons doing business with [foreign sovereigns] to have their rights determined in the courts," *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 766 (2019) (cleaned up), also does not apply.

The commercial-activities exception requires that the action be "based upon": (1) "a commercial activity carried on in the United States by the foreign state"; (2) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).

An action "is 'based upon' the particular conduct that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015).  The test "zeroe[s] in on the core of the[] suit" or its "foundation"—the "acts that actually injured" the plaintiffs.  *Id.* at 34-36; *see Gravamen*, *Black's Law Dictionary* (11th ed. 2019) ("The substantial point or essence of a claim.").

The acts "that actually injured" Plaintiffs are twenty-seven overseas terrorist attacks.  *See OBB*, 577 U.S. at 35.  Overseas acts implicate only the exception's third prong.  But the attacks were not "in connection with a commercial activity of" Halkbank.  28 U.S.C. § 1605(a)(2).  That term is used "narrowly" to require "a 'substantive connection' or a 'causal link,'" rather than an "attenuated connection."  *Garb v. Republic of Poland*, 440 F.3d 579, 587 (2d Cir. 2006).  Nor have Plaintiffs alleged that the terrorist acts caused any "direct effect in the United States," as 28 U.S.C. § 1605(a)(2) requires.

Plaintiffs may argue their claims are based upon Halkbank's alleged acts in Türkiye, namely facilitation of Iran's sanctions-evasion scheme.  Even as to those acts, Plaintiffs fail to allege a "direct effect in the United States" for two reasons.  *Id.*  First, in tort cases under the FSIA, "the place where

a direct effect is felt [is] the tort's locus, which is usually the place where the damage was sustained." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 137 (2d Cir. 2022) (cleaned up).  Where the tort arises from "a person sustain[ing] bodily harm," the locus is "where the harmful force takes effect upon the body." Restatement (First) Conflict of Laws § 377 cmt. a, note 1 (Am. Law Inst. 1934), *cited in Daou*, 42 F.4th at 137.  If anywhere, the direct effect of Halkbank's alleged conduct was felt in Afghanistan or Syria.

Second, Plaintiffs fail to allege *any* sufficiently "direct" effect of Halkbank's conduct.  A direct effect in the United States must follow "as an *immediate* consequence of the defendant's activity." *Virtual Countries*, 300 F.3d at 236 (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992)). "'[T]he requisite immediacy' is lacking" if the effect turns "on variables independent of" defendant's conduct.  *Daou*, 42 F.4th at 137 (cleaned up).  Plaintiffs allege that $1 billion passed through U.S. correspondent accounts as a result of the scheme.  Compl. ¶¶ 61, 84.  But the Complaint alleges that those transfers happened several transactions *after* the funds left Halkbank.  *Id.* ¶ 84.  Plaintiffs allege that *Zarrab* initiated those transactions based on "instructions *from his IRGC co-conspirator*s"—and never allege that Halkbank knew about or directed those transfers.  *Id.* (emphases added).

Plaintiffs' Complaint cites to *Turkiye Halk Bankasi A.S.*, 16 F.4th 336, which held the commercial-activities exception was satisfied in Halkbank's criminal case.  Compl. ¶ 60.  But that vacated opinion does not apply here because Plaintiffs' claims are different from the government's charges.  The government charged Halkbank with evading sanctions for the purpose of laundering funds "through the U.S. financial system," and with defrauding the United States by "l[ying] to Treasury officials."  16 F.4th at 348.  According to the government, its charges *turn on* whether Halkbank targeted U.S. banks or lied to the U.S. government.  In contrast, Plaintiffs' claims do not turn at all on any U.S. nexus, so Halkbank's U.S. conduct is neither the gravamen of Plaintiffs' claims nor the direct effect of Halkbank's core conduct.  *OBB*, 577 U.S. at 35.

## II.  THE ATA'S FOREIGN STATE EXCEPTION BARS PLAINTIFFS' CLAIMS.

The ATA's text categorically excludes claims against foreign sovereigns.  The statute provides that "[n]o action shall be maintained under [18 U.S.C. § 2333] against— … a foreign state [or] an agency of a foreign state."  18 U.S.C. § 2337(2).  That bar plainly precludes ATA claims against Halkbank.  *See* Part I.A, *supra*.  Congress enacted only one exception, and it does not apply here: U.S. nationals "may bring a claim against a foreign state in accordance with section 2333" for "physical injury to person or property or death occurring *in the United States*."  28 U.S.C. § 1605B(b)-(c) (emphasis added).  That exception does not apply because Plaintiffs' physical injuries occurred abroad.

## III.  PLAINTIFFS HAVE NOT PLEADED PERSONAL JURISDICTION OVER HALKBANK.

Under the Due Process Clause, personal jurisdiction requires that Halkbank have "certain minimum contacts" with the forum.  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Here, Plaintiffs must make a "prima facie showing" that Halkbank has such contacts with the United States.  *Id.*[4]  In assessing Plaintiffs' allegations, the Court does not "draw argumentative inferences in the plaintiff's favor," nor "accept as true … legal conclusion[s] couched as a factual allegation."  *Id.* (citation omitted).

Plaintiffs assert only specific personal jurisdiction, *see* Compl. ¶ 61, which requires "purposefully directed contact with the forum."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 338 (2d Cir. 2016).  Plaintiffs must also show that "the suit … arise[s] out of or relate[s] to" those contacts.  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (cleaned up).  That requires "a connection between the forum and the *specific claims* at issue."  *Id.* at 265 (emphasis added).  None of Plaintiffs' three theories of personal jurisdiction suffices.

---

[4] Because Halkbank is a foreign state for FSIA purposes, contacts are measured "throughout the United States."  *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 263 (2d Cir. 2001).

（空）

*First*, Plaintiffs claim personal jurisdiction because "Defendants deliberately chose to launder at least approximately $1 billion through correspondent accounts at U.S. financial institutions." Compl. ¶ 61. But Plaintiffs never allege facts showing that Halkbank knew, directed, or deliberately chose that any funds should pass through U.S. financial institutions. To the contrary, Plaintiffs' only factual allegations about these transactions are that, several steps after the funds left Halkbank (and indeed Türkiye), *Zarrab* initiated international payment transactions based on "instructions *from his IRGC co-conspirators*." Compl. ¶ 84 (emphasis added). There are no allegations that *Halkbank* "purposefully directed" these funds to the United States. *Waldman*, 835 F.3d at 338.

