# Declaration of Dr. Zekeriya Kurşat

Case: Hughes, et. al v. Türkiye Halk Bankasi A.Ş., No. 23-cv-6481 (MKV) (S.D.N.Y.)

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

Ben, Prof. Dr. Zekeriya Kurşat aşağıdaki hususları beyan ederim:

## I. Giriş ve Genel Çerçeve

**1.** Güney New York Eyaleti Mahkemesi nezdinde görülmekte olan 1:23-cv-06481 sayılı davada, davalı Türkiye Halk Bankası A.Ş.'nin (Halkbank) Türkiye'deki avukatları ve ABD'de Williams & Connolly ve Michelman & Robinson tarafından yöneltilen sorular konusunda Türk mevzuatı hakkında hukuki görüş vermek üzere tarafıma başvuruldu.

**2.** Bana yöneltilen soruların temelini davacıların temsilcisinin Prof. Dr. Erdem Büyüksağış'tan temin ettiği hukuki görüşteki tespitler hakkında değerlendirme yapılmasını oluşturmaktadır. Prof. Büyüksağış, 7 Şubat 2024 tarihli hukuki görüşü beyan etmiştir. Davacıların Türkiye'de olası bir sorumluluk davasına yönelik olarak Büyüksağış özetle; sorumluluk için davalı Halkbank'ın eyleminin ortaya çıkan haksız fiilin zorunlu şartı olduğunun ortaya konulması gerektiğini; davacıların iddialarını her türlü makul şüphenin ötesinde ispat etmek zorunda olduklarını aksi takdirde davalarının reddedileceğini; davacıların elde edebileceği tazminat miktarının çok sınırlı olacağını, 100.000 USD'lik bir tazminatın manevi tazminat için rekor sayılabileceğini, 3 kat tazminat almalarının mümkün olmadığını; Halkbank adına Av. Mehmet Sevimli tarafından verilen ve 3 kat tazminat taahhüdünün geçerli olmadığını ve mahkemeler tarafından uygulamaya esas alınmayacağını; mağdurun kendi eylem ve kusurunun tespit edilen tazminat miktarında indirim sebebi olacağını; Türk Mahkemelerinin çoklu dava ve toplu haksız fiil davalarında ilişkin tecrübesiz olduklarını; davalar birleştirilse bile bunların tek dava haline gelmeyeceğini ve mahkemelerin ayrı ayrı hüküm vereceklerini; Türk Hukukunda tarafların aleyhlerine olan delilleri paylaşma zorunluluklarının bulunmadığını; davacıların Türkiye'de dil engeli ile karşılaşabileceğini; Türkiye'deki vekalet ücretleri sistemleri nedeniyle davacıların iyi avukat bulmakta zorlanacaklarını ve maliyetlere katlanmalarının zor olacağını beyan etmiştir.

**3.** Yukarıda özetlediğim üzere Prof. Büyüksağış, davacıların Türkiye'de dava açmaya zorlanmaları halinde hukuki ve fiili engellerle karşılaşacakları, elde edebilecekleri



1

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

tazminatın oldukça düşük olacağı sonucuna ulaşmış bulunmaktadır. Aşağıda sayın
Büyüksağış'ın yorum ve görüşlerine katılmadığım hususları gerekçeleri ile izah
edeceğim. Aşağıdaki açıklamalarım dışında kalan ve yer vermediğim hususlar
bakımından onlara yer vermemiş olmam, sayın Büyüksağış ile hemfikir olduğum
anlamına gelmemektedir.

**4.** Burada tekrar belirteyim ki hukuki görüş ve tespitlerimi, Türkiye Cumhuriyeti
Kanunlarına, yargı uygulamalarına ve hukuki literatürüne dayandırmaktayım.
Ayrıca bu hukuki görüşün hazırlanması için piyasa koşullarına uygun olarak ve her
zaman tarafıma bu tip mütalaalar için ödenen standart ücret miktarında tarafıma
ödeme yapılmıştır.

**5.** Tarafıma bu rapor kapsamında yöneltilen sorulara ilişkin olarak aşağıda yaptığım
açıklamaların doğruluğunu beyan ederim.

## II. Prof. Büyüksağış'ın Bazı Tespitleri Hakkındaki Değerlendirmelerim

### A. Nedensellik Bağı İle İlgili Tespitler Hakkında Değerlendirme

**6.** Prof. Büyüksağış, Türk Mahkemelerinde davalıların sorumlu tutulabilmeleri için
davacıların saldırıların Halkbank'ın yardımı olmadan gerçekleşemeyeceğini ve
saldırıların sebep olduğu hasarın yardımın doğrudan bir sonucu olduğunu
kanıtlamaları gerektiğini belirtmektedir. Aşağıda belirteceğim üzere Prof.
Büyüksağış'ın dayandığı temeller doğru değildir:

**7.** Türk Hukukunda haksız fiil failinin, meydana gelen zarar nedeniyle sorumlu
tutulabilmesi için onun davranışı ile sonuç arasında uygun illiyet bağı bulunmalıdır.
Fakat bu durum, failin davranışının sonucun gerçekleşmesini tek başına sağlaması
zorunluluğu anlamına gelmemektedir. Failin davranışı, sonucun meydana gelmesini
kolaylaştırmış ya da etkisini artırmış olsa bile uygun illiyet bağının bulunduğundan
söz edilebilecektir. Birden fazla kişinin davranışının sonuca etkili olması hallerinden



2

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

bir türü olan "ortak illiyet" durumunda, sonucu tek başına doğurmasa bile sonuca etkili olan davranışları sergileyenler birlikte sorumlu tutulur. Bu ihtimalde davranışı sergileyen birden fazla kişinin sorumlu olabilmesi için, her birinin davranışının tek başına sonucu meydana getirmeye elverişli olması şartı yoktur. Bu nedenle somut olayda davacıların, davalı Halkbank'ın davranışının zararın meydana gelmesine etki ettiğini ya da onun artmasına yol açtığını ispat etmeleri yeterli olacaktır.

**8.** Yargıtay bir kararında belirttiğim bu hususları şu ifadelerle vurgulamıştır:

*"Bazen sonuç birden çok sebebin ortak etkisiyle oluşur. Bunun çeşitli biçimleri vardır. Eğer birden çok sebeplerin birleşmesiyle zarar doğmuş ise buna ortak illiyet denir. Bu halde sebeplerden yalnız biri zararlı sonucu doğurmaya yetmez, diğer sebeplerin buna katılması gereklidir. Böyle bir durumda eylemleri işleyenlerin herbiri zararın tümünden müteselsilen sorumlu olurlar. Bazen de birbirinden bağımsız olmakla beraber birçok nedenler aynı zararı oluştururlar. Aslında bunlar yalnız başlarına aynı zararı doğurmaya yeterlidirler. Böyle bir halde ise birlikte (yarışan) illiyet sözkonusu olduğundan her birinin sahibi kendi eylemi bulunmasaydı dahi aynı sonucun doğacağını savunarak sorumluluktan kurtulamaz"[1].*

Yargıtay Genel Hukuk Dairesi de bir kararında benzer şekilde şu tespitleri yapmıştır:

*"Bilindiği üzere, üçüncü kişinin eylemi illiyet bağını kesecek yoğunlukta değil de diğer sebeplerle birlikte zararlı sonucu doğurabilecek nitelikte ise birlikte (ortak) illiyet söz konusu olur. Ortak illiyette zararlı sonuç birden çok kişinin kusurlu davranışıyla ortaya çıkar. Bu durumda, 6098 sayılı Türk Borçlar Kanunu'nun (TBK) 61. maddesi uyarınca birlikte zarara sebebiyet veren ya da aynı zarardan çeşitli sebeplerden dolayı birlikte sorumlu olan kişiler hakkında müteselsil sorumluluğa ilişkin hükümler uygulanır"[2].*

## B. İspat Yükü İlgili Tespitler Hakkında Değerlendirme

---

[1]   Y.4.HD., 27.10.1989, E. 3793, K. 8235-Lexpera.

[2]   YHGK. 09.05.2018, E.2017/994, K. 2018/1048-Lexpera.

3



Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankası A.S., No. 1:23-cv-6481
(S.D.N.Y.)

9. Prof. Büyüksağış, davacıların Türkiye'deki olası davalarında iddialarını her türlü makul şüpheden uzak bir şekilde ispat etmeleri gerektiğini, aksi takdirde davalarının reddedileceğini beyan etmiştir. Bu beyan ile Türk Yargılamasında sanki, davacıların genel olarak ağır bir ispat yükümlülüğü altında oldukları, bu yükümlülük nedeniyle yargılamadan sonuç alınmasının güç olduğu düşüncesine ulaşılmaktadır. Ne var ki bu beyana aşağıdaki gerekçelerle katılmam mümkün değildir.

10. Türk mahkemeleri bağlamında ispat yükümlülüğü sorusu Prof. Büyüksağış'ın tarif ettiği kadar basit değildir. Bilhassa, ispat yükümlülüğünü taşıyan taraf ve yükümlülüğün ölçüsü koşula bağlı olarak değişir ve bazı durumlarda külfet, mesuliyetin bulunmadığını kanıtlaması için davalının üzerindedir. Varsayılan kural olarak davacı, hakkının varlığına ilişkin unsurları ispat etmek zorundadır (TMK. m. 6). Ne var ki bu ilkede çeşitli istisnaların bulunduğunu da belirtmek gerekir. TMK. m. 6'da yer alan genel kuralın en önemli istisnası, ispat yükünün hayatın olağan akışına aykırı iddia veya savunmada bulunan taraf üzerinde olduğu ilkesidir. Genel kabule göre fiili karineler iddia edilen eylemin hayatın normal akışının dışında olduğu hakkında hâkimde kanaat oluşmasını sağlayacak derecede güçlü ise, delil ikame yükü karşı tarafa geçmektedir.

11. Yargıtay 10. Hukuk Dairesi bir kararında, "...*olağan bir duruma dayanan tarafın, bu iddiasını kanıtlama yükümlülüğü altında olmadığı, ispat yükünün, normal durumun aksini iddia eden tarafın üzerinde olduğu; başka bir anlatımla, belli olaylardan, belli olmayan bir olay için çıkarılabilen durumlara dayalı fiili karine lehine olan tarafın ispat yükü altında bulunmadığı, karinenin aksini kanıtlama yükümünün bunu iddia edenin üzerinde olduğu, yargılama hukukunun temel ilkelerindendir*" diyerek, hayatın olağan akışına uygun bir iddiada bulunan tarafın bunu ispatla yükümlü olmadığı açıkça belirtmiştir[3]. Bu ilkenin somut duruma uygulanması ile davacıların iddia ettiği hususların, hayatın olağan akışına uygun olduğu, bir başka ifadeyle zararın ortaya çıkmasının eylemlerin akışında olağan olduğunun kabulü

---

3   Karar metni için bkz. Yarg. 10 HD. T. 26.09.2006, E. 2006/11879, K. 2006/11666. Yargıtay 10. Hukuk Dairesinin konuya ilişkin görüşünü tekrar ettiği bir başka kararı için bkz. Yarg. 10 HD. T. 01.10.2012, E. 2011/5228, K. 2012/16741.





Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

halinde, davacıların değil Halkbank'ın içinde bulunduğu iddia edilen eylemlerin zararla bağlantılı olmadığını ispat etmesi gerekecektir.

**12.** İlaveten alacaklıdan zarar miktarını somut olarak ispat etmesi beklenemeyen durumlarda zararın hâkim tarafından takdir edilmesi gerektiğine ilişkin açık bir kanuni düzenleme de bulunmaktadır. TBK madde 50/II hükmü düzenlemesi uyarınca; *"Uğranılan zararın miktarı tam olarak ispat edilemiyorsa hâkim, olayların olağan akışını ve zarar görenin aldığı önlemleri göz önünde tutarak, zararın miktarını hakkaniyete uygun olarak belirler"*. Söz konusu hüküm gereğince hâkim tarafından zararın miktarına dair yapılacak değerlendirmede açıkça, 'olayların olağan akışının' ve 'zarar görenin aldığı önlemlerin' dikkate alınacağı öngörülmektedir. Hâkim tarafından bu kriterler esas alınarak yapılan böylesi bir değerlendirme sonucunda zararın varlığı kabul edilebildiği sürece ve bu oranda zararın varlığı ispat edilmiş sayılacaktır.