Even if Plaintiffs could plead that Halkbank itself had directed $1 billion through U.S. banks, Plaintiffs have not alleged any connection between these funds and Plaintiffs' "specific claims." *See Bristol-Myers*, 582 U.S. at 265. Courts have rejected personal jurisdiction in similar cases. For example, in *Bernhardt v. Islamic Republic of Iran*, plaintiffs alleged that HSBC "helped foreign banks evade U.S. sanctions" by "manually scrub[bing] all references to Iran or a sanctioned entity, which would allow otherwise illegal transactions to pass through" U.S. banks. 47 F.4th 856, 860, 862 (D.C. Cir. 2022), *cert. denied sub nom.*, *Bernhardt v. HSBC Holdings PLC*, No. 23-18, 2023 WL 6558423 (U.S. Oct. 10, 2023). HSBC allegedly helped move "more than $19.4 billion through U.S. financial institutions" including to benefit "customers with terrorism ties" that included Iran, al-Qaeda, and Hezbollah. *Id.* at 862-63. Like here, the plaintiffs alleged that HSBC's laundering funds through the United States to these terrorist-linked organizations created ATA aiding-and-abetting and conspiracy liability for a subsequent attack by the affiliated terrorists. *Id.* at 863.

The district court dismissed for lack of personal jurisdiction because plaintiffs "failed to link HSBC's financial malfeasance [in the United States] to [the] al-Qaeda[] suicide attack" from which the claims arose. *Id.* The D.C. Circuit agreed, holding that plaintiffs failed to allege "that the injuries from the [terrorist] bombing arose out of or related to the … defendants' sanctions evasion." *Id.* at 864.

HSBC's clients' or their Iranian-government owners' support for terrorism is "not enough to allow us to infer … that the … defendants' conduct was related to [plaintiffs'] injuries at al-Qaeda's hand." *Id.* at 864-65. Because Iran and the terrorist-linked banks had "legitimate agencies, operations, and programs," their "involvement does not support an inference that [plaintiffs'] injuries sufficiently related to [defendant's] conduct because aid to [that intermediary] could just as plausibly benefit its otherwise legitimate operations rather than al-Qaeda." *Id.* at 865 (cleaned up).

A district court in this circuit recently reached the same result, concluding that a bank's transfer of funds *to a Hamas affiliate* through U.S. correspondent accounts failed to show the required "strong relationship" to the plaintiffs' injury from a subsequent Hamas attack. *Est. of Henkin v. Kuveyt Türk Katilim Bankasi A.Ş.*, 2023 WL 4850999, at *2-3 (E.D.N.Y. July 28, 2023) (citation omitted). The connection between the transfers and the plaintiffs' claims was "far too tenuous," including because the plaintiffs could not allege a "relationship between these transfers and the attacks at issue outside of [the affiliate's] connection to Hamas in general." *Id.* at *3. The court could have "no idea whether those funds were used" for "one of the innumerable … legitimate costs incurred by" the affiliate "or whether they were passed on to Hamas and used to fund terrorist attacks." *Id.* "It cannot be that any transfer of money made on behalf of an agent of a large organization is presumptively related to any action that any member of that organization takes." *Id.* As in this case, there was no plausible allegation that the defendant "used any actual, specific transaction … in the course of bringing about the injuries on which the claims are predicated." *Id.* at *4 (quoting *Daou*, 42 F.4th at 132).

Just so here. NIOC operates some of the world's largest oil reserves and engages in permitted oil sales around the world, including oil sales to Türkiye specifically approved by U.S. Secretaries of State. And the IRGC is "an economic powerhouse" that serves as "the dominant player in large infrastructure projects" in Iran. Ali Alfoneh, *How Intertwined Are the Revolutionary Guards in Iran's Economy?*, AEI (Oct. 22, 2007) (incorporated by reference at Compl. ¶¶ 24 & n.14, 26); *see id.* (IRGC

participates in businesses from the "consumer goods" and "oil and gas sectors," to constructing "dams, water diversion system[s], highways, tunnels, buildings," etc.). Halkbank's alleged sanctions evasion could "just as plausibly" have benefited those legitimate activities rather than al-Qaeda or the Taliban. *Bernhardt*, 47 F.4th at 865. Because Plaintiffs fail to plead any "relation between the sanctions evasion by [Halkbank] and the injuries suffered in the terrorist attack[s]," they cannot show that their claims arise out of or relate to Halkbank's alleged involvement in sanctions evasion. *Id.* at 866.

*Second*, Plaintiffs claim personal jurisdiction because "Defendants' representatives traveled to the United States to lie to Treasury Department officials." Compl. ¶ 61; *see id.* ¶ 92. Again, Plaintiffs fail to connect these particular meetings to their particular claims, asserting no connection between the meetings and the attacks that injured them. *See supra* (discussing *Bernhardt* and *Est. of Henkin*).

Indeed, because these meetings are isolated rather than continuous events, Plaintiffs face an even higher burden. "The Second Circuit has established a sliding scale to determine whether a defendant's in-forum activities are sufficient to support the exercise of specific jurisdiction," whereby more limited contacts must be more closely tied to the plaintiff's injury. *Starostenko v. UBS AG (A Swiss Bank)*, 2023 WL 34947, at *7 (S.D.N.Y. Jan. 4, 2023). For example, "[w]here the defendant has had only limited contacts with the [forum] it may be appropriate to say that he will be subject to suit … only if the plaintiff's injury was *proximately caused* by those contacts." *Id.* (emphasis added) (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018)). Where Halkbank's only direct contact with the United States is a few isolated meetings, Plaintiffs must show a particularly close connection between those meetings and the terrorist attacks at issue here. Plaintiffs allege no connection.