**13.** Yargıtay da bir kararında şu tespitleri yaparak davacı bakımından ispat yükününün nasıl anlaşılması gerektiğine ilişkin önemli sonuçlara ulaşmıştır:

*"Her ne kadar, bu konuda davacı tarafından yaptırılmış bir tespit yok ise de; tanık beyanları ve olayın gelişim şekli itibariyle, döşenen boru hattını kapsayan alanda zarar olduğu gibi boru hattının dışında kalan bir kısım alanda da zarar meydana geldiği anlaşılmaktadır. Mahkemece, yalnızca boru hattının geçtiği alan için hesaplama yapılan bilirkişi raporu esas alınarak bu rapora göre zararın tazminine karar verilmesi doğru değildir. Şu durumda zararın boru hattının geçtiği kısmın dışında kalan alanda da meydana geldiği kabul edilerek, 6098 sayılı TBK'nun 50.maddesi uyarınca daha yüksek miktarda tazminat hükmedilmesi gerekirken aksi yönde hüküm kurulmuş olması usul ve yasaya uygun düşmediğinden kararın bozulması gerekmiştir"4.* Burada Yargıtay, belli bir bölgenin boru döşenmiş alanın dışında kalmasına ve oraya yönelik bir zarar tespiti yapılmış olmamasına rağmen, tamamen olayların gelişimi yani boruların büyüklüğü, yerleştirilmeleri için yapılması gereken çalışma gibi hususların kendisinden mantıksal bir çıkarım yaparak sonuca ulaşmıştır. Böylece söz konusu

---

4  Y.4.HD. 2.3.2020, E. 2018/76, K. 2020/1043-Lexpera. Benzer yönde kararlar için bkz. Y.4.HD., 23.6.2016, E. 6471, K. 8274; Y.17.HD., 14.2.2019, E. 2016/6296, K. 2019/1468-Lexpera.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

bölgede borular nedeniyle zarar meydana gelmiş olduğunun ayrıca ispat edilmesine
gerek olmadığı, zaten kendiliğinden bunun anlaşılabildiği tespiti yapılmıştır.

**14.** Somut olayda Türkiye'de olası bir dava halinde, davacıların ileri sürdüğü hususlar
bu çerçevede değerlendirilecek ve davacıların bütün iddiaları bakımından ağır bir
ispat yükü ile başbaşa bırakılacağı söylenemeyecektir. İddia edilen ve davalı
Halkbank'a yüklenen davranış zaten işlerin olağan akışına göre ileri sürülen zararı
meydana getirmeye elverişli ise, hakim bunu göz önünde bulunduracak ve örneğin
illiyet bağının bulunduğu kendiliğinden kabul edilecektir. Yine davacılar, zararın
miktarını tam olarak ispat etmek zorunda olmayacak; hakimin kendisi tazminat
miktarını belirleyebilecektir.

## C. Türkiye'de Sınırlı Tazminat İmkanı Bulunduğu Hakkındaki Tespitler Hakkında Değerlendirme

**15.** Prof. Büyüksağış, davacıların Türkiye'deki olası bir davada çok daha düşük bir
maddi ve manevi tazminat alabileceklerini, 100.000 USD'lik bir miktarın rekor
olacağını, hakimlerin zararı aşan tazminata hükmedemeyeceklerini beyan etmiştir.

**16.** Olası bir davada Türkiye'de maddi ve manevi tazminat talepleri gündeme
gelebilecektir. Türk Hukuku'nda haksız fiil sorumluluğu ile ilgili olarak maddi
tazminat bakımından uğranılan zarar, tazminat miktarının üst sınırını teşkil
etmektedir. Bir başka ifadeyle mahkemelerin, uğranılan zarardan daha fazla bir
maddi tazminata hükmetmeleri kural olarak mümkün değildir. Ne var ki manevi
tazminat davaları için ise bu şekilde bir üst sınır bulunmamaktadır[5]. TBK. m. 56/f. 1
uyarınca, "*hakim bir kimsenin bedensel bütünlüğünün zedelenmesi durumunda,
olayın özelliklerini göz önünde tutarak, zarar görene uygun bir miktar paranın manevi
tazminat olarak ödenmesine karar verebilir*". Hatta aynı maddenin ikinci fıkrasına
göre kişinin yakınlarına da manevi tazminata hükmedilebilmektedir.

---

[5]  Bu yönde bkz. **Başak Baysal**, *Haksız Fiil Hukuku*, Oniki Levha, İstanbul 2019, s. 580-581.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankası A.S., No. 1:23-cv-6481
(S.D.N.Y.)

**17.** Görüldüğü gibi manevi tazminat bakımından kanuni düzenlemede bir üst sınır belirlenmiş değildir. Bu nedenle hakimin herhangi bir tavan sınırlaması olmaksızın somut olaydaki mağdurun manevi tatminini sağlayabilecek miktarda manevi tazminata hükmetmesi mümkündür. Yargıtay bir kararında benzer şekilde şu tespitleri yapmış verilen manevi tazminat miktarının artırılması gerektiği sonucuna ulaşmıştır:

*"818 sayılı Borçlar Kanunu'nun 47. maddesi (Türk Borçlar Kanunu'nun 56. maddesi) gereğince hakimin, özel durumları göz önünde tutarak manevi zarar adı ile hak sahibine verilmesine karar vereceği para tutarı adalete uygun olmalıdır. Takdir edilecek bu tutar, zarara uğrayanda manevi huzuru doğurmayı gerçekleştirecek tazminata benzer bir işlevi (fonksiyonu) olan özgün bir nitelik taşır. Bir ceza olmadığı gibi mal varlığı hukukuna ilişkin bir zararın karşılanmasını da amaç; edinmemiştir. O halde bu tazminatın sınırı onun amacına göre belirlenmelidir. Takdir edilecek tutar, var olan durumda elde edilmek istenilen doyum (tatmin) duygusunun etkisine ulaşmak için gerekli olan kadar olmalıdır. 22/06/1966 gün ve 7/7 sayılı Yargıtay İçtihadı Birleştirme Kararı'nın gerekçesinde takdir olunacak manevi tazminatın tutarını etkileyecek özel durum ve koşullar da açıkça gösterilmiştir. Bunlar her olaya göre değişebileceğinden hakim, bu konuda takdir hakkını kullanırken ona etkili olan nedenleri de karar yerinde nesnel (objektif) ölçülere göre uygun bir biçimde göstermelidir.*

*Somut olaya gelince; olay tarihi, olayın gelişim şekli, ağır ceza mahkemesinin kabulü, tarafların sosyal ve ekonomik durumları ile yukarıda anılan ilkeler bir arada gözetildiğinde davacılar yararına hükmedilen manevi tazminat miktarı azdır. Davacılar yararına daha üst düzeyde manevi tazminat takdir edilmesi gerekirken yazılı biçimde karar verilmiş olması doğru değildir. Kararın bu nedenle bozulması gerekmiştir"[6].*

**18.** TBK. m. 52 uyarınca zarar görenin rızası veya kusuru, tazminat miktarının indirilmesi sebebi ise de, buradaki düzenlemenin ölüm ve yaralanma halinde destekten yoksun kalma tazminatları bakımından uygulaması Türk Doktrininde tartışmalıdır[7]. Üstelik Yargıtay Hukuk Genel Kurulu önce 15.6.2011 sonra ise

---

6  Y.4.HD., 23.5.2018, E. 201677542, K. 2018/4400-Lexpera.

7  Bkz. **Başak Baysal**, *Zarar Görenin Kusuru*, 12 Levha, İstanbul 2012, s. 234 vd.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

22.2.2012 tarihinde vermiş olduğu iki ayrı kararda, destekten yoksun kalma tazminatlarına ilişkin taleplerde ölen kişilerin ölümlerindeki kusurlarının indirim sebebi yapılmaması sonucuna ulaşıp tam tazminata hükmetmiştir[8].

**19.** Riskin üstlenilmesi teorisi Türk hukukunda tartışılmaktadır ve önemli eleştirilere uğramakta; spor müsabakaları gibi sınırlı uygulamaya sahip olduğu kabul edilmektedir[9]. Bu nedenle somut olayda, olası davada mağdurların riski üstlenmiş sayılıp sayılmayacakları teorik düzeyde bir tartışma olarak kalmaktadır. TBK. m. 52 "zarara rıza gösterildiği" durumda karşı kusur tespitine imkan tanır ki, savaşa bile katılan bir kimsenin kendi ölümüne rıza gösterdiği kabul edilemez. Bu nedenle mağdurun, zarara rızasının yahut sonucun gerçekleşmesinde kusurunun bulunduğunun ispat edilmediği bir durumda, tazminatta indirim sebebi olarak riskin üstlenilmesi ya da karşı kusur teorisinin gündeme gelmesi kanaatimce oldukça güçtür. Karşı kusurun gündeme gelmesi ve müştekinin riski üstlendiğinden söz edilebilmesi için, onun tehlikeden sakınması mümkün olmasına rağmen bunu yapmayıp kendisini tehlikeye attığının ispat edilmesi gerekecektir[10].

**20.** Prof. Büyüksağış'ın 100.000 USD'lik tazminatın rekor olacağına ilişkin tespiti sübjektif bir tespittir. Kendisi de bunu herhangi bir veriye dayandırmamıştır. Türk Hukuku bakımından bu anlamda belirli bir üst sınır bulunmamaktadır. Her somut olayda, mahkemeler olaya özgü olarak araştırmalarını yaparlar. ve müştekilerin spesifik koşullarını dikkate alırlar. Örneğin, tazminat talebinde bulunan Amerikalı müştekilerin söz konusu olduğu bir davada mahkemenin müştekilerin Amerikalı olduğunu değerlendirmeye alması beklenir; müştekiler de kendi durumlarındaki müştekiler için münasip tazminat miktarının ne olduğuna dair delil sunabilirler. Bu, benzer durumdaki Amerikalılara Birleşik Devletler'de verilen tazminatlara dair örnekleri de içerebilir. Bu nedenle somut olaydaki tazminat koşulları daha yüksek bir miktarı gerekli kılarsa bu yönde karar verilmesi önünde bir engel

8   Kararlar için bkz. YHGK. 15.06.2011, E. 17-142, K. 411; YHGK. 22.2.2012, E. 2011/17-787, K. 2012/92-Lexpera.

9   **Baysal**, s. 210 vd.

10  **Haluk Nami Nomer**, *Haksız Fiil Sorumluluğunda Maddi Tazminatın Belirlenmesi*, İstanbul 1996, s. 106-107.

8   

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

bulunmamaktadır. Türk Mahkemeleri'nin elbette 100.000 USD'yi aşan miktarda
manevi tazminata hükmetmeleri mümkündür. Örneğin Yargıtay, gaz nakli
esnasında patlama yaşanması olayında   mahkemenin 300.000,00 TL manevi
tazminata ilişkin kararını onamıştır. Hangi gerekçe ile manevi tazminatın kabul
edildiğinin görülebilmesi için kararın ilgili kısmına aşağıda yer verilmiştir[11]. Yine bir
boşanma davasında 500.000 TL olarak hükmedilen manevi tazminat miktarı
Yargıtay tarafından az bulunarak bu yönden karar bozulmuştur[12]. Bozma kararı
06.02.2018 tarihinde verilmiştir. O tarihteki USD/TL kuru[13] incelendiğinde alış
kurunun 3.77 olduğu, Yargıtay tarafından az bulunan miktarın 100.000 USD'den
yüksek olduğu anlaşılmaktadır. Son bir örnek olarak Kemal Gülman-Feryal Gülman
çiftinin boşanma davasında mahkemece Feryal Gülman lehine 30.000.000,00 TL
manevi tazminata hükmedildiği, bu hükmün bozulması üzerine manevi tazminatın
20.000.000,00 TL olarak kararlaştırıldığı aşağıda atıf yaptığımız haber sitesinden
anlaşılabilmektedir[14].

## D. Halkbank'ın 3 Kat Tazminat Ödeme Taahhüdüne İlişkin Tespitler Hakkında Değerlendirme

**21.** Prof. Büyüksağış, Halkbank adına verilen taahhüdün Türkiye'de uygulanabilir
olmadığını, bunun hem Halkbank'ı bağlamadığı, hem doğrudan mağdurlara yönelik
olmadığı ve mahkemelerin yine de zarar miktarı ile sınırlı karar verecekleri
gerekçelerine dayanarak beyan etmiştir.