The alleged meetings are jurisdictionally irrelevant for another reason. Courts in the Second Circuit and elsewhere have observed that "government contacts" in the forum are entitled to particularly little weight. *See, e.g., Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 51 (2d Cir. 1991). That is because communicating

with the government "does not have all the earmarks of an affirmative act, voluntarily engaged in by the affected defendant." *Northpark Nat'l Bank v. Bankers Tr. Co.*, 572 F. Supp. 520, 522 n.6 (S.D.N.Y. 1983). Instead, the "*character*" of such contacts "requires [courts] to exclude them from the calculus of 'minimum contacts' that make it fair and reasonable to compel the defendant to try the action in the forum state." *See id.* at 522 (cleaned up); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (explaining that action must arise out of contacts that "the defendant *himself*" creates); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) ("The contacts must be the defendant's own choice."); Compl. ¶ 92 (alleging U.S. officials "reached out" to Halkbank).

Finally, Plaintiffs' meeting allegations are fatally vague. Plaintiffs allege generally that U.S. officials met Halkbank "in Istanbul *and* in Washington, D.C." Compl. ¶ 92 (emphasis added). Plaintiffs then assert that Halkbank lied at one or more of the meetings, but fail to say where those lies occurred, and what lies Halkbank told in the United States as opposed to Istanbul. Plaintiffs cannot plead personal jurisdiction by lumping together U.S. and foreign conduct and asserting that *some*, unspecified and purportedly wrongful part of it occurred in the United States. *Cf. Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021) ("group pleading" is insufficient).

*Third*, Plaintiffs allege personal jurisdiction because "Defendants participated in a conspiracy to influence U.S. foreign policy through terrorism, thus directing conduct at the United States." Compl. ¶ 61. But Plaintiffs entirely fail to plead such a conspiracy; they nowhere allege when and how Halkbank joined such a conspiracy, nor any factual allegations that suggest that Halkbank sought to alter U.S. foreign policy through terrorism. That is unsurprising, given Türkiye's support for the U.S. and NATO missions in Afghanistan. *See supra* p.1. And Plaintiffs make no effort to show that their terrorism injuries arise from or relate to Halkbank joining this (nonexistent) conspiracy.

## IV.   THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*.

Alternatively, this Court should dismiss the case under the doctrine of *forum non conveniens* in favor of a Turkish court.  Recently, in a decision affirmed by the Second Circuit, another court in this district dismissed on *forum non conveniens* grounds a similar civil lawsuit against Halkbank brought by "victim[s] of … overseas terrorist attack[s] committed by a group linked to Iran."  *Owens v. Turkiye Halk Bankasi A.S.*, 2021 WL 638975, at *1 (S.D.N.Y. Feb. 16, 2021), *aff'd*, 2023 WL 3184617 (2d Cir. May 2, 2023).  This Court should reach the same conclusion.

*Forum non conveniens* "finds its roots in the inherent power of the courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine,* 311 F.3d 488, 497 (2d Cir. 2002) (internal quotations omitted).  "The decision to dismiss a case on *forum non conveniens* grounds lies wholly within the broad discretion of the district court."  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc).

In exercising that "broad discretion," this Court applies the three-step analysis set out in *Iragorri, id.* at 72-76.  Under this test, the Court considers "(1) the degree of deference afforded to the plaintiff's choice of forum; (2) whether the alternative forum is adequate; and (3) the balance of the public and private interests implicated in the choice of forum."  *Türedi v. Coca-Cola Co.*, 343 F. App'x 623, 625 (2d Cir. 2009) (citing *Norex Petrol., Ltd. v. Access Indus.*, 416 F.3d 146, 153-60 (2d Cir. 2005)).

In ATA cases, Congress has expressly preserved *forum non conveniens* dismissals, but requires (1) that the foreign court "has jurisdiction over the subject matter and over all the defendants"; (2) that the foreign court "is significantly more convenient and appropriate"; and (3) that the foreign court "offers a remedy which is substantially the same as the one available in the courts of the United States."  18 U.S.C. § 2334(d).  Here, the relevant analysis points strongly in favor of dismissal.

### A.  Plaintiffs' Decision To Sue in New York Merits Reduced Deference.

Deference to plaintiffs' forum choice moves on a "sliding scale" based on the "degree of convenience" that choice reflects.  *Norex Petrol. Ltd.*, 416 F.3d at 154.  "[T]he greater the plaintiff's or the lawsuit's bona fide connection … to the forum," the greater the deference.  *Iragorri*, 274 F.3d at 72.  Courts consider "the convenience of the plaintiff's residence … to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance," and other convenience factors.  *Id.*  Courts also consider "inconvenience and expense to the defendant" and whether plaintiffs are motivated by "tactical advantage" or "the defendant's unpopularity in the region."  *Id.*

The factors in this case are mixed.  Most plaintiffs are U.S. nationals—and, presumably, mostly U.S. residents.  Domestic plaintiffs are sometimes presumptively entitled to strong deference.  But residence is not dispositive in the deference analysis.  *See id.*[5]  The Complaint does not allege that any plaintiffs reside in the Southern District of New York, which is "a fact" that a court "may consider in assessing the relative convenience of bringing this case in this district."  *Base Metal Trading SA v. Russian Aluminum,* 253 F. Supp. 2d 681, 695 (S.D.N.Y. 2003).  And as in the recent *Owens* case against Halkbank, which focused on the same alleged sanctions-evasion scheme, "the underlying facts in this litigation involve terrorist attacks in foreign countries and an alleged fraudulent scheme orchestrated primarily in Turkey."  2021 WL 638975, at *4.  Halkbank has no branches, offices, or personnel in New York or the United States.  Sevimli Decl. ¶ 4.  And "there is little, if any, connection between this action and this forum," supporting reduced deference.  *Owens*, 2021 WL 638975, at *4.  In addition, "[t]he difficulty of conducting discovery in this litigation if it continues in the United States weighs

---

[5] *See also, e.g.*, *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 71 (2d Cir. 2003) (even where "plaintiffs' choice of … forum was entitled to the same deference as that of United States citizens," the plaintiffs were "not entitled to particularly strong deference" because the primary connection to the forum was "wire transfers [and] faxes").

against deference to the plaintiffs' choice." *Id.*  The vast majority of the disputed evidence is "located in Turkey," including "documentary evidence … in the custody of Halkbank, … stored in Turkey and written in Turkish." *Id.*  And witnesses are located in Türkiye, "outside the subpoena power of this Court." *Id.*; *see also* Sevimli Decl. ¶ 4.  Finally, Halkbank has raised potent defenses against this Court's jurisdiction, including under the FSIA and personal jurisdiction.  "*Iragorri* instructs courts to consider" such defenses in determining the degree of deference, and the *Owens* district court concluded that the "contested jurisdiction[al]" issues support reduced deference.  2021 WL 638975, at *4.