---

[11] Yargıtay 19. HD., 21.04.2016, E. 2015/15906, K. 2016/7010-Lexpera. Onama kararının tarihi olan
21.04.2016 tarihindeki USD/TL kuru[11] kontrol edildiğinde alış kurunun 2.82 olduğu, böylece TL
cinsinden hükmedilen manevi tazminatın 100.000 USD üzerinde kaldığı görülmektedir.

[12] Karar için bkz.: Yargıtay 2. HD., 06.02.2018, E. 2017/248, K. 2018/1451-Lexpera.

[13] https://www.tcmb.gov.tr/kurlar/201802/06022018.xml

[14] Haber için bkz.: https://www.sabah.com.tr/galeri/magazin/60-milyonluk-davada-son-karar-sosyetenin-unlu-cifti-kemal-gulman-ile-feryal-gulman-8-yil-sonra-bosanmisti



9

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

**22.** Kural olarak Halkbank adına onu borç altına sokacak bir taahhüdü, ancak konuya ilişkin yetkili organı verebilmektedir. Aksi takdirde taahhüdün Halkbank'ı bağlaması mümkün değildir. Bu nedenle ileride Halkbank'ın söz konusu taahhüdün kendisini bağlamadığı savunmasında bulunması mümkündür.

**23.** Ne var ki taahhüdü veren kişinin Banka bakımından resmi organ olarak gözükmemesi, onun taahhüdüne hiç bir zaman sonuç bağlanmayacağı anlamına gelmemektedir. Öncelikle bankanın üçüncü kişilerle hukuki ilişkilerinde organ sıfatına sahip olmayan temsilci kullanmasına engel bulunmamaktadır[15]. Banka Yönetim Kurulu, bu anlama gelmek üzere 20.12.2023 tarih ve 47-01 numaralı kararında Hukuk İşleri Daire Başkanı'na üç kata kadar tazminat taahhüdü verme yetkisine ilişkin karar almıştır. Yönetim Kurulunun bu kararı karşısında, Sayın Sevimli'nin taahhüdünün, temsil yetkisi çerçevesinde kaldığı ve Bankayı bağladığı kabul edilmelidir.

**24.** Taahhüdü veren kişinin şeklen yetkilendirilmiş temsilci olmadığı hallerde dahi taahhüdü veren kişi, "fiili organ" olarak nitelendirilebilecek ve bu durumda söz konusu taahhüt Bankayı bağlayabilecektir. Fiili organ kavramı doktrinde kullanılan bir kavramdır ve biçimsel olarak organ sıfatını taşımasa da bazı kişi veya kişi gruplarının tüzel kişinin organı olarak nitelendirilmesi anlamına gelmektedir[16].

**25.** Anayasa Mahkemesi 14.2.1989 T., E. 1988/15 – K. 1989/9 sayılı kararında aynen şu ifadeleri kullanmıştır: "*25.4.1985 günlü, 3182 sayılı Bankalar Kanunu'nun 5. maddesine göre, bankalar, anonim ortaklık olarak kurulabilir. Anonim şirket, tüzelkişiliği olan bir ortaklıktır (Ticaret Kanunu, 137. md.). Medenî Kanun'un 45., 47., 48. ve 49. maddeleri anonim şirketlere de uygulanır (Ticaret Kanunu, 138. madde). Medenî Kanun'un 48. maddesinin birinci fıkrasına uygun olan Ticaret Kanunu'nun 318. maddesine göre, anonim şirket, idare meclisi tarafından yönetilir ve temsil olunur.*

---

[15] Bu yönde bkz. **Murat Yusuf Akın, Özge Kuru**, *Anonim Şirketlerde Fiili Organın Temsil Yetkisinin Varlığı Sorunu*, İstanbul Aydın Üniversitesi Hukuk Fakültesi Dergisi, 2022, C. 8. S. 1, s. 23-24.

[16] **Mustafa Dural / Tufan Öğüz**; *Kişiler Hukuku*, Filiz Kitapevi, İstanbul, 2021, sh. 258-259; Akın/Kuru, s. 24 vd.



Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

*Organ kavramı, öğretide ve Yargıtay içtihatlarında geniş anlamda yorumlanmaktadır. Nitekim, organ, yalnız tüzüğüne veya yasaya göre seçilerek tüzelkişinin iradesini oluşturan ve bağımsız karar alan yetkili kişilerle sınırlı tutulmamakta; statüsünde açıkça organ olarak gösterilmemiş bazı kimseler de organ kavramı kapsamında görülmektedir. Örneğin, banka müdürü, yardımcısı, müdür temsilcisi, ticarî mümessil, ticarî vekil, kısım şefi, şube şefi, yönetim kurulu genel sekreteri, tasfiye memuru da tüzelkişinin organı sayılabilir. Organ kavramına böyle geniş bir içerik kazandırılmasının sebebi, sorumluluğun daha âdil dağılımını sağlamak suretiyle adalet ve hakkaniyeti gerçekleştirmektir"[17]*

**2.** Somut olayda olası bir dava halinde, Av. Mehmet Sevimli tarafından verilen taahhüt bu anlamda değerlendirilecek ve Sayın Sevimli'nin "fiili organ" ya da "temsilci" sıfatları tespit edilirse söz konusu taahhüdün bankayı bağladığı sonucuna ulaşılabilecektir. Bunun dışında taahhüdün verilmesi koşulları, Banka'nın bu taahhüde karşı tavrı gibi olgular da değerlendirilecek ve bankanın davranışlarının söz konusu taahhüdü benimseme ya da taahhüde onay anlamına gelip gelmediği de değerlendirilecektir. Mevcut davada taahhüt, bir mahkemeye verilmiştir ve mahkemede zaten müştekiler tarafından açılmış bir dava görülmektedir. Hem müştekilerin aslında muhatap olmadığı tamamen doğru değildir hem de mahkeme huzurundaki savunmanın gereği olarak verilen taahhüde bankanın itiraz etmesi gerçekçi de olmayacaktır. Bu taahhüde bir onayın zımni de olsa bulunduğu hallerde, söz konusu taahhüdün bankayı bağladığı sonucuna ulaşılacaktır (TBK. m. 46).

**27.** Sayın Büyüksağış, taahhüdün şirketi bağlaması halinde dahi geçersiz olacağı ve uygulama kabiliyetinin olmayacağı tespitlerinde bulunmuştur. Bu tespitini, söz konusu beyanın doğrudan muhataplara değil yargılamanın yapıldığı mahkemeye hitaben yapılmış olması ile mahkemelerin zarar miktarı ile kendilerini yine de sınırlı kabul edecekleri gerekçelerine dayandırmıştır.

**29.** Hukuki işleme ya da borç taahhüdüne yönelik bir irade beyanın geçerli olması için doğrudan lehtara yönelmesi şart değildir. TBK. m. 129 uyarınca, sözleşmenin

---

[17]  Karar için bkz. **Resmî Gazete**, 4.2.1991 t., S. 20776.

11 𝔖𝔨𝔟𝔖

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

tarafı olmayan bir kişi lehine edim kararlaştırılabilmektedir. Bu hükmün uygulanması ile bir kimsenin kendini borç altına sokacak şekilde, doğrudan lehdara değil de başka birine yönelik yaptığı beyanın "üçüncü şahıs yararına" olarak geçerli kabul edilmesi gerekecektir. Bu davanın müştekileri, bu taahhüt bakımından üçüncü şahıs lehtar kavramının kapsamına açıkça girmektedir.

**29.** Üç kat tazminata ilişkin taahhüt, davalı banka bakımından onu borç altına sokan bir hukuki işlem niteliğinde olacaktır. Bu taahhüdün haksız fiil hükümlerine yönelik olduğu bir yanılgıdan ibarettir. Haksız fiile ilişkin tazminat yükümlüsü ile haksız fiil mağduru arasında tazminat anlaşması yapılması mümkündür ve burada artık haksız fiildeki tazminatın belirlenmesi ölçütleri değil; sözleşme özgürlüğü ilkesi geçerli olur. Burada haksız fiil gerçekleşmeden yapılan bir sözleşme değil, fiil gerçekleştikten ve zarar doğduktan sonra yapılan bir işlem söz konusudur. Bu aşamada taraflar dilediği miktarda tazminat konusunda anlaşma yapabilirler. Bu anlaşma tarafları bağlayan sözleşme niteliğinde olacağından, kararlaştırılan tazminat miktarı zararı aşsa bile geçerli olacak ve olası bir davada, haksız fiil değerlendirmesi olarak değil ama sözleşmenin ifası olarak hükümde dayanak olacaktır. Bir başka ifadeyle bu taahhüt ile, haksız fiildeki tazminatın zarar miktarını aşamayacağı ilkesi ihlal edilmiş sayılmayacaktır. Zarar gerçekleştikten sonra taraflar birbirlerini ibra edebilecekleri gibi, tazminat miktarını da belirleyebilmektedirler. Burada söz konusu olan şey de tazminat miktarının belirlenmesidir. Mahkemeler, taraflar arasında sözleşmenin bulunmaması halinde, zararı üst sınır olarak kabul etmeli iken, böyle bir sözleşme bulunması halinde açılacak dava zaten bu sözleşmenin ifasının talebi niteliğinde olacağından, mahkemelerin zarar ile sınırlı tazminata hükmetmeleri söz konusu olmayacaktır. Dolayısıyla Prof. Büyüksağış iki ayrı konuyu birbirine karıştırmaktadır: Türk mahkemelerinin tazminatı nasıl hesaplamasını; mahkemenin, Halkbank'ın taraflar arasındaki bağlayıcı anlaşmanın ya da Halbank'ın kendisi bakımından bağlayıcı taahhüdünün bir konusu olarak üç kat tazminat ödemeyi kabul etmesini bir sözleşme ya da hukuki işlem olarak uygulamasını. Oysa bu ikisi farklı şeylerdir.

**30.** Somut olaydaki taahhüt de, bankayı borç altına sokan bir hukuki işlem olarak geçerli kabul edilecektir. Mahkemelerin, tazminatın belirlenmesine ilişkin bu hukuki işlemi yok sayıp yine de müştekilerin kazandığı tazminat tutarı bakımından kendilerini zarar ile sınırlı kabul etmelerinin bir dayanağı olmayacaktır.

12 

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

### E. Davaların Birlikte Görülmeyeceği ve Bunun Olumsuz Sonuçlara Yol Açacağına İlişkin Tespitler Hakkında Değerlendirme

**31.** Prof. Büyüksağış, Türk Mahkemelerinin toplu dava konularında tecrübesiz olduğunu, müştekilerin davalarının ayrı ayrı görülmesinin gerekebileceğini, birleştirilse bile ayrı dava niteliğini koruyacağını belirtmiş ve bunun davacılar bakımından olumsuz neticelere yol açacağı sonucuna ulaşmıştır.

**32.** Öncelikle belirtelim ki HMK. m. 166 uyarınca, aralarında bağlantı bulunan davaların talep üzerine ya da re'sen birleştirilmesi ve birlikte görülmesi mümkündür. Bağlantı ise, aynı maddenin 4. fıkrasında, "*Davaların aynı veya birbirine benzer sebeplerden doğması ya da biri hakkında verilecek hükmün diğerini etkileyecek nitelikte bulunması*" olarak tanımlanmıştır. Somut mesele bakımından aynı eylem iddiasına ve haksız fiil esasına dayanan aynı davalıya yönelik davaların birleştirilmesi koşulları bulunacak ve büyük olasılıkla bu davaların birleştirilmesi yoluna başvurulacaktır. Bunun dışında tarafların öncesinde de bir araya gelerek söz konusu davayı birlikte açmaları mümkündür. HMK. m. 57 açıkça, birden fazla kişinin ihtiyari olarak bir araya gelip birlikte dava açabileceklerini düzenlemiştir. Bu ihtimalde, birleştirmeye ilişkin soru işareti gündeme gelmeyecektir.

**33.** HMK. m. 57'nin de 166'nın da temel maksadı, benzer konuda mahkemelerin farklı kararlar vermelerinin önüne geçmektir[18]. Böylece seri ya da çoklu dava açılsa bile daha ilk derece mahkeme seviyesinde farklı kararların önüne geçilmesi için, mahkemelerin davaları birleştirme yoluna gitmesi mümkün olacaktır. Üstelik belirtmek gerekir ki davalar birleştirilmese bile, ilk derece mahkemelerinin verdikleri kararlara karşı istinaf ve/veya temyiz yoluna gidilebilecek ve farklı kararlar verilmiş olsa bile bu yollar ile içtihat birliği sağlanabilecektir.