This Court should therefore give some, but less than strong deference to Plaintiffs' forum choice.  Even with strong deference, however, the remaining considerations justify dismissal.  *See, e.g.,* *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476, 480 (2d Cir. 2002) (affirming dismissal for *forum non conveniens* notwithstanding "strong" deference, which "was overcome by" other considerations).[6]

B.    **Türkiye Is an Adequate Forum for This Dispute.**

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Türedi*, 343 F. App'x at 625 (quoting *Norex Petrol. Ltd.*, 416 F.3d at 157).  A forum is inadequate if it has "a complete absence of due process or an inability … to provide substantial justice." *Id.* at 625-26.  Türkiye is clearly an adequate alternative forum.

Here, Halkbank has stated that "[i]f Plaintiffs commence litigation arising out of the circumstances and general claims asserted in this case in an appropriate Turkish court, Halkbank will accept service in Türkiye, and will accept an appropriate Turkish court's exercise of personal jurisdiction." Sevimli Decl. ¶ 11.  "Halkbank has not ever failed to satisfy a final judgment issued by

---

[6] "[T]he cases demonstrate that defendants frequently rise to the challenge" of obtaining *forum non conveniens* dismissals even in the context of U.S. plaintiffs receiving strong deference.  *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1346 (11th Cir. 2020) (citation omitted).

a Turkish court." Sevimli Decl. ¶ 13.  Such representations demonstrate that Türkiye is an adequate alternative forum.  *See, e.g.*, *Aguinda*, 303 F.3d at 475-76.

Further, Halkbank's Turkish private international law expert attests that Plaintiffs could bring a tort action under the Turkish Code of Obligations for "[d]irect or indirect support for the financing of terrorism," including allegations of "aiding and abetting or conspiring with terrorists."  Ekşi Decl. ¶ 25; *see Türedi*, 343 F. App'x at 626 (finding such declarations persuasive).

Finally, an expert in Turkish administrative law explains the independence of Turkish courts, including by providing recent examples of Turkish courts ruling against the government.  Yasin Decl. ¶ 5.7.  Unsurprisingly, courts have repeatedly found Türkiye to be an adequate alternative forum, including in the recent *Owens* case.  2021 WL 638975, at *4-5; *see also Türedi*, 343 F. App'x 623; *Mercier v. Sheraton Int'l., Inc.*, 981 F.2d 1345, 1350-54 (1st Cir. 1992).

### C.   Private and Public Interests Factors Strongly Favor Dismissal.

The third step is the balancing of private and public interests to determine whether adjudication is more appropriate in New York or Türkiye.  *See Pollux Holding Ltd.,* 329 F.3d at 74-75. As in the *Owens* case that arose from the same alleged conduct, "the private and public interest factors weigh strongly in favor of dismissal."  2021 WL 638975, at *6.

#### 1.   Private Interest Factors Strongly Favor Dismissal.

The private interest analysis "pertains to the convenience of the litigants—the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; … and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Monegasque,* 311 F.3d at 500 (cleaned up).

As the *Owens* court concluded, "the private interest factors weigh strongly in favor of litigating this case in Turkey."  2021 WL 638975, at *6.  Litigating in Türkiye provides easier access to evidence, eliminates discovery issues, and decreases costs.  *See Iragorri*, 274 F.3d at 73-74.  "Any relevant and

discoverable documents in this case from Halkbank's files are located in Türkiye and overwhelmingly written in Turkish." Sevimli Decl. ¶ 14; *see Wilson v. Eckhaus*, 349 F. App'x 649, 652 (2d Cir. 2009); *Türedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 526 (S.D.N.Y. 2006) (focusing inquiry on "factual record of the events most central to the action"), *aff'd*, 343 F. App'x 623. "Halkbank witnesses"—and presumably the third-party witnesses discussed in the Complaint—"are likely located in Turkey," Sevimli Decl. ¶ 14, "many will not speak English," "many have never traveled to the United States," *id.*, and many witnesses are likely beyond the Court's subpoena power, *Kingstown Cap. Mgmt., L.P. v. Vitek*, 2020 WL 5350492, at *9 (S.D.N.Y. Sept. 4, 2020), *aff'd*, 2022 WL 3970920 (2d Cir. Sept. 1, 2022). Many witnesses whom Plaintiffs allege committed wrongful conduct live in Türkiye and are former employees no longer under Halkbank's control. Sevimli Decl. ¶ 14. Moreover, litigating Plaintiffs' claims "in this country will add enormously to the expense of the litigation," including travel and translation costs. *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493, 500 (S.D.N.Y. 2007).

### 2. Public Interest Factors Strongly Favor Dismissal.

Public interest factors "include administrative difficulties associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the litigation; the interest in having localized controversies decided at home; and avoiding difficult problems in conflict of laws and the application of foreign law." *Owens*, 2021 WL 638975, at *6 (quoting *Aguinda*, 303 F.3d at 480).

"The public interest factors also weigh heavily in favor of litigating in Turkey." *Id.* Türkiye has a "meaningful interest in hearing this dispute" involving a domestic bank with 1,075 branches in Türkiye. *Spencer Stuart Hum. Res. Consultancy (Shanghai) Co. v. Am. Indus. Acquisition Corp.*, 2017 WL 4570791, at *5 (S.D.N.Y. Oct. 12, 2017); Sevimli Decl. ¶ 4. Türkiye also has a strong interest in ensuring the bank's "affairs … are conducted with integrity and that its judicial system deals efficiently and fairly with complaints." *Wilson v. ImageSat Intern. N.V.*, 2008 WL 2851511, at *7 (S.D.N.Y. July

22, 2008), *as amended* (July 30, 2008), *aff'd sub nom. Wilson v. Eckhaus*, 349 F. App'x 649.  In contrast, "[t]here is almost no connection between this case and New York."  *Owens*, 2021 WL 638975, at *6.