---

[18] Yargıtay 13. HD. bir kararında bu maksadı şu ifadelerle dile getirmiştir: "*davaların birleştirilmesi ve ayrılmasına ilişkin hükümler, 6100 sayılı HMK.nun 166 ve devamı maddelerinde düzenlenmiş olup, amacı usul ekonomisine hizmet etmek ve aynı konuda çelişkili kararlar verilmesini önlemektir*". Bkz. Y.13.HD., 3.2.2016, E. 2014/444042, K. 2016/2749-Lexpera.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

### F. Delil Paylaşım Usullerine Yönelik Tespitler Hakkında Değerlendirme

**34.** Prof. Büyüksağış, Türkiye'deki yargılamalarda tarafların kendi aleyhlerine olan deliller konusunda sessiz kalabildiklerini, bu durumun somut mesele bakımından olumsuz sonuçlara yol açabileceğini ileri sürmektedir. Büyüksağış, bu savını kısmen HMK. m. 400'e dayandırmaktadır. Oysa HMK. m. 400, davacıların açacağı haksız fiil davası anlamında bir dava olmayıp, konusu delil tespiti olan bir davadır. Bu dava, bir eda davası olmadığı gibi burada mahkeme tarafından emir teşkil eden bir hüküm verilmemektedir.

**35.** Davacıların Türkiye'de açacakları muhtemel haksız fiil davasında, tazminat talepleri söz konusu olacak ve mahkemeden davalı Halkbank aleyhine tazminat emrini vermesi istenecektir. Bu davada uygulanacak hükümler uyarınca, davacıların ellerinde bulunmayan delillerin getirtilmesi için mahkemece ilgili makam ve merciler ile üçüncü kişilere bildirimler yapılmakta (HMK. m. 195); başka yerde ve getirtilemeyen delillerin kendi yerinde istinabe yoluyla dinlenmesi sağlanabilmektedir (HMK. m. 197). Yine HMK. m. 219 uyarınca, *"taraflar, kendilerinin veya karşı tarafın delil olarak dayandıkları ve ellerinde bulunan tüm belgeleri mahkeme ibraz etmek zorundadırlar"*. Buna ek olarak HMK. m. 221 uyarınca benzer şekilde belgeyi elinde bulunduran üçüncü kişiye de belgenin ibrazı için mahkemece emir verilebilmektedir. HMK. m. 220 gereğince, belgeyi ibraz etmesine karar verilmesine rağmen bunu ibraz edilmemesi halinde, mahkeme duruma göre belgenin içeriği konusunda diğer tarafın beyanını kabul edebilmektedir.

**36.** Görüldüğü gibi Türk hukukunda bir kimsenin kendi aleyhine olan delilleri sunmaması özgürlüğü yerine tam tersine sunma zorunluluğu bulunmaktadır. Sayın Büyüksağış'ın delillerin ibrazından kaçınabilmeye yönelik örnek olarak sunduğu HMK. m. 250 ve 291/f. 3, davanın taraflarına yönelik değil üçüncü kişilere yönelik olup, sadece tanıklık ve kendi mekanında keşif yapılmasına ilişkindir. Keşif halinde, taraflar buna karşı koyamamakta; aksi takdirde karşı tarafın iddia ettiği vakıayı kabul etmiş sayılmaktadır (HMK. m. 291/f. 2).



14

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

## G. Avukatlık Ücret Sözleşmelerine İlişkin Tespitler Hakkında Değerlendirme

**37.** Prof. Büyüksağış, Türk hukukunda avukatların davanın kazanılmasına bağlı ücret almalarına yönelik anlaşmaların mümkün olmadığını, avukatların belirlenen asgari ücret tarifesindeki ücretten daha aşağı ücret kararlaştıramadıklarını belirtmiştir.

**38.** Av. K. m. 164 f. 1 uyarınca *"avukatlık ücreti, avukatın hukuki yardımının karşılığı olan meblağı veya değeri ifade eder"*. Avukatlık sözleşmelerinde geçerli olan sözleşme serbestisi gereğince bu ücretin taraflarca, kanunda yer alan sınırlamalar saklı kalmak kaydıyla, serbestçe kararlaştırılabilmesi mümkündür. Kural olarak, kararlaştırılan ücretin avukatlar için geçerli olan asgari ücret tarifesinin altında olması mümkün değildir (Av. K. m. 164 f. 4). Bununla birlikte öğretide ifade edildiği üzere; tarafların ücret konusunda anlaşmalarına rağmen, avukatın daha sonradan bu ücretin artırılmasını talep etmesi müvekkilde yaratılan güvenin zedelenmesine neden olacaktır[19]. Bu nedenle öğretide, tarafların asgari ücretin altında ücret kararlaştırmaları halinde asgari ücretin altında ücreti kabul eden avukatın, müvekkilinde uyandırdığı bu güvene aykırı hareket etmesinin artık mümkün olmadığı, avukatın ücretin artırılmasına ilişkin talebinin reddedilmesi gerektiğini savunulmaktadır[20].

**39.** Yargıtay da bir kararında bu tespiti yapmakta ve ücretin avukatlık asgari ücret tarifesinin altında kaldığına ilişkin savunmaları dürüstlük kuralına aykırı olması nedeniyle kabul etmemektedir. Kararın ilgili kısmı şu şekildedir:

*"Gerek taraflarca imzalanan 01.06.2009 tarihli Avukatlık ücret sözleşmesinde gerekse de davanın kesinleşmesinden sonra davacı tarafından yazılan 04.11.2011 tarihli yazıda, avukatlık ücretinin dava değeri olan 456.312,50.TL' nın %5' i olarak ödenmesi yönündeki istem dikkate alınarak davacı avukat tarafından Avukatlık Kanunu'nun 164. Maddesi gereğince Avukatlık Asgari Ücret Tarifesinin altında avukatlık ücreti*

---

**19** Özcan **Günergök**, *Avukatlık Sözleşmesi*, Ankara 2003, s. 143. Ayrıca bkz. **Haluk Burcuoğlu**, *Avukatlık Sözleşmesi ve Avukatlık Ücreti İle İlgili Bazı Sorunlar*, TBB Dergisi, Sayı 49, 2003, s. 69.

**20** Günerkök, *Avukatlık Sözleşmesi*, s. 143.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

*kararlaştırılamaz hükmünün ileri sürülmesi 4721 sayılı Türk Medeni Kanunu'nun 2. maddesine göre hakkın kötüye kullanılmasıdır. Bu durumu da kanun himaye edemez. O halde mahkemece, taraflar arasında dava değeri olan 456.312.50.TL' nın %5' i olarak kararlaştırılan avukatlık ücretinin hesaplanarak hasıl olacak sonuca uygun bir karar verilmesi gerekirken yazılı şekilde asıl alacak yönünden davanın kabulüne karar verilmesi usul ve yasaya aykırı olup, bozmayı gerektirir."21*.

**40.** Hatta Yargıtay başka bir kararında daha kesin bir dile kullanarak Avukatlık Asgari Ücret Tarifesinin altında ücret sözleşmesi yapan avukatın sözleşmede kararlaştırılandan daha fazla ücret talep edemeyeceğini şu ifadelerle ortaya koymuştur:

*"Taraflar arasında düzenlenmiş olan ücret sözleşmesinde davanın takibi için ödenecek ücret 10.000 TL olarak kararlaştırılmıştır. Davacılar avukat olup yaptıkları sözleşmenin sonuçlarını herkesten iyi bilmeleri gerekir. Her ne kadar avukatlık yasasında Avukatlık Asgari Ücret Tarifesi altında vekalet ücreti kararlaştırılamayacağı belirtilmişse de; bu hüküm tarifenin altında vekalet ücreti üzerinden sözleşme yapan avukata sözleşmede kararlaştırılan ücretin üzerinde bir ücret talep etme hakkını vermez. Sözleşmedeki bu kararlaştırma tarafları bağlar ve geçerlidir. Sözleşmede yasanın belirtilen hükmüne göre alınması gereken ücretten az ücret alınmasının kararlaştırılmış olması avukatı müvekkiline karşı bağlar"22*.

**41.** Bunun dışında Avukatlık Kanununun avukatların ücretsiz iş almalarını yasaklamadığını, sadece böyle bir ihtimalde durumu, yani ücretiz iş aldıklarını baroya bildirmeleri zorunluluğunu getirdiğini de belirtmekte fayda vardır. Av. K. m. 164/f. 4/c. 2 şu şekildedir: *"Ücretsiz dava alınması halinde, durum baro yönetim kuruluna bildirilir."*

**42.** Avukatlık Ücret Sözleşmesinde kararlaştırılacak ücretin "nisbi ücret" olarak, yani davanın değeri üzerinden kararlaştırılması da mümkündür. Bu durumda, kararlaştırılan ücretin geçerliliği ile ilgili olarak AvK. m. 164/II hükmünün de gözden

---

21 Y.13.HD. 15.10.2014, E. 26928, K. 31322-Lexpera.
22 Y.13.HD. 13.06.2013, E. 2013/3050, K. 2013/16076.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

uzak tutulmaması hukuki bir zorunluluktur. *"Yüzde yirmibeşi aşmamak üzere, dava veya hükmolunacak şeyin değeri yahut paranın belli bir yüzdesi avukatlık ücreti olarak kararlaştırılabilir"* tarzında kaleme alınmış olan bu hüküm ile nisbi olarak kararlaştırılan avukatlık ücreti konusunda bir tavan ücret esası getirildiği kabul edilmektedir[23].

**43.** Avukatlık ücretinin başarı şartına bağlanabilmesi de mümkündür. Bu bağlamda özellikle banka vb. kurumlar ile yapılan ve avukatın sadece tahsil yapılabilmesi durumunda ücrete hak kazanabileceği yönündeki ücret anlaşmalarının geçerli olduğu öğretide haklı olarak kabul edilmektedir[24].

Yargıtay 13. Hukuk Dairesi de konuya ilişkin bir kararında aşağıdaki tespitleri yaparak avukatlık ücretinin takibe konu meblağın karşı taraftan tahsil edilmesi şartına bağlanabileceğini açıkça hükme bağlamıştır[25].

*"Taraflar arasındaki "Avukatlık Sözleşmesi" başlıklı 10.3.2008 tarihli sözleşmesinin 12. maddesinde, "Avukata tevdi olunmuş ve olunacak işlerde, Avukatın lehe takdir olunan ve/veya hüküm altına alınan F2 tarafından ödenecek vekalet ücretine aşağıda kararlaştırılan oranlarda hak kazanabilmesi için icra takibinin sonuçlandırılmış olması, alacağın tamamının tüm faiz ve bilcümle ferileri ile birlikte fiilen tahsil edilmiş bulunması gerekmektedir... Taraflar arasında düzenlenen sözleşme, hizmet hukuk müşavirliği niteliğinde bir sözleşme olup geçerlidir. Sözleşme ile belirlenen ücretin, Avukatlık Kanunu'na aykırı olduğu da kabul edilemez. O halde dava konusu ihtilafın, tarafların serbest iradeleri ile yaptıkları ve geçerli olan bu sözleşme hükümlerine göre çözümlenmesi gerekir".*

**44.** Bu bilgiler ışığında somut ihtilafın Türkiye'de dava konusu olması halinde davacıların avukatla ücret sözleşmesi yapabilecekleri, bu ücret sözleşmesinin başarı şartına bağlanabileceği, davalarının reddedilmesi halinde herhangi bir ücret ödememeyi kararlaştırabilecekleri, avukatlar ile yapacakları sözleşmede hiçbir ücret ödemeyeceklerini kararlaştırabilecekleri, Avukatlık Asgari Ücret Tarifesinin altına

---

[23] Bu hususta bkz. **Günergök**, *Avukatlık Sözleşmesi*, sh. 130.

[24] **Candaş İlgün**, *Avukatlık Ücret Sözleşmesi*, Adalet Yayınevi, 2013, s. 26

[25] Yarg. 13. HD. T. 30.06.2012, E. 2014/28042, K. 2015/22649-Lexpera.