### D.       Dismissal Would Comport with the Anti-Terrorism Act's Requirements.

Congress expressly contemplated that courts might dismiss ATA claims for *forum non conveniens*. 18 U.S.C. § 2334(d).   Congress set forth the circumstances in which such dismissals may be appropriate.  *Id.*; *see supra* p.15.  Each of those circumstances is met here.

*First*, as Halkbank's expert demonstrates, Turkish civil courts can exercise jurisdiction over both "the subject matter" of Plaintiffs' claims and "over all the defendants."  *Id.* § 2334(d)(1). Plaintiffs can bring claims against Halkbank and Zarrab for aiding and abetting terrorist acts that killed or injured Plaintiffs, and for conspiring with Plaintiffs to commit these terrorist acts.  *See supra* p.18; *see also* Ekşi Decl. ¶ 25.  Because Halkbank and Zarrab's alleged acts overwhelmingly occurred in Türkiye, Turkish courts could exercise jurisdiction over all defendants in this case.  Ekşi Decl. ¶ 33.

*Second*, as the lopsided balance of public and private interests demonstrates, "th[e] foreign court is significantly more convenient and appropriate" than a U.S. court.  18 U.S.C. § 2334(d)(2); *see supra* pp.18-20; *Owens*, 2021 WL 638975, at *6 (convenience factors "weigh strongly in favor of dismissal").

*Third*, Türkiye would offer Plaintiffs "a remedy which is substantially the same as the one available in the courts of the United States."  18 U.S.C. § 2334(d)(3).  The same Plaintiffs can bring substantially the same claims in Turkish court and obtain substantially the same damages—"pecuniary [and] non-pecuniary damages," such as "material and emotional damages," as well as "loss of society and companionship" and attorneys' fees.  Ekşi Decl. ¶¶ 16, 25, 26, 31.  Moreover, any concern about access to treble damages in Türkiye is addressed by Halkbank's stipulation to trebling Plaintiffs' damages.  Sevimli Decl. ¶ 12.  Such stipulations "can assuage courts' concerns regarding potential deficiencies in the adequacy of a foreign tribunal, and a court may condition dismissal on the parties agreeing to such stipulations."  *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 422 n.13 (E.D.N.Y. 2009).

## V.      PLAINTIFFS FAIL TO STATE ANTI-TERRORISM ACT CLAIMS.

For the foregoing reasons, the Court should not reach the merits of Plaintiffs' claims.  But if it does, Plaintiffs' claims should be dismissed.  Plaintiffs' theory is that by allegedly helping *NIOC* evade sanctions, Halkbank aided and abetted and conspired with *terrorists* in committing each of the twenty-seven attacks at issue.  But Plaintiffs fail to allege any concrete connection between the alleged sanctions evasion and the terrorist acts that injured them.  Their claims falter at every step.

### A.      Plaintiffs Fail To Allege a Designated FTO Committed the Attacks at Issue.

For secondary liability ATA claims, Congress added the "additional condition" that "[t]he 'act of international terrorism' must have been 'committed, planned, or authorized *by an organization that had been designated as a foreign terrorist organization [FTO] under 8 U.S.C. § 1189.*'"  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483-84 (2023) (emphasis added) (cleaned up) (quoting 18 U.S.C. § 2333(d)(2)).  Plaintiffs fail to allege even this threshold element.

The only designated FTOs at issue are al-Qaeda, al-Qaeda in Iraq, the al-Nusra Front, and the Haqqani Network.  *See* Compl. ¶ 58, 187.  Plaintiffs therefore cannot generally allege that they were victims of a terrorist attack, or even that the attacks were committed by the Taliban.  Instead, to comply with the ATA's text, they must plausibly allege that *al-Qaeda, al-Qaeda in Iraq, the al-Nusra Front, or the Haqqani Network* "committed, planned, or authorized" each and every terrorist attack that injured them.  18 U.S.C. § 2333(d)(2).  Plaintiffs fail to do so.

Plaintiffs repeatedly assert that "Al-Qaeda planned and authorized" each relevant attack, and "committed" attacks as part of "a joint cell" with the Taliban, or that al-Qaeda or one of the other FTOs committed, planned, or authorized the attacks.  *See, e.g.*, Compl. ¶¶ 193, 212, 521.  But at the motion to dismiss stage, courts do not accept "recitals of the elements of a cause of action," unsupported by factual elaboration.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Attempting to paper over this deficiency, Plaintiffs baldly allege that al-Qaeda participated in "each" attack in *exactly the same* eight, conclusory ways. Plaintiffs allege that al-Qaeda "indoctrinated," "trained," and "deployed" each suicide bomber, who was "a member of al-Qaeda under al-Qaeda training procedures for suicide attackers." Compl. ¶ 190. And Plaintiffs allege that each bomb was "based on a signature al-Qaeda design," "assembled and tested by al-Qaeda," used "ingredients … 'cooked' by al-Qaeda," and "provided" by al-Qaeda. Compl. ¶ 191.

But this gambit fails. These "identical assertion[s]" as to each attack "are nothing more than legal conclusions couched as factual allegations." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022). Plaintiffs never identify the bombers for any attack, or *when* they were "indoctrinated by al-Qaeda"; *when or where* they were "trained by al-Qaeda"; *when, where, or by whom* they were "deployed"; or *when* they became "member[s]" of al-Qaeda. Similarly, Plaintiffs nowhere allege *which* "al-Qaeda design" was used in any attack; *when and where* the bombs were "assembled and tested by al-Qaeda"; *when and where* "al-Qaeda chemists" "cooked" the bomb ingredients; or *any* factual basis to think al-Qaeda "provided" these bombs to the bombers. Indeed, Plaintiffs do not so much as cite news articles or government reports asserting that al-Qaeda was involved in these attacks, or otherwise provide any explanation for how they could know that al-Qaeda did each of these eight things for each of these twenty-seven terrorist attacks. Courts do not credit these sorts of "naked assertions devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678 (cleaned up); *Calcano*, 36 F.4th at 76-77 ("vague assertions" and "fail[ure] to provide any details" do not "nudge their claims across the line from conceivable to plausible" (cleaned up)). Common sense and caselaw confirm that unsupported, "cookie-cutter assertion[s]" as to *twenty-seven distinct attacks* are "implausible." *Calcano*, 36 F.4th at 77.