Prof. Dr. ZEKERİYA KURŞAT

İstanbul Üniversitesi Hukuk Fakültesi
Medeni Hukuk Anabilim Dalı Öğretim Üyesi

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

ücret belirlenmesi kural olarak yasaklanmakta ise de avukatın bunu savunma olarak ileri sürmesinin dürüstlük kuralına aykırılık teşkil edebileceği sonuçlarına ulaşmak mümkündür.

**45.** Amerika Birleşik Devletleri kanunları tahtında yalancı şahitlik cezasına tabi olmak üzere, aşağıda yaptığım açıklamaların görüş ve kanaatlerimi doğru ve gerçek biçimde yansıttığını beyan ederim.

Bu rapor 27 Şubat 2024 tarihinde imzalanmıştır.

Prof. Dr. Zekeriya Kurşat

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

I, Dr. Zekeriya Kurşat, hereby declare the following:

### I. Introduction and General Framework

**1.** I was asked to provide a legal opinion on Turkish legislation with regard to the questions posed by the local attorneys of the defendant Türkiye Halk Bankası A.Ş. ("Halkbank") in the Case 1:23-cv-06481 pending with the District Court for the Southern District of New York as well as the U.S. law firms Williams & Connolly and Michelman & Robinson.

**2.** The basis of the questions addressed to me are formed by the assessments made in the legal opinion of Dr. Erdem Büyüksağış, obtained by the plaintiffs' counsel. Prof. Büyüksağış declared the legal opinion dated February 7, 2024. Concerning the plaintiffs' potential litigation for liability in Türkiye, Büyüksağış declared in summary that it must be established that the defendant Halkbank's conduct is a necessary condition of the resulting tort for liability to attach; the plaintiffs would have to prove their claims beyond any reasonable doubt lest their actions be dismissed; any damages the plaintiffs might be awarded would be severely limited, an award of USD 100.000 would be a record high for emotional damages, and it would not be possible for them to obtain treble damages; the stipulation provided by Mehmet Sevimli, Esq. in Halkbank's name for treble damages was not enforceable and courts would not consider it as a basis for their practice; the victim's own conduct and faults would lead to a further reduction in the damages determined; Turkish courts lack experience in multi-plaintiff and mass tort actions; even if the claims were to be joined they would not constitute a single lawsuit and the courts would decide separately; in Turkish law the parties are not required to submit unfavorable evidence; the plaintiffs could face language barriers in Türkiye; the plaintiffs would find it difficult to find a good lawyer in Türkiye due to the systems of representation fees, and have difficulty in bearing the costs.

**3.** As I summarized above, Prof. Büyüksağış concludes that the plaintiffs would meet legal and practical limitations if they are forced to litigate in Türkiye, and the damages they might obtain would be significantly low. I will explicate below the



TO THE BEST OF MY
KNOWLEDGE AND A BILITY,
I ATTEST THIS TO BE A TRUE
AND EXACT COPY OF
THE ATTACHED TEXT
CERTIFIED TRANSLATOR
**Şerif Ahmet SAMAN**

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

points where I do not agree with the interpretations and opinions of Prof. Büyüksağış. As to the points remaining outside of my explanations or discussion below; that I omitted them does not mean I agree with Prof. Büyüksağış.

**4.** I would like reiterate that I base my legal opinion and determinations on the Laws, trial practices and the legal literature of the Republic of Türkiye. I also received a payment to prepare this legal opinion in line with the market rates and commensurate with the standard fees I usually charge for these kinds of opinions.

**5.** I declare the accuracy of the explanations I made below regarding the questions posed to me within the scope of this report.

**II. My Assessments on Several Findings of Prof. Büyüksağış**

**A. Assessment of the Findings Regarding the Causal Link**

**6.** Prof. Büyüksağış states that for the defendants to be held liable by Turkish courts, the plaintiffs would have to prove that the attacks could not have taken place without Halkbank's assistance and that the damage due to the attacks was the direct consequence of the assistance. As I will explain below, the grounds Prof. Büyüksağış relies on are not correct:

**7.** Turkish Law requires an appropriate causal link between the tortfeasor's conduct and the outcome for the tortfeasor to be held liable due to the injuries taking place. However, this does not mean an obligation for the tortfeasor's conduct to cause the occurrence of the outcome by itself. It would be possible to find a proper causal link even when the perpetrator's conduct facilitates the occurrence of the outcome or amplifies its effect. In a case of "joint causation", a type of condition where the acts of multiple persons have an effect on the outcome, the parties perpetrating the acts which affect the outcome would be held jointly liable even if the acts do not cause the outcome by themselves. For multiple perpetrators of the acts to be held liable in this circumstance, it is not necessary for their individual conduct to be sufficient to bring out the outcome. Therefore, in the case at hand, it would be adequate for the plaintiffs to prove that the defendant Halkbank's conduct had an effect on the occurrence of the injury or caused the injury to be amplified.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

**8.** The Court of Cassation emphasized these points I have made in one of their decisions with the following:

" *Sometimes the outcome is created by the joint effect of multiple causes. This takes various forms. If the harm results from the joining of multiple causes, it is called joint causation. In that case, one of those causes would not singularly suffice to create the harmful result; other causes would have to join it. In such an event, each of the perpetrators of the acts would be jointly liable for the entire harm. And sometimes multiple causes lead to the same harm in spite of being independent from each other. In fact, these causes would individually be sufficient to cause the same harm. In such an event, though, because common (competing) causation is the case, the perpetrator of each act may not exclude themselves from liability by arguing that the same result would have emerged even in the absence of their particular conduct."*[1].

Court of Cassation's Civil Chambers Assembly made similar findings in one of their decisions:

*"As it is known, if the third party's conduct does not carry enough intensity to terminate the causal link but is of a nature to cause the harmful outcome alongside the other causes, a several (joint) causation emerges. In joint causation, the harmful outcome is caused by the wrongful conduct of multiple persons. In such a case, provisions regarding joint and several liability would be applicable to the persons who jointly cause the harm or are jointly responsible for the same harm due to any reasons under Article 61 of the Turkish Code of Obligations ("TBK")."*[2]

## B. Assessment of the Findings Regarding the Burden of Proof

**9.** Prof. Büyüksağış declared that the plaintiffs have to prove their claims beyond any reasonable doubt in their potential litigation in Türkiye, or their actions would be dismissed. This declaration leads one to believe that plaintiffs generally bear a heavy onus of proof in Turkish Litigation and it is difficult to obtain relief from trial due to

---

[1]   Court of Cassation, 4th Civil Chamber, 27.10.1989, Docket No. 3793, Decree No. 8235-Lexpera.

[2]   Court of Cassation, Assembly of Civil Chambers Decision, 09.05.2018, Docket No. 2017/994, Decree No. 2018/1048-Lexpera.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

this burden. However, it is not possible for me to agree with such declaration due to the following reasons.

**10.** The question of burden of proof in the context of Turkish courts is not as simple as Prof. Büyüksağış describes. In particular, the bearer of the burden and the degree of the burden differ based on the circumstance, and in some cases the burden is born by the defendant to prove an absence of liability. It is true that as a default rule, the plaintiff is required to prove the elements pertaining to the existence of their claim. (Turkish Civil Code ["TMK"] Article 6). However, it should also be noted that there exist various exceptions to this principle. The most significant exception to the general rule in TMK Article 6 is the principle that the burden of proof shall be borne by the party making an allegation or defense which contradicts the ordinary course of life. According to the general understanding, if the presumption of facts is powerful enough to create an impression in the judge's mind that the alleged conduct is outside the normal course of life, the burden of proof is shifted to the opposing party.

**11.** Court of Cassation's 10th Civil Chamber clearly explained in a decision that the party asserting a claim which is compatible with the ordinary course of life would not carry a burden to prove it by stating that *"it is a core principle of procedural law that a party relying on an ordinary circumstance would not carry a burden to prove their claim; the onus of proof is borne by the party alleging the opposite of an ordinary circumstance; in other words, the party which is favored by the presumption of facts that are based on the circumstances which can be used to infer an unknown event via known events does not bear the burden of proof; and the onus to prove the opposite of the presumption would be on the party alleging the same.3* If, upon the application of this principle on the case at hand, it is found that the plaintiffs' allegations are compatible with the ordinary course of life, in other words, that the emergence of the harm would be ordinary in the course of events; then it would be Halkbank, not the plaintiffs, who would have to prove that the alleged acts Halkbank is claimed to have taken part in are not connected with the harm.

---

3   For the text of the decision, see Court of Cassation, 10th Civil Chamber, 26.09.2006, Docket No. 2006/11879, Decree No. 2006/11666. For another decision where the 10th Civil Chamber reiterates its opinion on the matter, see Court of Cassation, 10th Civil Chamber, 01.10.2012, Docket No. 2011/5228, Decree No. 2012/16741.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

**12.** In addition, there is an explicit legal arrangement for the harm to be ascertained by the judge in cases where it is not possible to expect the claimant to substantially prove the amount of harm. As regulated by TBK Article 50/II; "*When it is not possible to prove the exact amount of the harm, the judge shall ascertain an equitable amount of harm by taking into consideration the ordinary course of events and the measures the aggrieved party had taken.*" This provision clearly provides that the assessment to be made by the judge with regard to the amount of harm will take the 'ordinary course of events' and 'the measures taken by the aggrieved party' into consideration. The existence of the harm will be considered to have been proven as a result of and to the extent that the existence of the harm would be conceded as a result of such assessment of the judge based on said criteria.

**13.** By finding the following in a decision, the Court of Cassation also arrived at significant results as to how the burden of proof should be understood for a plaintiff:

"*Even though the plaintiff did not have any findings made on this matter, it is understood based on witness accounts and the way the events unfolded that some areas outside the pipeline were damaged in addition to the areas which include the pipeline. The court's decision to award a reimbursement for the harm on basis of the expert witness report which calculated only for the area the pipeline ran through was incorrect. In the present case, it has become necessary to vacate the decision since it contravened the procedures and legislation to rule otherwise when it was necessary to award a higher figure of damages in accordance with the Turkish Code of Obligations, No. 6098, Article 50 by acknowledging that the damage occurred in areas outside of where the pipeline passed.*"4. Here, even though a particular area was outside of the land where a pipeline went through and no damage assessments were made with regard to that area, the Court of Cassation arrived at a conclusion by making a logical reasoning solely on basis of how the events unfolded, i.e., the size of the pipes or the kind of work that should have been done for their laying down. Thus, it was found that there was no requirement to separately prove that the harm occurred in the particular area due to the pipes as it could be understood by itself.

---

4   Court of Cassation, 4th Civil Chamber 2.3.2020, Docket No. 2018/76, Decree No. 2020/1043-Lexpera. For decisions in a similar vein, see, Court of Cassation, 4th Civil Chamber, 23.6.2016, Docket No. 6471, Decree No. 8274; Court of Cassation, 17th Civil Chamber, 14.2.2019, Docket No. 2016/6296, Decree No. 2019/1468-Lexpera.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

**14.** Here, in a case of potential litigation in Türkiye, the claims asserted by the plaintiffs will be considered within this framework and it will not be possible to state that the plaintiffs would be left to shoulder a heavy burden of proof regarding all their allegations. If the alleged conduct, imputed to the defendant Halkbank, is already sufficient to cause the alleged harm in the ordinary course of events the judge will take this into consideration and, for example, the existence of a causal link will be automatically acknowledged. Similarly, the plaintiffs will not be required to prove the full amount of the harm, and the judge might ascertain the damages.

### C. Assessment of the Findings Regarding the Limited Damage Awards in Türkiye

**15.** Prof. Büyüksağış declared that the plaintiffs could obtain far less economic and non-pecuniary damages in a potential litigation in Türkiye; an award of USD 100.000 would be a record high; and courts may not award damages exceeding the harm.

**16.** It would be possible to seek economic and non-pecuniary damages in a potential lawsuit in Türkiye. Under Turkish Law, the harms suffered constitute the upper limit for damages as to the economic damages pertaining to tort liability. In other words, as a rule, the courts may not award economic damages which exceed the harms actually suffered. On the other hand, there are no such upper limits for non-pecuniary claims[5]. TBK. Article 56/para. 1 provides that *"where an individual's bodily integrity is harmed, a judge may hold for a proper sum of funds to be paid to the aggrieved party as non-pecuniary damages by taking into consideration the facts of the case."* In fact, as per the second paragraph of the same article, it is possible to rule for non-pecuniary damages to be paid to relatives.