### B.    Plaintiffs Fail To State Aiding-and-Abetting Liability.

To hold Halkbank liable for aiding and abetting under the ATA, Plaintiffs must additionally allege (1) that Halkbank was "generally aware" that "by assisting the principal, it is itself assuming a

role in terrorist activities"; and (2) that Halkbank aided and abetted, by providing substantial assistance, the commission of the terrorist attacks that injured Plaintiffs. *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 223-24 (2d Cir. 2019); 18 U.S.C. § 2333(d). Plaintiffs fail to plausibly allege either.

**1.**      **Plaintiffs Fail To Allege Halkbank's General Awareness That It Had Assumed a Role in Terrorist Activities.**

To adequately plead the "general-awareness" element, Plaintiffs must plausibly allege that Halkbank was "aware that, by assisting the principal, it is itself assuming a role in terrorist activities." *Siegel*, 933 F.3d at 224 (citation omitted). That requires more than "knowledge of the organization's connection to terrorism." *Id.* (citation omitted). Plaintiffs' allegations fail to meet this bar.

In *Siegel*, the Second Circuit held that alleging that a bank "helped [a client] violate banking regulations despite knowing that [the client] supported terrorist organizations" was "insufficient … to allege that [the bank] assumed a role in [the] terrorist activities." *Id.* at 225-26. Wrongfully providing funds to a terrorist-linked client does not necessarily show that "the bank was generally aware that … it was thereby playing a 'role' in the violent or life-endangering activities" of the terrorists. *Id.* at 224 (cleaned up). Among other factors, the Second Circuit observed that the bank's client was "a large [organization] with vast operations," so engaging with that client did not give rise to an inference that the bank "knew … that those funds would be sent to [al-Qaeda] or to any other terrorist organizations." *Id.* at 224-25; *see also Bernhardt*, 47 F.4th at 869 (same).

The same is true here. Even accepting Plaintiffs' allegations that NIOC's funds were controlled by the IRGC, Plaintiffs go out of their way to assert that the IRGC is "an economic powerhouse" that controls much of the Iranian economy and is active in a wide variety of economic sectors—including lawfully selling oil and gas to Türkiye. Compl. ¶ 26; *see supra* pp.12-13. In contrast, Plaintiffs emphasize that al-Qaeda terrorist attacks against Americans cost between "$2,700" and "less than $5,000." Compl. ¶ 164. Moreover, the Complaint concedes that a *different* part of the IRGC funded overseas terrorist activities than allegedly controlled NIOC. Compl. ¶¶ 22-23, 34. In light of

23

its "vast operations," merely alleging that Halkbank helped the IRGC evade sanctions is insufficient to plead that Halkbank "knew … that those funds would be sent to" al-Qaeda, or that Halkbank's conduct necessarily gave it a "role in terrorist activities." *Siegel*, 933 F.3d at 224-25.

## 2. Plaintiffs Fail To Allege Halkbank Aided and Abetted the Terrorist Attacks That Injured Plaintiffs.

Plaintiffs also fail to allege that Halkbank "aid[ed] and abet[ted]" al-Qaeda's commission of the attacks that injured Plaintiffs.  18 U.S.C. § 2333(d)(2).[7]   For aiding and abetting, Plaintiffs must allege "that the defendant's assistance … had a direct relation to the [offense]"—here, terrorist acts— "and have been calculated and intended to produce it." *Twitter,* 598 U.S. at 491.  In other words, Plaintiffs must allege Halkbank's "conscious, voluntary, and culpable participation in" the "act[s] of international terrorism that injured the plaintiffs" "so as to help [those acts] succeed." *Id.* at 493, 497. As the Supreme Court explained, the ATA's "text requires that defendants have aided and abetted the act of international terrorism that injured the plaintiffs"—not merely "a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Id.* at 495, 497.

Plaintiffs' allegations come nowhere close to showing that Halkbank consciously, voluntarily, and culpably sought to bring about the attacks that injured Plaintiffs.  Plaintiffs do not allege that Halkbank planned or participated in any of these attacks.  They do not allege that any of the funds held at Halkbank went to pay for any of the attacks—much less that Halkbank knew or intended that those funds would pay for terrorism.  Plaintiffs do not allege that Halkbank knew about the attacks at all.  Nor do Plaintiffs plausibly allege that Halkbank knew that assisting NIOC or the IRGC would in

---

[7] Although Congress pointed courts to *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), "as providing the proper legal framework" for aiding and abetting liability under the ATA, the Supreme Court recently explained that the opinion's "precise three-element and six-factor test … may not be entirely adequate" to resolve ATA claims.  *Twitter*, 598 U.S. at 488 (cleaned up).  Instead, courts should apply "the basic thrust" of aiding-and-abetting law, as explained in that opinion.  *Id.*

any way assist al-Qaeda. Instead, Plaintiffs allege only that Halkbank engaged in a sanctions-evasion scheme with NIOC, that NIOC was affiliated with the IRGC, that a different IRGC sub-unit generally supported terrorism, that money flowed between IRGC units, and therefore assert that Halkbank knew or should have known that helping NIOC evade sanctions would in some unspecified way help unspecified terrorists commit terrorism. Compl. ¶¶ 84, 50-58. Plaintiffs' complete failure to allege that Halkbank culpably participated and sought to bring about terrorism is not surprising—it strains credulity to claim a Turkish government-owned bank would assist terrorist attacks against forces that included Turkish soldiers. Cary Decl. Ex. B Ltr. 2 (Letter from Ambassador Murat Mercan).