**17.** As it can be seen, no upper limits are defined in legal regulations for non-pecuniary damages. Therefore, it is possible for a judge to award non-pecuniary damages at an amount to ensure solace for the victims of the present case without being limited to any ceilings. In a decision, the Court of Cassation made the similar

---

[5] On this matter, see, **Başak Baysal**, *Haksız Fiil Hukuku* ["Tort Law"], Oniki Levha, İstanbul 2019, pp. 580-581.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481 (S.D.N.Y.)

findings below and concluded that the amount of non-pecuniary damages should be increased:

"*Under Article 47 of the Law of Liabilities No. 818, (Article 56 of the Turkish Code of Obligations) the funds a judge will award to a claimant as non-pecuniary damages by keeping in mind special considerations shall be of an equitable nature. This amount to be awarded bears a unique quality which includes a restitution-like function to ensure giving solace to the aggrieved party. In addition to not being a penalty, it also does not aim to cover losses which pertain to the law of assets. Accordingly, the limit of such damages should be set according to its purpose. The amount to be ascertained should be up to what is necessary to attain the effect of the desired sense of contentment (satisfaction) under the prevailing circumstances. Special considerations and circumstances which might affect the amount of non-pecuniary damages to be ascertained were clearly established in the explication for the Decision to Merge Court of Cassation Precedents dated 06/22/1966, numbered 7/7. Because these elements might differ in each case, a judge should demonstrate in the decision the reasons affecting their discretion in this regard in accordance with objective criteria.*

*In the case at hand, when the date and unfolding of the event; aggravated felony court's grant of review; social and economic circumstances of the parties; and the principles established above are considered together, the amount of non-pecuniary damages awarded to the plaintiffs falls short. It was incorrect to make a ruling in writing when it was necessary to ascertain a higher level of non-pecuniary damages for the plaintiffs. It has become necessary to vacate the decision for this reason.*"[6]

18. Even though the consent or failure of an aggrieved party would ordinarily serve as a reason for a reduction in damages under TBK Art. 52, it is a point of contention in Turkish Doctrine whether the regulation here would apply to damages pertaining to the loss of means of support in cases of death and injury[7]. Furthermore, Court of Cassation's Civil Law Assembly found in two separate decisions dated 6.15.2011 and 02.22.2012 that the faults of deceased persons in losing their lives should not be

---

6  Court of Cassation, 4th Civil Chamber, 23.5.2018, Docket No. 201677542, Decree No. 2018/4400-Lexpera.

7  See **Başak Baysal**, *Zarar Görenin Kusuru* ["Failure of the Aggrieved Party"], 12 Levha, İstanbul 2012, p. 234 *et seq.*

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

regarded as a reason for reduction in claims pertaining to the loss of means of support, and awarded full damages.[8].

19. The theory of assumption of a risk is matter of discussion in Turkish law and it is criticized substantially, it is accepted that the theory has limited application such as sports events.[9] Thus, in the case at hand, whether victims of the possible case will be found to have assumed the risk or not remains a theoretical discussion. Article 52 of the Turkish Code of Obligations (TBK) permits a finding of contributory negligence where one is "giving consent to the damage" and it cannot be accepted that a person who engages in war consents his own death. Therefore, when a victim's consent to the harm or whether they had fault in the occurrence of the outcome could not be proven, in my opinion, and it would be quite hard for the assumption of risk or contributory negligence theory to be raised as a reason for reduction in the damages. For contributory negligence to be raised and to assert that the plaintiff assumed the risk, it has to be proven that the plaintiff put himself in danger while it was possible for him to avoid the danger[10].

20. The determination of Prof. Büyüksağiş's regarding the award of $100,000 would be a record is a subjective one. He did not base this on any data. There isn't any existing specific upper limit in this sense in terms of Turkish law. Courts conduct their investigations into each case specifically and take accounts of the specific circumstances of the plaintiffs. For example, in a case with American plaintiffs seeking damages, the court could and would be expected to take into account that the plaintiffs are American, and they could offer evidence of what an appropriate amount of damages is for plaintiffs in their situation. This could include examples of damages issued to similarly situated Americans in the United States. Therefore, if the award terms in the specific case requires a higher amount, there is no obstacle for a decision to be made in this direction. Certainly, Turkish courts can rule an award higher than $100,000. For example, the Turkish Court of Cassation affirmed the court's decision regarding an award of $300,000 for an incident in which there had been an explosion during gas supply. In order to see on what grounds the non-

---

[8]  For the decisions, see Court of Cassation, Assembly of Civil Chambers, 15.06.2011, Docket No. 17-142, Decree No. 411; Assembly of Civil Chambers, 22.2.2012, Docket No. 2011/17-787, Decree No. 2012/92- Lexpera.

[9] Baysal, p. 210 *et seq.*

[10] **Haluk Nami Nomer**, *Haksız Fiil Sorumluluğunda Maddi Tazminatın Belirlenmesi* [Determination of Economic Damages in Tort Liability], İstanbul 1996, s. 106-107.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

pecuniary damages was accepted the relevant part of the order is included below[11]. Again, Turkish Court of Cassation found the amount of the non-pecuniary damages which was ruled as 500,000 TRY in a divorce suit, insufficient and vacated the decision in that way[12]. The decision to vacate was given on 02/06/2018. When the USD/TRY exchange rate[13] on that date is checked, it is understood that the amount that was found insufficient by the Turkish Court of Cassation was higher than $100,000 as the buying rate was 3.77. As a last example, in the Kemal Gülman-Feryal Gülman couple's divorce suit, it can be understood from the news website cited that the court ruled in favor of Feryal Gülman for an award of 30,000,000.00 TRY and after this ruling's reversal, the award was ruled as 20,000,000.00[14].

### D. Evaluation of The Findings Regarding Halkbank's Stipulation to Pay Treble Damages

21. Prof. Büyüksağiş has expressed that the stipulation given in the name of Halkbank was not enforceable in Türkiye on grounds that it was not binding on Halkbank, that it was not directly addressed to the victims, and that the courts would still be bounded by the amount of the harm.

22. As a rule, only competent authority can make a commitment for Halkbank which will put Halkbank under debt. Otherwise, it is impossible for commitment to be binding on Halkbank. Therefore, Halkbank might argue that the stipulation in question was not binding on itself.

23. However, the fact that the person who made the commitment on behalf of the bank is not viewed as an official organ by the bank, does not mean that their

---

[11] Court of Cassation, 19th Civil Chamber, 06/04/2016, Docket No. 2015/15906, Decree No. 2016/7010-Lexpera When the USD/TRY exchange rate on 06/21/2016 which is the date of the decision to vacate, is checked, it is seen that the buying exchange rate was 2.82, therefore the non-pecuniary damages awarded in TRY was over $100,000

[12] For the decision, see. Court of Cassation 2nd Civil Chamber, 02/06/2018, Docket No. 2017/248, Decree No. 2018/1451-Lexpera.

[13] https://www.tcmb.gov.tr/kurlar/201802/06022018.xml

[14] For the news see.: https://www.sabah.com.tr/galeri/magazin/60-milyonluk-davada-son-karar-sosyetenin-unlu-cifti-kemal-gulman-ile-feryal-gulman-8-yil-sonra-bosanmisti



Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case; Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

stipulation will not be binding in terms of its outcomes. First of all, there isn't any obstacle for the bank to use representatives who don't hold the organ title, in its matters of law with third parties[15]. The Bank's Board of Directors in its decision dated 12/20/2023 and 47-01 numbered, has made decisions regarding granting authority of making commitments up to treble damages to Head of Legal Affairs. In relation to Board of Director's this decision, it should be acknowledged that Mr. Sevimli's stipulation is within the framework of power of attorney and is binding on the Bank.

**24.** Even if situations where the person who made the stipulation was not a representative formally authorized, the person who made the stipulation can be characterized as "effective organ" and in this case the stipulation in question would be binding on the Bank[16].

**25**. The Constitutional Court in its ruling dated 02/14/1989, Case no. 1988/15 – Decision No. 1989/9 has expressed these very statements: "According to the Banking Law's Article 5 dated 04/25/1985, numbered 3182, banks can be established as joint stock company. The joint stock company is a partnership with real entity (Commercial Law Article 137). Articles 45, 47, 48 and 49 of Civil Code is also applied to joint stock companies (Commercial Law Article 138). According to the article 318 of Commercial Law which is appropriate for first clause of Article 48 of Civil Code, joint stock company is managed and represented by administrative council. _The concept of Organ is interpreted in a broad sense in the doctrine and Court of Cassation case laws. Thus, organ is not limited only by its statute or authorized persons who establishes the legal entity's will and independently makes a decision by getting elected according to the law, also other individuals who were not showed clearly as authorized person in its status are viewed within the organ concept._ For example, bank manager, deputy bank manager, manager representative, commercial representative, commercial agent, section chief, branch chief, general secretary of board of directors, liquidator can be viewed as organ of the legal entity. The reason of bringing in such a

---

[15] On this matter see. **Murat Yusuf Akın, Özge Kuru,** _Anonim Şirketlerde Fiili Organın Temsil Yetkisinin Varlığı Sorunu_ [The Problem of the Existence of the Representation Authority of the Effective Organ in Joint Stock Companies], İstanbul Aydın Üniversitesi Hukuk Fakültesi Dergisi, 2022, C. 8. S. 1, pp. 23-24.

[16] **Mustafa Dural / Tufan Öğüz;** _Kişiler Hukuku_ [Law of Persons], Filiz Kitapevi, İstanbul, 2021, pp. 258-259; **Akın/Kuru,** p. 24 _et seq._

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

*vast content to organ concept is to execute justice and rightness by means of ensuring
fairer distribution of the responsibility"17.*

**26.** In the event of a possible suit in the case at hand, the stipulation made by
Mehmet Sevimli, Esq. will be evaluated in this sense and if the "effective organ" or
"representative" titles of Mr. Sevimli are confirmed, it can be concluded that the
stipulation in question is binding on the Bank. Apart from this, other facts such as
the conditions surrounding the stipulation as well as the Bank's attitude towards
this commitment would also be taken into consideration, and it would be assessed
whether the Bank's actions would mean the adoption or approval of said stipulation.
Here, the stipulation was submitted to a court which is already hearing a lawsuit
brought by the plaintiffs. It is not entirely correct that the plaintiffs are actually not
the addressees, and the Bank may not realistically contest a stipulation entered into
as required by a defense argued in front of the court.. In cases where there is a
consent to this stipulation, even an implicit one, it will be concluded that the said
stipulation is binding on the Bank (Turkish Code of Obligations Article 46).

**27.** Prof. Büyüksağiş found that the said stipulation would be ineffective even if it
was binding on the company and there would be no means to implement it. He
based this finding on grounds that the said declaration was made addressing the
court in which the proceeding took place, not directly to the respondents, and the
courts would nevertheless acknowledge themselves limited by the amount of the
harm.

**28.** For a declaration of will regarding a legal act or debt commitment to be effective,
it does not necessarily have to face the beneficiary. Pursuant to the Article 129 of the
Turkish Code of Obligations, an execution might be found in favor of a person who
is not a party of the contract. With the implementation of this provision, a statement
made by a person to another person, not directly to the beneficiary, in a way to put
himself under an obligation, will have to be accepted as effective "for the benefit of
the third party". Plaintiffs in this case clearly fall within the concept of third party
beneficiary status for this stipulation.

---

17 For the decision see **Official Gazette**, 02/04/1991, issue 20776

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

**29.** A commitment for treble damages would constitute a legal act that puts the defendant bank under an obligation. The fact that this commitment is directed to the tort provisions is a misconception. It is possible for a damages agreement to be made between the tortfeasor and the victim of the tort, and here, the principle of contractual freedom applies, not the criteria for determining the damages in tort. Here, it is not a contract that is made before the tort occurs but rather a transaction that is made after the tort occurs and the damage is done. At this point, the parties may agree on any amount of damages they wish. Since this agreement will be in the nature of a contract binding the parties, it will be effective even if the agreed amount of damages exceeds the amount of harm, and will be the ground for a decision in a possible case, not as a tort assessment, but as the execution of the contract. In other word, with this commitment, the principle that the damages in tort cannot exceed the amount of harm will not be considered as violated. After the harm has occurred, the parties may release each other, as well as determine the amount of damages. What is in question here is the determination of the amount of damages. While the courts should accept the loss as the upper limit in the absence of a contract between the parties, if there is such a contract, the courts will not award damages limited to the harm, since the suit to be filed will already be in the nature of a demand for the execution of this contract. Prof. Büyüksağış thus conflates two distinct issues: how the Turkish court will calculate damages, and whether the court will enforce, as a contract or legal transaction, Halkbank's agreement to pay treble damages as a matter of a binding arrangement between the parties or a stipulation by Halkbank which is binding on itself.