Because these allegations do not even suffice to show that Halkbank had "general awareness" that it had a role in al-Qaeda's terrorist acts, *Siegel*, 933 F.3d at 224-25, *supra* pp.23-24, by definition they cannot show that Halkbank *knowingly* sought to bring those acts about, *Bernhardt*, 47 F.4th at 870. But even if this Court credited Plaintiffs' allegations that Halkbank was aware that some sub-unit of the IRGC funded al-Qaeda, the allegations hardly establish that Halkbank participated in al-Qaeda's terrorist acts "as something that [it] *wished to bring about.*" *Twitter*, 598 U.S. at 498 (cleaned up) (emphasis added). Plaintiffs assert no facts showing that anyone at Halkbank ever expressed support for terrorism or had actual knowledge that the sanctions evasion would support terrorism. And although the U.S. government has charged Halkbank with sanctions-evasion offenses (which Halkbank is vigorously defending), Halkbank has never been charged with materially supporting or committing terrorism. On the contrary, during the trial of one of Halkbank's former employees for sanctions offenses related to the alleged scheme, the judge instructed the jury—at the government's urging— that the employee was not charged with any terrorism offense "nor [was] there any suggestion that he was involved with any terrorist attack." *United States v. Atilla*, No. 15-867, ECF 400, Tr. 65:2-6 (S.D.N.Y.); *id.* ECF 520, Tr. 25:7-9 (The Court: "While the crimes that were committed were serious,

25

the crimes of conviction do not involve crimes of violence or drugs or terrorism."); *id.* ECF 333 at 5. Plaintiffs plead nothing to suggest that Halkbank "wished to bring about" these terrorist attacks.

Plaintiffs' failure to make such allegations is particularly damning because the Supreme Court has made clear that pleading an "attenuated" or "distan[t]" connection between the defendant and the terrorist act "drastically increases [plaintiffs'] burden to show that defendants somehow consciously and culpably assisted the attack." *Twitter*, 598 U.S. at 500, 503; *id.* at 506 ("[T]he more attenuated the nexus" between the defendant's acts and the tort "the more courts should demand that plaintiffs show *culpable* participation through *intentional* aid that substantially furthered the tort." (emphasis added)).

And because Plaintiffs' allegations "would hold [Halkbank] liable for all" of al-Qaeda's and the other FTOs' attacks, they face a higher burden still. *Id.* at 506. Plaintiffs must allege that Halkbank "systematically and pervasively assisted" *al-Qaeda* or the other FTOs, sufficient to show that Halkbank intended to associate itself with and bring about "each and every" terrorist attack that these FTOs committed. *Id.* at 501-02. Plaintiffs cannot meet any of these heightened burdens.

## C. Plaintiffs Fail To State Conspiracy Liability.

Plaintiffs also fail to allege that Halkbank "conspire[d] with the person who committed [the] act[s] of international terrorism" at issue here. 18 U.S.C. § 2333(d)(2). To allege an ATA conspiracy, Plaintiffs must plead "an agreement between two or more persons … to participate in an unlawful act"—in this case, an act of international terrorism—"and an injury caused by an unlawful overt act performed by one of the parties to the agreement." *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 79 (2d Cir. 2023) (cleaned up). "While courts may infer an agreement from indirect evidence in most civil conspiracy cases, a complaint must nonetheless allege that the coconspirators were pursuing the same object" or shared a "common intent." *Id.* at 79-80 (cleaned up).

Plaintiffs do not allege that Halkbank directly conspired with al-Qaeda or the Taliban, the "person[s] who committed [the] act[s] of international terrorism" at issue here. 18 U.S.C. § 2333(d)(2).

There is no allegation, for example, that Halkbank employees ever expressly or implicitly entered into an agreement with al-Qaeda or the Taliban to commit international terrorism or any other crime.

Instead, Plaintiffs allege that the "IRGC sits in the center of a global hub-and-spoke conspiracy" that includes Halkbank, al-Qaeda, and the Taliban as disparate spokes. Compl. ¶ 539. But even if Plaintiffs had plausibly pleaded such a conspiracy, they fail to plead that Halkbank, al-Qaeda, and the Taliban were "pursuing the same object." *Freeman*, 57 F.4th at 79. In *Freeman*, for example, the complaint only plausibly alleged that the defendant banks' object was "helping Iranian banks and institutions circumvent U.S. sanctions against Iran," whereas the terrorists' object was "murder[ing] and maim[ing]" Americans in Iraq. *Id.* at 72, 80. The same is true here: Plaintiffs, at most, plausibly allege that Halkbank intended to help NIOC circumvent U.S. sanctions. Plaintiffs have no factual allegations that Halkbank's goal was to support terrorism or kill Americans. And Plaintiffs do not allege at all that al-Qaeda or the Taliban intended to help Halkbank, NIOC, the IRGC, or any other Iranian entity in the alleged sanctions-evasion scheme. In other words, Plaintiffs fail to allege that Halkbank and the terrorists held any "common intent."

Plaintiffs assert, however, that "the object of" the alleged conspiracy was "to advance the IRGC's foreign policy agenda" by "inflicting casualties on Americans to force the United States to withdraw from the Middle East." Compl. ¶ 539. But Plaintiffs have no factual allegations that give rise to the plausible inference that Halkbank shared that intent. Plaintiffs point to only two allegations, but neither suffices. First, they allege that "Defendants knew that the IRGC's foreign policy goals included a worldwide campaign of anti-American terrorism." Compl. ¶ 543. But they plead no facts to support that naked assertion that Halkbank *knew*, saying only that "governments, international organizations, and subject-matter experts" had said so. *Id.* The fact that some people had *said* such things does not establish that Halkbank *knew* those things. But even if Halkbank knew about the IRGC's foreign policy goals, it is not plausible that by helping NIOC or the IRGC evade sanctions,

Halkbank somehow agreed "to advance the IRGC's foreign policy agenda" including by "inflicting casualties on Americans to force the United States to withdraw from the Middle East." *Id.* ¶ 539; *see Freeman*, 57 F.4th at 73, 80.  That is preposterous and borderline sanctionable, particularly given the fact that Turkish troops were serving alongside Americans in Afghanistan.  Cary Decl. Ex. B Ltr. 2. The Turkish government did not conspire through state-owned Halkbank to supposedly change a U.S. policy it explicitly supported by putting its own Turkish troops at risk in Afghanistan.