**30.** The commitment in the case at hand will be considered effective as a legal act that puts the Bank under an obligation. There will be no basis for the courts to ignore this legal act regarding the determination of damages and still consider themselves limited to harm in terms of the amount awarded to the plaintiffs.

## E. Evaluation Regarding the Findings That the Cases Will Not Be Held Together and That This Will Lead to Negative Consequences

**31.** Prof. Büyüksağış stated that the Turkish Courts lack experience in class actions, that the plaintiff's cases may have to be tried separately, and that even if the cases are merged, they will maintain the character of a separate case, and concluded that this would lead to negative consequences for the plaintiffs.



Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

**32.** First of all, pursuant to Article 166 of the Code of Civil Procedure, it is possible to merge and try the related cases together upon request or ex officio. The connection is defined in clause 4 of the same article as *"the cases arising out of the same or similar reasons, or the ruling to be issued on one of them is of a nature to affect the other"*. In terms of the case at hand, there will be conditions for the merging of the cases against the same defendant based on the same allegation of the same action and tort, and it is likely that these cases will be merged. Apart from this, it is also possible for the parties to come together and file the suit in question together. Article 57 of the Code of Civil Procedure clearly regulates that more than one person may voluntarily unite and file a suit together. In that instance, no questions will emerge regarding the matter of "merger".

**33.** The main purpose of both Article 57 and 166 of the Code of Civil Procedure is to prevent the courts from making different decisions on similar matters[18]. Thus, even if serial or multiple suits are filed, it will be possible for the courts to merge the cases in order to prevent different decisions at the first instance court level. Furthermore, it should be emphasized that even if the cases are not merged, it will be possible to appeal against the decisions of the first instance courts, and stare decisis will be ensured even if different decisions are made.

### F. Evaluation of The Findings Regarding the Procedures for The Discovery

**34.** Prof. Büyüksağiş asserts that in Turkish proceedings, the parties may remain silent with respect to the evidence against them, which may lead to negative consequences in terms of the case at hand. Büyüksağiş partially bases this assertion on Article 400 of the Code of Civil Procedure. However, Article 400 of the Code of Civil Procedure is not a suit in the sense of a tort suit to be filed by the plaintiffs, but a suit for the determination of evidence. This case is not an action for performance, and the court does not make a judgment that constitutes an order.

---

[18] In one of its own decisions, 2[th] Civil Chamber of the Court of Cassation stated this intention in the following words: "the provisions on merging and separation of cases are regulated in Articles 166 *et seq.* of the Code of Civil Procedure No. 6100, the purpose of which is to serve procedural economy and to preclude conflicting decisions on the same matter". See. Court of Cassation 13th Civil Chamber, 02/03/2016, Docket No. 2014/444042, Decree No. 2016-2749-Lexpera.

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

**35.** In the possible tort suit to be filed by the plaintiffs in Turkey, they will claim damages and a damages order will be requested from the court against the defendant Halkbank. Pursuant to the provisions applicable to this case, the court may notify the relevant authorities and bodies and third parties to obtain the evidence that the plaintiff does not have in their possession (Article 195 of the Code of Civil Procedure), and the evidence that cannot be obtained elsewhere and cannot be brought may be heard by the court by rogatory in their own place (Article 197 of the Code of Civil Procedure). Again, pursuant to Article 219 of the Code of Civil Procedure, *"the parties are obliged to submit to the court all documents that they or the other party rely on as evidence and that they have in their possession"*. In addition, pursuant to Article 221 of the Code of Civil Procedure, the court may similarly order the third party who has the documents to produce the documents. According to Article 220 of the Code of Civil Procedure, in the event that the document is not produced by the party despite being ordered to produce it, depending on the situation, the court may accept the other party's declaration regarding the content of the document.

**36.** As can be seen, in Turkish law, instead of the freedom not to submit the evidence against oneself, rather there is an obligation to submit it. Article 250 and clause 3 of the Article 291 of the Code of Civil Procedure, which Prof. Büyüksağiş provides as an example for avoiding the submission of evidence, are not directed against the parties of the case, but against third parties, and are only related to testimony and discovery in their own place.

### G. Evaluation on the Findings Regarding Attorney's Fee Agreements

**37.** Prof. Büyüksağiş stated that in Turkish Law, it is not possible for attorneys to agree on a fee depending on obtaining a victory in a case, and that lawyers do not decide on a fee lower than the fee in the minimum fee schedule for attorneys.

**38.** Pursuant to Article 164 clause 1 of the Attorneyship Law, *"the attorney fee is the amount or value of the legal assistance provided by the attorney"*. According to the liberty of contract which is applicable to attorney retainer agreements, the parties may freely agree on this fee, without prejudice to the limitations set forth in the law. As a rule, the agreed fee cannot be lower than the minimum fee schedule for attorneys which is applicable to attorneys (Article 164 clause 4 of the Attorneyship Law). However, as stated in the doctrine, despite the agreement made by the parties regarding the fee, if the attorney later demands an increase in this fee, it will cause

Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

damage to the trust established with the client[19]. Thus, the doctrine does not argue
that if the parties agree on a fee which is below the minimum fee, the attorney who
accepts the fee below the minimum fee can no longer act contrary to this trust that
he has established with the client, and that the attorney's request regarding the
increase of the fee should be declined.[20]

**39.** The Turkish Court of Cassation also makes this finding in its decision and does
not accept the pleadings that the fee is below the minimum fee schedule for
attorneys as it violates the good faith rule. The relevant part of the decision is as
follows:

*"Considering both the Attorney's fee agreement dated 06/01/2009 signed by the parties
and the letter dated 11/04/2011 written by the plaintiff following the finalization of the
lawsuit, the request to pay the attorney's fee as 5% of the case value of TRY 456,312.50,
it is an abuse of authority according to Article 2 of the Turkish Civil Code numbered
4721 to claim that the claimant attorney cannot agree on an attorney's fee below the
Minimum Fee Schedule For Attorneys in accordance with the Article 164 of the
Attorneyship Law. And this could not be sustained by law. Thus, the court's written
decision to grant the filing of the lawsuit based on the principal receivables when the
court should instead have calculated the attorney's fee, which had been agreed on as
5% of TRY 456,312.50 as the lawsuit's value, and ruled on basis of that calculation's
outcome contravenes the procedure and law, and requires overturning."[21]*

**40.** As a matter of fact, the Court of Cassation described in starker terms that a
lawyer entering into a fee agreement lower than the Minimum Fee Schedule may
not ask for a fee higher than what was decided in the agreement:

*"The fee agreement executed between the parties establishes the retainer fee as TRY
10,000. Being attorneys, the plaintiffs should know better than anyone else the
consequences of a contract they enter. Even though the Attorneyship Law provides
that no representation fees lower than the Minimum Fee Schedule for Attorneys may*

---

[19] **Özcan Günergök**, *Avukatlık Sözleşmesi (Attorney Retainer Agreement)*, Ankara 2003, p. 143. *See
also.* **Haluk Burcuoğlu**, *Avukatlık Sözleşmesi ve Avukatlık Ücreti İle İlgili Bazı Sorunlar (Attorney
Retainer Agreement and Some Issues Regarding the Attorney's Fee)*, TBB Dergisi, Issue 49, 2003, p.
69.

[20] **Günerkök**, *Avukatlık Sözleşmesi (Attorney Retainer Agreement)*, p. 143.

[21] Y.13.HD. 15.10.2014, E. 26928, K. 31322-Lexpera.



Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

*be set, this provision does not entitle a lawyer to ask for a fee exceeding what was
decided in the agreement where a lawyer enters into an agreement below the Schedule.
The determination in the agreement is binding on the parties and it is valid. The fact
that the agreement specifies a fee lower than what should have been determined under
the afore-mentioned provision of the law is binding upon the lawyer as to their client."*[22]

**41.** Apart from that, it is useful to point out that the Attorneyship Law does not ban
lawyers from taking on pro bono cases; it only introduces the requirement for them
to declare this, i.e., that they have taken on a case without receiving any payment to
the Bar. Attorneyship Law Article 164/f., 4/c.2 reads as follows: "*When a case is taken
over without any payment, this shall be communicated to the Bar's board of directors.*"

**42.** It is also possible for the Attorney's Fee Agreement to be decided on as a
"percentage fee", i.e., based on the value of the lawsuit. In that case, it is a legal
requirement to take into consideration the provision of the Attorneyship Law's
Article 164/II on the validity of the agreed fee. Reading as "*the value of the action or
judgement, or a certain percentage of the money, not exceeding twenty-five percent,
may be agreed as attorney's fee*", this provision is considered to have introduced a
cap on the percentage-based attorney's fee.[23]

**43.** The attorney's fee could also be made contingent on a success requirement. In
this context, the doctrine considers as applicable and fair the fee agreements
executed particularly with institutions such as banks, etc. where the counsel is
entitled to payment only if they are able to make a collection.[24]

In a decision, the Court of Cassation's 13th Civil Chamber made the findings below,
and clearly ruled that attorney's fees could be based on the condition that the
prosecuted amount is actually collected from the other party.[25]

*"Article 12 of the agreement made between the parties on March 10, 2008, titled
'Attorney's Fee', provides that 'In the matters appointed to or which will be appointed
to the counsel; for the counsel to be entitled to the representation fee to be paid by F2*

---

*22* Y.13.HD. 13.06.2013, E. 2013/3050, K. 2013/16076.

*23* On this matter, see **Günergök**, *Avukatlık Sözleşmesi (Attorney Retainer Agreement)*, p. 130.

*24* **Candaş İlgün**, *Avukatlık Ücret Sözleşmesi (Attorney's Fee Agreements)* Adalet Yayınevi, 2013, p. 26

*25* Yarg. 13. HD. T. 30.06.2012, E. 2014/28042, K. 2015/22649-Lexpera.



Prof. Dr. ZEKERİYA KURŞAT

İstanbul University, Faculty of Law
Faculty Member, Department of Civil Law

Case: Daniel Hughes, et al. v. Reza Zarrab and Turkiye Halk Bankasi A.S., No. 1:23-cv-6481
(S.D.N.Y.)

*when it is granted in our favor and/or ruled by the court, it is required that the execution proceedings are finalized, and the entirety of the receivables are actually collected along with all their appertaining interest payments and other ancillaries.' The agreement executed between the parties has the characteristics of a legal counselling service agreement, and it is valid. It also cannot be accepted that the fee established by the agreement violates the Attorneyship Law. Then, the dispute underlying the lawsuit should be resolved in accordance with the provisions of this agreement which the parties entered into on their own free will and which is valid."*

**44.** In light of these, one could conclude that if the case at hand is litigated in Türkiye, the plaintiffs would be able to make an attorney's fee agreement with their counsel; this agreement could be contingent upon success; they could agree on not paying any fees if their claims are dismissed; they also could agree with their counsel on not making any payments to them; and even though agreeing on any fees below the Minimum Fee Schedule for Attorneys is prohibited as a rule, their counsel could not raise this as a defense since it would violate the good faith rule.

**45.** I declare under penalty of perjury under the laws of the United States of America, that the statements I have made below are true and correct to the best of my knowledge and belief.

This report was signed on February 27, 2024.

Prof. Dr. Zekeriya Kürşat



**Prof. Zekeriya Kurşat, S.J.D.**

Istanbul University, Faculty of Law
Civil Law Professor
zkursat@Istanbul.edu.tr

**OVERVIEW:**

Prof. Kurşat is a tenured professor teaching civil law at Istanbul University's Law School.  He has been with the university since 2000. He has taught and continues to teach on the following subjects: "Law of Persons," "Family Law," "Code of Obligations," "Property Law," "Inheritance Law," and "Health Law." He also teaches on various specialized subjects in the graduate and doctoral level law school programs offered by the Institute of Social Sciences at Istanbul University.

In the past, he studied and taught in German universities as assistant and associate professor and as professor in the United States.

Dr. Kurşat has published four scholarly books and several academic articles. He provides consultancy services to various organizations on subjects such as contractual law, liability law, property, inheritance and family law. He provides expert opinion on the same subject areas in certain courts.