Plaintiffs also place great weight on a single, unverified news story recounting an alleged wiretap involving a former Halkbank employee and an IRGC leader.  During the conversation, the Halkbank employee allegedly told the IRGC leader that "when he was a senior in high school" he was "quite sympathetic to the Iranian revolution," thought that Ayatollah Khomanei was a "philosopher," was called "'pro-Iranian' by his schoolmates in his university years" (in the 1980s), and called himself an "inside man."  Compl. ¶ 90 (*see* footnote 69).  To state the obvious, nowhere in this banal and ingratiating exchange about the employee's school-age views does the Halkbank employee agree to enter, on Halkbank's behalf, "a global hub-and-spoke conspiracy, the object of which is to advance the IRGC's foreign policy agenda" by "inflicting casualties on Americans to force the United States to withdraw from the Middle East."  *Contra* Compl. ¶¶ 539.

Because Plaintiffs fail to plead that Halkbank—many degrees of separation away—shared a "common intent" with al-Qaeda and the Taliban to commit terrorism against the United States, Plaintiffs fail to plead an ATA conspiracy.

> **D.      Sixty-three Plaintiffs' Claims Are Time-Barred.**

Sixty-three plaintiffs in this case allege that they were injured by terrorist attacks that occurred prior to July 26, 2013—outside of the ATA's 10-year statute of limitations.  *See* Cary Decl. Ex. A; 18 U.S.C. § 2335(a).  Those Plaintiffs' claims are time-barred, and can be dismissed on a motion to dismiss.  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.1998).

In a bid to avoid this outcome, Plaintiffs assert that their "claims could not have accrued before" Congress codified secondary liability in 2016. Compl. ¶ 181. But claims ordinarily accrue "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (citation omitted); *see also Strauss v. Credit Lyonnais, S.A.*, 2007 WL 2296832, at *6 (E.D.N.Y. Aug. 6, 2007) (an ATA claim "accrues on the date a party is injured"). Plaintiffs' claims therefore accrued when they were injured in the alleged attacks. Congress knows how to extend statutes of limitations when necessary—and it has done so in the context of the ATA. *See* Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632 (2013). It did not do so when it codified secondary liability. To the contrary, the 2016 amendment Plaintiffs rely on is quite clear that it did *not* create a new claim, but instead allowed plaintiffs "[i]n an action under [preexisting] subsection (a)" to "assert[]" secondary "liability." 18 U.S.C. § 2333(d)(2). Congress's decision not to extend the statute of limitations in this context makes particular sense since all then-existing claims (including all of Plaintiffs' claims) still had at least several years before they expired. Instead of filing their claims when Congress enacted secondary liability, Plaintiffs inexplicably waited almost seven additional years.

Perhaps sensing the problem, the Complaint asserts that "Plaintiffs are entitled to tolling because Defendants fraudulently concealed their misconduct, and no plaintiff exercising reasonable diligence could have discovered that misconduct prior to March 31, 2016, when Reza Zarrab and his co-conspirators were indicted." Compl. ¶ 182. But equitable tolling applies when a defendant "fraudulently conceals the wrong," and requires a plaintiff to allege that the defendant's concealment "precluded his possible discovery of the harms that he suffered." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (emphasis omitted). Plaintiffs must plead "some affirmative act" by the defendant to conceal the claim; plaintiffs cannot simply rely on the "inherently self-concealing" nature of fraud. *Strauss*, 2007 WL 2296832, at *8-9. Moreover, tolling must be "applied sparingly," and requires Plaintiffs to allege their "diligence" in investigating their claims. *Corcoran v. N.Y. Power Auth.*,

202 F.3d 530, 543 (2d Cir. 1999).  Here, Plaintiffs bring ATA claims arising from terrorist attacks, seeking to hold Halkbank vicariously liable for injuries caused by those attacks.  Plaintiffs' allegations that Halkbank concealed unrelated sanctions evasion, which they fail to link to any of the attacks that give rise to their claims, does not justify tolling the limitations period on their *ATA* claims.  Plaintiffs also never allege that Halkbank affirmatively concealed either the terrorist attacks or Plaintiffs' harms.  Nor do they allege the necessary diligence (much less any effort at all) to investigate their claims—a requirement for equitable tolling.  And as to Halkbank's own conduct, Plaintiffs rely only on Halkbank's alleged sanctions evasion and the allegation that it was "inherently self-concealing," Compl. ¶ 183, which does not suffice, *Strauss*, 2007 WL 2296832, at *8-9.  Plaintiffs fail to meet the requirements for equitable tolling.

*      *      *

The Complaint's foundational assertion—that Halkbank aided and abetted terrorism or conspired with terrorists—is a fiction that cannot be squared with the simple fact that Turkish troops served alongside their American counterparts in Afghanistan.  It is therefore no surprise that Plaintiffs fail to allege any concrete connection between Halkbank and the attacks at issue in this case.  That failure infects not only the merits of Plaintiffs' claims, which fall far short of plausibly alleging that Halkbank consciously, voluntarily, culpably, or intentionally sought to bring about these attacks.  It also infects Plaintiffs' jurisdictional claims, since Halkbank's alleged conduct lacks a nexus to Plaintiffs' claims or the United States.  This Court should grant the motion to dismiss.

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should dismiss the Complaint.

30

Dated:  December 22, 2023                    Respectfully submitted,
        Washington, D.C.


                                             */S/ Robert M. Cary*
                                             Robert M. Cary (RC2605)
                                             Simon A. Latcovich (admitted *pro hac vice*)
                                             Eden Schiffmann (*pro hac vice* pending)
                                             James W. Kirkpatrick (admitted *pro hac vice*)
                                             WILLIAMS & CONNOLLY LLP
                                             680 Maine Avenue, S.W.
                                             Washington, D.C. 20024

                                             650 Fifth Avenue, Suite 1500
                                             New York, New York 10019

                                             Phone: (202) 434-5000
                                             Fax:    (202) 434-5029
                                             Email:  rcary@wc.com

                                             *Attorneys for Defendant Türkiye Halk Bankasi A.Ş.*

31