Dr. Kurşat served as arbitrator in various disputes brought before the Turkish Football Federation Dispute Resolution Committee. He also served as the Chairman of the Disciplinary Board of the Turkish Sailing Federation. In 2014, he received Certified Mediation training, passed the exams and was awarded the title of mediator.

Prof. Kurşat was appointed as the Vice Chancellor of the Turkish–German University in 2018. He also teaches Property Law at this institution.

## I.    ACADEMIC EXPERIENCE

**Juris Doctor (JD)**                          : Istanbul University/Faculty of Law/1999.

**Master of Laws (LL.M.)**    : Istanbul University/Institute of Social Sciences/Department of Private Law/Concept of Fraud In the Field of Code of Obligations/2002.

**Doctor of Juridical Science (S.J.D.)** : Istanbul University/Institute of Social Sciences/Department of Private Law/Cessation of Common Ownership/2007.

**Assistant Professor** : Istanbul University/Faculty of Law/2009.

**Associate Professor** : Istanbul University/Faculty of Law/2012.

**Professor** : Istanbul University/Faculty of Law/2017.

## II.   ACADEMIC PUBLICATIONS AND ACTIVITIES

## A. PUBLICATIONS

**1. Books:**

**1.** The Concept of Fraud In the Field of Code of Obligations, Kazancı Press, Istanbul, 2003.

**2.** Cessation of Common Ownership, Arıkan Press, Istanbul, 2008.

**3.** Precautions for Protection of Estate, Filiz Bookstore, Istanbul, 2010.

**4.** Turkish Civil Code–Turkish Code of Obligations –Implementation Law (Halil Akkanat, Bilgehan Çetiner, Zekeriya Kurşat, Filiz Bookstore, Istanbul 2014, 2016, 2019.

**5.** Construction Contract, Filiz Bookstore, Istanbul 2017.

**2. Books Section:**

**1.** Defective Intentions, Istanbul Şerhi Turkish Code of Obligations, Vedat Bookstore, Istanbul 2017, pp. 369–430

**2.** Section: 66: *Medical Malpractice Liability*/Liability Arising from Faulty Medical Intervention (Adem Sözüer, Melikşah Yasin, Zekeriya Kurşat); Hospital Administration, Ed. Haydar Sur, Tunçay Palteki, Nobel Tıp Bookstores, Istanbul 2013.

**3.** "*The Effects of the Law On the Transformation of Disaster–Prone Areas (Law No. 6306) In the Field of Private Law,*" Urban Transformation Law, Ed. Melikşah Yasin, Cenk Şahin, On İki Levha, Istanbul 2015.

**3. Scholarly Articles:**

**1.** "*Impossibility Concept and Effects in the Construction Contract In Return For Land Share,*" Dedicated to Prof. Dr. Ergun Özsunay, Istanbul, 2004, pp. 751-777.

**2.** "*Co-Pledge,*" Dedicated to Prof. Özer Seliçi', S.J.D., Istanbul, 2006, pp. 393–426.

**3.** "*Legal Responsibility of Nurses,*" Istanbul University Faculty of Law Dergisi, Vol. LXVI, Issue 1, Istanbul, 2008, pp. 294–321.

**4.** "*The Rules of Forms Stipulated By The Consumer Protection Law And Sanctions for Violation Of Form Requirement,*" Dedicated to Prof. Zahit İmre, S.J.D., Istanbul, 2009, pp. 455–468.

**5.** "*Ban on Establishment of Real Rights In Commonhold Management Plan And Its Implementation Practice,*" Dedicated to Prof. Hüseyin Hatemi, S.J.D., Vol. II, Istanbul, 2009, pp. 1177–1188.

**6.** "*Principles Of Granting Custodial Right in the Light of Court of Cassation Rulings,*" Annales de la Faculté de Droit d'Istanbul, Vol. 41, Issue 58, Istanbul, 2009, pp. 257–275.

**7.** "*Findings On Sales Transactions Performed In Accordance With Village Law Supplementary Article 13 ,*" Legal law Journal, Istanbul, 2010, Vol. 8, Issue 95, pp. 3821–3834.

**8.** "*The Problem of Qualification of Works and Proxy Contracts and the Provision of Qualification,*" Istanbul University Faculty of Law Dergisi, Vol. LXVII, Issue 1–2, Istanbul, 2009, pp. 142–166.

**9.** "*Assessment On Authorization Of Notaries To Issue Inheritance Certificates,*" Dedicated to Prof. Şener Akyol, S.J.D., Filiz Bookstore, Istanbul 2011, pp. 583–596.

**10.** "*Assessment Of Ordinary Partnership Provisions In Our New Code of Obligations,*" Istanbul University Faculty of Law Dergisi, Vol. LXX, Issue 1, Istanbul, 2012, S. 301–320.

**11.** "*Assessment of the Constitutional Court Rulings on Uncontested Divorce and Alimony,*" Symposium on the Assessment of the Constitutional Court Rulings on Civil Law, Ed. Tufan Öğüz, İlhan Helvacı, On İki Levha Publications, November 2013.

**12.** "*Legal Liability of Medical Analysis Laboratory Managers For Laboratory Errors,*" Annales de la Faculté de Droit d'Istanbul, Vol. 45, Issue 62, Istanbul, 2013, pp. 211–242.

**13.** "*Observations On the Concept of Family House (Matrimonial Home),*" Dedicated to Prof. Hasan Erman, S.J.D., Der Publications, Istanbul 2015.

**14.** "*Analysis of the Concept of Consent in Medical Interventions From a Contractual Law Perspective,*" Law and Justice Review, June 2017, p. 53–62.

**15.** "*Effect Of Posting A Signature On The Electronic Screen, Which Is A Factor Of Written Form Requirement,*" Istanbul University Faculty of Law Journal, Vol. LXXV, Issue 1, Year 2017, pp. 413–430.

**16.** "*Assessment On The Communiqué On The Resolution to Amend Resolution No. 32 On The Law No. 1567 On The Protection of The Value of Turkish Currency And Implementation Thereof,*" Dedicated to Prof. Necla Giritlioğlu, S.J.D., On İki Levha Publications, Istanbul 2019.

**17.** "*Contracts against the Ordinary Course of Living under Turkish Contract Law*," Turkish Law Blog, January 29, 2020. (Co-author: Tolga Özer)

https://turkishlawblog.com/read/article/196/contracts–against–the–ordinary–course–of–living–under–turkish–contract–law

## B. EVENTS

### 1. National Events

### a. Conference Proceedings:

**1.** Responsibilities of Laborants From The Perspective of Law, Adana, 2011.

**2.** Assessment of the Ordinary Partnership Provisions of the Turkish Code of Obligations, Istanbul, 2011.

**3.** Assessment of the Contract of Surety Provisions of the Turkish Code of Obligations, Diyarbakır, Şırnak, 2012.

**4.** Defective Intentions, Ismet Sungurbey Anma, Istanbul, 2012.

**5.** Assessment of the Contract of Surety Provisions and The General Provisions Of The Turkish Code of Obligations, Manisa, Uşak, 2012.

**6.** Assessment of the Constitutional Court Rulings on Uncontested Divorce and Alimony, Symposium on the Assessment of the Constitutional Court Rulings on Civil Law, Istanbul, 2012.

**7.** Assessment of the Contract of Surety Provisions and The General Provisions Of The Turkish Code of Obligations, Van, 2012.

**8.** Assessment of the Contract of Surety Provisions and The General Provisions Of The Turkish Code of Obligations, Mersin, June 2012.

**9.** The Concept of Consent in Medical Intervention, Health Tourism Law Congress, Istanbul, June 2012.

**10.** Law No. 6306 From the Perspective of Private Law, Real Property Law Conference, Istanbul 2013.

**11.** Obligation To Contract, Consumer Protection Law No. 6502 When It Comes Into Force, Istanbul May, 2014.

### 2. International Events

### a. Conference Proceedings:

**1.** Turkish Private Legal Reform: New Civil Code, Code of Obligations and Law Procedure, Symposium on Turkey–Bosnia and Herzegovina, Istanbul University School of Law, 2012.

**2.** The Overview of Turkish Private Law, Turkish–Azerbaijan Law Day, Istanbul, September 2012.

**3.** Property Regime In Turkish Law, Turkey–Bosnia and Herzegovina Law Days, Sarajevo, April 2013. (Joint Paper with Prof. Halil Akkanat, S.J.D.)

**4.** Subscription Agreements in the Telecommunications Industry, Turkish–Swiss Law Days, Istanbul April 2014.

**5.** Civil Law Issues, Turkish–German Law Days, Berlin, September 2014.

**6.** Turkish–Macedonian Law Days, Turkish Civil Law Development, September 2017.

**7.** Current Issues of Construction Law, Procedures For Terminating Construction Contracts, Marmara University Faculty of Law, April 2019.


## C. EDUCATION – TEACHING EXPERIENCE


### 1. Undergraduate

**1.** Introduction to Civil Law, Law of Persons and Family Law, Istanbul University Faculty of Law, 2010–2011, 2014–2015, 2018–2019.

**2.** Introduction to Civil Law, Law of Persons and Family Law, Istanbul Aydın University, 2012–2013.

**3.** Introduction to Civil Law, Law of Persons and Family Law, Lefka European University, 2013–2014.

**4.** Law of Obligations General Provisions, Istanbul University Faculty of Law, 2011–2012, 2015–2016, 2019–2020.

**5.** Law of Obigartions, Istanbul University Faculty of Economics, 2009–2015.

**6.** Law of Obligations Special Provisions, Istanbul University Faculty of Law, 2009–2010, 2013–2014, 2017–2018.

**7.** Law of Obigartions Special Provisions, Atatürk University Faculty of Law, 2009–2010.

**8.** Property Law, Istanbul University Faculty of Law 2008–2009, 2012–2013, 2016–2017.

**9.** Inheritance Law, Istanbul University Faculty of Law, 2009–2010, 2013–2014.

**10.** Health Law, Istanbul University Faculty of Law, 2009–2015.

**11.** Property–Inheritance Law, Istanbul University Faculty of Economics, 2010–2012.

**12**. Property Law, Turkish German University Faculty of Law, 2016–2017, 2017–2018, 2018–2019.

**2. Graduate**

**a. Master's Degree (LL.M.)**

**1.** Medical Intervention Contract, Istanbul University, Institute of Social Sciences, Private Law Graduate Program, 2010–2011, 2011–2012.

**2.** Rent Agreement In Light of Court of Cassation Decisions, Istanbul University Institute of Social Sciences, Master's Program in Private Law, 2012–2013.

**3.** Expropriation Law, Istanbul University, Master's Program in Public Law, 2013–2014. (with Assist. Prof. Cenk Y. Şahin, S.J.D.)

**4.** Construction Contract In Light of Court of Cassation Decisions, Istanbul University Institute of Social Sciences, Master's Program in Private Law, 2014–2015.

**b. Doctoral Degree (S.J.D.)**

**1.** Judgmental Errors In the Field of Code of Obligations, Istanbul University, Institute of Social Sciences, Doctoral Program in Private Law, 2011–2012.

**2.** Construction Contract In Light of Court of Cassation Decisions, Istanbul University Institute of Social Sciences, Doctoral Program in Private Law, 2013–2014.

**D. DISSERTATIONS SUPERVISED**

**1.** *Support Alimony in the Turkish Civil Law*; Akif Genç (Master's Degree). Istanbul, 2012.

**2.** "*Co-Pledge,*" Tolga Özer (Master's Degree), Istanbul, 2013.

**3.** *Obligation to Provide An Explanation* for Any Medical Intervention, Cemil Buğra Yakut, Istanbul 2014.

**4.** *Franchising Agreement*, Bahar Şimşek, (Master's Degree), Istanbul 2015.

**5.** *The Legal Aspect of Aesthetic Medical Interventions and The Legal Liability of the Physician,* Esin Ünal, (Master's Degree)

**6.** *Right of Partition in Common Ownership and The Limits of This Right*, (Master's Degree)Ece Selin Yetkin, Istanbul 2019.

**7.** *Interconnection Agreement*, Gökcen Doğan, (Master's Degree), Istanbul 2019.

**8.** *Setting The Rent*, Hande Uysal, (Master's Degree), Istanbul 2019.

**9.** *Cessation of Exclusive Dealership Agreement And the Legal Ramifications of the Cessation*, (Master's Degree), Istanbul 2019.