# Supplemental Declaration of Dr. Melikşah Yasin

Case: Daniel Hughes, et. al v. Türkiye Halk Bankasi A.Ş, No. 23-cv-6481 (MKV) (S.D.N.Y.)

**PROF. DR**

**MELİKŞAH YASİN**

İSTANBUL ÜNİVERSİTESİ HUKUK FAKÜLTESİ
İDARE HUKUKU ANABİLİM
DALI ÖĞRETİM ÜYESİ

Ben, Prof. Dr. Melikşah Yasin, aşağıdaki hususları beyan ederim:

Geçmişim ve kimlik bilgilerim bu dava için daha önce sunduğum beyanda ele alınmıştı. Okuyucuyu saygıyla o belgelere yönlendiriyorum.

Bu destekleyici beyanımı, New York Eyaleti Güney Bölgesi Bölge Mahkemesi nezdinde görülmekte olan 23-cv-6481 numaralı hukuk davasına sunulmak üzere, Türkiye Halk Bankası Anonim Şirketi ("Halkbank" veya "Banka"), Türkiye Varlık Fonu ("TVF") ve Türkiye Varlık Fonu Anonim Şirketinin ("TVF A.Ş.") "Turkish Wealth Fund Management Company olarak tercüme edilir) hukuki statüsü ve T.C. Devleti ("Cumhuriyet" veya "Devlet") ile olan hukuki ilişkisi ile ilgili olarak, yine bu davaya sunduğum 20 Aralık 2023 tarihli uzman görüşünde açıkladığım hususlara ilişkin olarak ilave bazı soruların Türk idare hukuku çerçevesinde açıklamam talebiyle yapılan başvuru üzerine hazırlamış bulunmaktayım.

Bu talep doğrultusunda aşağıda bu hususlara ilişkin açıklamalarım bulunmaktadır.

Bu hukuki görüşün hazırlanması için piyasa koşullarına uygun olarak ve her zaman tarafıma bu tip mütalaalar için ödenen standart ücret miktarında tarafıma ödeme yapılmıştır.

Tarafıma bu rapor kapsamında yöneltilen sorulara ilişkin olarak, Amerika Birleşik Devletleri kanunları tahtında yalancı şahitlik cezasına tabi olmak üzere, aşağıda yaptığım açıklamaların görüş ve kanaatlerimi doğru ve gerçek biçimde yansıttığını beyan ederim.

Bu rapor 27.02.2024 tarihinde imzalanmıştır.

1



## I. HALKBANK'IN DEVLETLE İLGİLİ AMACI VE HALİHAZIRDAKİ İŞLEVLERİ

**1.1.** Mahkemeye sunduğum ilk uzman raporumda, Türkiye'de devlet ekonomi ilişkisinden, Cumhuriyetin kuruluşundan itibaren, ana hatlarıyla bahsetmiş ve Kamu İktisadi Teşebbüslerinin kuruluş amaçlarını açıklamıştım.

1982 Anayasası, devletin sadece ekonomiyi denetlemesini ve düzenlemesini değil, aynı zamanda kamu ekonomik hizmetleri sağlayarak ekonomiye katılmasını da gerektirmektedir.

Devlet Bankaları özelinde değerlendirme yapıldığında ise, özellikle kamu bankalarının kuruluş felsefesinin anlaşılması bakımından şu hususun altını çizmek gerekir: Cumhuriyetin kuruluş yıllarında iktisadi alanda en çok eksikliği hissedilen meselelerden biri, sermaye birikiminin yetersizliği ve milli bir bankacılık sisteminin bulunmamasıdır. Cumhuriyet'in kuruluşundan önce Anadolu'da anlamlı bir bankacılık sistemi bulunmuyordu. Sadece Halkbank'ın değil, bu dönemde kurulan tüm Devlet Bankalarının, ortak amacı ulusal kalkınma hedefini gerçekleştirilmesi ve ekonomik kalkınmayı destekleyebilecek bir bankacılık sektörünün oluşturulmasıdır. Bu nedenle Halkbank'ın kamusal menfaatler için kurulduğuna hiç şüphe bulunmamaktadır. Nitekim bu tür kuruluşların Anayasada "kamu iktisadi teşebbüsü" olarak nitelendirilerek, Anayasa tarafından kamusal bir denetim mekanizmasına tabi tutulması, Anayasa tarafından kamu tüzel kişisi olarak kabul edilmesi bu kuruluşların, kesinlikle özel bankalarla tamamen farklı bir hukuki statüye tabi olduklarının göstergesidir. Esasen Türk İdare Hukuku doktrin ve yargı kararlarında bu hususta herhangi bir tereddüt bulunmamaktadır.

**1.2.** Müştekiler, Halkbank ve diğer Devlet Bankalarının zaman içinde sıradan bankalara dönüştüğünü iddia etmektedir. Bu, mevcut gerçeklere ve Türk hukukuna dayanan makul bir sonuç değildir.

Bunun iki temel gerekçesi vardır:

*Birincisi*, Halkbank ve diğer Devlet Bankalarının içinde faaliyet gösterdiği Anayasal ve yasal rejim değişmemiştir ve bu kurumlar hala kamu kurumları olarak kabul edilmektedir.. Çünkü Türk İdare hukukunda, "kanunilik ilkesi"

geçerli olup, bu ilkeye göre, kamu tüzel kişilerinin görev ve yetkileri ancak kanunla (ve 2017 Anayasa değişiklikleri sonrasında değişiklikleri sonrası mümkün olan hususlarda Cumhurbaşkanlığı kararnamesi ile) düzenlenebilir. Kuruluş kanun veya kararnamesinde ya da Anayasa'da bir değişiklik olmaksızın bir kamu tüzel kişisinin görev ve yetkilerinin değişmesi mümkün değildir. Diğer bir ifadeyle kamu tüzel kişilerinin görev ve yetkileri, kendi başına toplumsal veya ekonomik bir değişime yanıt vermez, ihtiyaç duyulması halinde tabi oldukları mevzuatın değiştirilmesi yoluna gidilebilir. Veya bunların özelleştirilmesi yöntemiyle kamusal niteliğin (devlete olan aidiyet) sona erdirilmesi gerecektir. Dolayısıyla, genelde KİT'le özelde Halkbank için, böyle bir değişiklik olmadan hukuki statüleri veya görev ve yetkilerinin değişiklik olduğu ileri sürülemez. Bir dönem Halkbank, Devlet'e dilediği takdirde Banka'yı özelleştirme imkanı vermek amacıyla bir anonim şirket olarak yeniden düzenlenmiş olsa da, Devlet nihayetinde Banka'yı özelleştirmemeye karar vermiş ve bankanın hisseleri Özelleştirme İdaresi'nden alınmıştır. Her halükarda, anonim şirket olarak yeniden yapılanma, Banka'nın faaliyet gösterdiği Anayasal ve temel yasal rejimi değiştirmemiştir: Banka, Anayasa uyarınca, anayasal ve yasal denetim ve düzenlemelere tabi bir Kamu İktisadi Teşebbüsü olmaya devam etmektedir. Yeniden yapılanma, Banka'nın yeniden yapılanmasından sonra da yerine getirmeye devam ettiği ve bugün de yerine getirmeye devam ettiği kamu ve devlet işlerini de ortadan kaldırmamıştır.

*İkincisi,* kamu iktisadi teşebbüslerinin, ticari bazı faaliyetlerde bulunması, onların hukuki statüsünü değiştiren bir olgu değildir. Çünkü Türk İdare hukukunda; KİT'ler zaten kısmen iktisadi faaliyetlerde bulunmak üzere kurulurlar. İlk raporumda da açıkladığım üzere, Türk İdare hukukunda bu tür faaliyetlere "iktisadi kamu hizmetleri" denilmektedir. Ayrıca, yine Türk İdare Hukukunda, iktisadi amaçla kurulmamış kamu tüzel kişilerinin de tabi oldukları mevzuatın izin verdiği ölçüde, iktisadi faaliyette bulunmaları mümkündür. Örneğin; pek çok kamu tüzel kişisi, mevzuatlarının izin verdiği ölçüde, gelir getirici faaliyette bulunabilmektedir. Bu ticari faaliyetler, kesinlikle bu kurumları ticari bir kuruma dönüştürmez. Örneğin; Kamu Tüzel kişisi olduklarına hiç kuşku bulunmayan bu devlet üniversitelerinin, iktisadi faaliyetlerde bulundukları, çeşitli ticari işletmelerinin bulunduğu bir gerçektir. Bu ticari faaliyetler, bu üniversitelerin hukuki statüsünü elbette ki değiştirmemektedir.

**1.3.** Kamu bankalarının kamu ve devlet işlevlerini yerine getirmenin yanı sıra, ticari faaliyetlerde de bulunduğu ve diğer bankalar gibi ticari bazı bankacılık faaliyetleri de yürüttükleri doğrudur. Ancak, bu durum kesinlikle ticari bankalar ile aynı statüde oldukları anlamına gelmez. Öncelikle, aşağıda örnekleri ile açıklanacağı üzere, Kamu bankaları ile Özel bankaların tabi oldukları mevzuat arasında çok ciddi farklılıklar vardır. İkincisi; amaçları bakımından farklılıklar vardır. Kamu bankalarının, tek ve nihai hedefi kar elde etmek değil, yukarıda ifade edildiği üzere, Anayasa ile devlete verilen iktisadi görevleri yerine getirmesine katkı sunmaktadır. Bunun, işletmelerin eylemleri üzerinde gerçek bir etkisi vardır. Özel bankaların nihai ve tek amacı karlarını maksimize etmektir.

## 2. HALKBANK'IN DEVLET İLE OLAN HUKUKİ VE ORGANİK İLİŞKİSİNE İLİŞKİN AÇIKALAMALAR

Yukarıda açıklandığı üzere, Türk İdare hukukuna göre, Halkbank'ın bir devlet bankası olduğuna şüphe yoktur ve ticari faaliyetlerde bulunması, devlet idaresinin bir parçası olmasıyla ilgili statüsünü kesinlikle olumsuz etkilememektedir. İlk açıklamamda da belirttiğim üzere, Türk Anayasası'nın 123. Maddesi "idare, kuruluş ve görevleriyle bir bütündür" diyerek idarenin bütünlüğü ilkesine yer vermektedir ve Halkbank da bu idarenin bir parçasıdır.

Bu ilişkinin somut veriler ve Bankanın uygulamaları ile açıklanması, Halkbank'ın ticari bir banka değil, Türk Devleti'nin bir aracı olduğu konusunun daha iyi açıklanması ve ispatı bakımından aydınlatıcı olabilir.

**2.1. Banka'nın Halihazırda Kamu Yararı Amacını Önceliklendiren Hizmetler ve Kanunen Bankaya Tanınan Bazı Ayrıcalıklara Örnekler**

YASİN                                                                    4



Devlete Anayasa ile verilen görevlerden biri de 1982 Anayasasının 173.maddesinde düzenlenmiş olup, söz konusu hükme göre; *"Devlet, esnaf ve sanatkarı koruyucu ve destekleyici tedbirleri alır."*

Halkbank'ın 1933 yılında yasayla kurulmasındaki öncelikli kamusal amacı da, Anayasanın yukarıda aktarılan 173.maddesi ile Devlete verilen esnaf ve sanatkarların iktisadi açıdan desteklenmesi ve korunmasına yönelik bankacılık faaliyetleri tesis etmektir. Diğer kamu bankalarının da bu şekilde kendi spesifik kamusal öncelikli görevleri vardır[1].

Nitekim, Halkbank'ın Esas Sözleşmesi'nin 4. maddesinin 5. Fıkrasında Banka'nın amacı, "doğrudan veya Esnaf ve Sanatkârlar Kredi Kooperatifi yoluyla esnaf ve sanatkârların yanı sıra küçük ve orta ölçekli işletmelere de kredi imkânları sağlamak" olarak belirlenmiştir. Bu tür bir görev tanımı esasen bir ticari bankada bulunmaz. Bu düzenleme, bankanın devlete Anayasa ile verilen bir işlevi yerine getirdiğinin bir başka kanıtıdır.

Bu kamusal görev ve ayrıcalıkların uygulamaya yansıyan çok sayıda örneği bulunmaktadır. Bu kamu görevlerinin birçoğu kanun, yönetmelik, Cumhurbaşkanlığı Kararnamesi veya Bakanlar Kurulu Kararı ile verilmekte ve düzenlenmektedir. Bu raporda sadece fikir vermesi bakımından bazıları örnek olarak aktarılacaktır.

- Türkiye Cumhuriyeti'nin, esnaf ve sanatkarlara düşük faizli sübvansiyonlu kredileri yalnızca Halkbank üzerinden sağlamakta, piyasa koşullarından daha ucuza kullandırılan bu kredilerin sübvanse edilen kısımlarının merkezi bütçeden karşılanmakta olup, bu durum sadece devlet bankası olan Halkbank'a özel bir uygulamadır.

- 29.01.2010 tarihli Resmi Gazete'de yayımlanan 27477 Sayılı **Bakanlar Kurulu Kararı**; sanatkârlara, esnaflara ve bunlarla ilişkili kooperatiflere belirli kredi

---

[1] Anayasanın "Tarım, hayvancılık ve bu üretim dallarında çalışanların korunması" başlıklı 45.maddesine göre; *"Devlet, (…) tarımsal üretim planlaması ilkelerine uygun olarak bitkisel ve hayvansal üretimi artırmak maksadıyla, tarım ve hayvancılıkla uğraşanların işletme araç ve gereçlerinin ve diğer girdilerinin sağlanmasını kolaylaştırır."* Devlete tarımsal faaliyetlerle ilgili olarak verilen bu görevin ifası için kurulan kurumlardan biri de Türkiye Ziraat Bankasıdır. Görüldüğü üzere, esasen kamu bankalarının her birinin Anayasa ile devlete verilen bir görevin yerine getirilmesi amacıyla kurulan kamusal kuruluşlar olduğuna tereddüt bulunmamaktadır.



**YASİN**

5

kullandırımını zorunlu kılar. 01.04.2010 tarihinde Banka doğrudan kullandırım uygulamasına başlamıştır. Hazine destekli doğrudan kredi kullandırımlarında, müşterinin derecelendirme grubuna göre üst limit düzenlemeleri yapılmıştır.

» Ayrıca Devlet, doğrudan Halkbank'ın politika meselesi olarak kredi ödemelerine ilişkin uzatma izin verip vermeyeceği gibi kararları alır. Örneğin, 14/02/2023 tarihli ve 32104 sayılı mükerrer Resmi Gazete'de yayımlanan **2023/6789 sayılı Cumhurbaşkanı Kararı**'nda belirlenen kapsam uyarınca, 06/02/2023 tarihinde meydana gelen depremler nedeniyle, esnaf ve sanatkârların Bankadan 06/02/2023 ve öncesi tarihlerde kullanmış oldukları Hazine ve Maliye Bakanlığı faiz destekli kredi ödemeleri için başvuru şartı aranmaksızın, altı ay süreyle faizsiz olarak erteleme işlemi gerçekleştirilmiştir.

• Artık Türkiye'de vergi tahsilatları yalnızca Kamu bankalarının uhdesindedir, vergilerin kamu bankaları tarafından toplanmasına ilişkin ilgili Gelir İdaresi Başkanlığı mevzuatında: *"Vergi dairesi müdürlüklerince takip ve tahsilatı yapılmakta olan vergi, harç, ceza ve diğer alacakların vergi daireleri vezneleri haricinde, … (anılan kamu bankaları) vasıtasıyla tahsiline devam edilecektir."* İfadelerine yer verilerek, kamu alacaklarının tahsili hususunda, kamu bankalarına ayrıcalık tanınmıştır. Daha önce özel bankaların bazı vergileri toplamasına izin verilmiş olsa da, Devlet bunun genel olarak artık uygun olmadığını belirlemiş ve Halkbank da dahil olmak üzere Kamu Bankaları ile sınırlandırmıştır. Bu, devletin Halkbank ve diğer Kamu Bankaların özel bankalardan farklı davrandığını göstermektedir.

• Benzer şekilde, T.C. Ticaret Bakanlığı Gümrükler Genel Müdürlüğünün 21.05.2020 tarihli, 73421605-020 Sayılı "Protokol için İmza Yetki Devri" konulu resmi yazısında: *"Mükelleflerin ödemekle yükümlü oldukları ithalattan alınması gereken gümrük vergisi, KDV, Toplu Konut Fonu, Telafi Edici Vergi, İthal Harcı gibi yükümlülüklerin bankalar aracılığıyla tahsil edilmesine yönelik olarak Bakanlığımız, Hazine ve Maliye Bakanlığı ve özel bankalarla imzalanan protokoller Makamlarının 14.02.2020 tarihli ve 52314804 sayılı Onayı uyarınca feshedilmiş; tahsilat yetkisi sadece kamu bankalarına tanınmıştır."* İfadesine yer verilmekte, böylece bu kamu alacaklarının tahsilinin de özel olarak kamu bankları aracılığıyla yapılması sağlanmaktadır. Bu gümrük vergileri Devlet'in gelirinin önemli bir yüzdesini oluşturmaktadır ve yalnızca kamu bankaları tarafından toplanabilir.

- Türkiye'de Organize Sanayi Bölgesi yapım işleminde bankacılık hizmetleri kanunen Halkbank üzerinden sağlanmakta, uygun fonlamaya aracılık ve kontrol hizmetleri Halkbank tarafından sunulmaktadır. Organize Sanayi Bölgeleri, Sanayi Bakanlığı tarafından ülkenin belirli bölgelerini yeniden kalkındırmak için oluşturulan programlardır. Halkbank, bu kalkındırmaların finansal yönlerini yönetmekten sorumlu olan tek bankadır. Kredilerden faiz almaz; bunun yerine, devlet organları için geçerli olan komisyon çizelgesine göre bir komisyon alır.

- Kamu kurumlarının mali kaynaklarının yönetilmesi Hazine ve Maliye Bakanlığı tarafından çıkarılan "Kamu Haznedarlığı Yönetmeliği" esas ve usulleri çerçevesinde Halkbank dahil olmak üzere kamu bankalarında yapılmaktadır, . Bu nedenle kamu bankaları, ulusal bütçenin bir parçası olanlar da dahil olmak üzere devlet kurumlarının fonlarını yönetmek için kullanılan, etkin bir şekilde Devletin hazine kasalarıdır. Merkez Bankası, bakanlıkların çalışmalarını yürüttükleri kaynaklarını Halkbank'ta ve diğer kamu bankalarında bulunan hesaplara aktarır. Kaynakları genel bütçeye dahil olmayan diğer kamu kuruluşları kendi hesaplarını doğrudan Halkbank'ta veya diğer kamu bankalarında açar ve sürdürür. Dolayısıyla, Devletin nakit ödemeleri ile genel ve ek bütçeler kapsamındaki tüm ödemeler ve hesaplar kamu bankaları üzerinden gerçekleştirilir.

- Kamu bankası olarak Halkbank'ın birkaç vergi muafiyetleri söz konusudur;

Örneğin:

  - Bankanın yapısıyla ilgili 4603 sayılı kanunun 3. maddesinin dördüncü fıkrasında; *"Bu Kanun çerçevesinde yapılacak işlemler ve bu işlemlere ilişkin olarak düzenlenecek kağıtlar, her türlü vergi, resim ve harçtan müstesnadır."* İfadesine yer verilmektedir.

  - Keza 6802 sayılı Gider Vergileri Kanunu'nun 29/m maddesi uyarınca "Türkiye Halk Bankasının, ihtisas kredileri kapsamında küçük ve orta ölçekli sanayi işletmelerine verdiği krediler ya da bu işletmelerin dış ticaret işlemlerine yaptığı aracılık hizmetleri dolayısıyla aldığı paralar ile Esnaf ve Sanatkarlar Kefalet Kooperatiflerinin kefaleti altında esnaf ve sanatkarlara verdiği krediler dolayısıyla alınan paralar ve bu kooperatiflerin ortaklarından masraf karşılığı adıyla aldığı paralar," banka ve sigorta muameleleri vergisinden muaftır.



3. HALBANK YÖNETİMİ İLE DEVLET YÖNETİCİLERİ ARASINDAKİ HUKUKİ, MALİ VE ORGANİK BAĞ VE BANKANIN DENETİMİ

**3.1.** Halkbank bir kamu bankası olduğundan, yöneticileri Devlet tarafından belirlenmektedir. Türkiye Cumhuriyeti devleti, bankanın genel kurulu sıfatıyla, yöneticileri seçmekte ve bankanın resmi yönetimi de, yöneticilerin verdiği kararlarla yerine getirilmektedir. Türkiye Devleti tarafından atanan üyelerden oluşan Halkbank Yönetim Kurulu'nda, her zaman bir Bakan Yardımcısı görevlendirilmektedir. Devlet tarafından belirlenmiş olan Halkbank Yönetim Kurulu, devlet adına Halkbank'ın faaliyetlerinin yürütülmesini sağlamakta ve kontrolleri gerçekleştirmektedir. Bu denetim ve kontroller, herhangi bir zaman sınırlamasına tabi değildir. Yönetim Kurulu, banka faaliyetlerini istediği zaman ve yoğunlukta denetleme yetkisine sahiptir.

Halkbank'ın karar mekanizmalarının en tepesinde bulunan Yönetim Kurulu üyeleri, Devleti temsil etmeleri için bizzat Türkiye Cumhuriyeti devleti tarafından belirlenmektedir. Dolayısıyla Halkbank'ın aldığı kararların altında, devleti temsilen atanmış bu yöneticilerin imzaları bulunmaktadır.

Merkezi hükümet yetkililerinin yanı sıra devlet yöneticileri ile Banka yöneticileri arasındaki, bu organik ilişki dışında, sürekli ve düzenli görüşmeler de yapmaktadır.. Banka Genel Müdürü başta olmak üzere Yönetim Kurulu üyeleri ve Genel Müdür Yardımcıları gerek kamuoyu nezdinde gerekse kapalı toplantılarda olmak üzere Türkiye Cumhuriyeti Cumhurbaşkanı, Hazine ve Maliye Bakanı ve diğer devlet yetkilileriyle sık sık bir araya gelmektedir. Bu görüşmeler, Türkiye Cumhuriyeti devleti tarafından Halkbank'a verilen kamusal görevler kapsamında genel gidişat ve politikalara dair olabildiği gibi, çeşitli resmi toplantılar kapsamında da olabilmektedir. Nitekim yukarıda aktarılan bankaya verilen kamusal görev ve ayrıcalıklar bu kapsamda bir iletişimi de zorunlu ve gerekli kılmaktadır. Pratikte, Halkbank'ın %90'ından daha fazlasına sahip olan ve Halkbank'ı kanunen yöneten hissedarın görüşleri sık sık alınmakta ve

Halkbank'ın yönetim kararlarına dahil edilmektedir. Bu hükümetler veya kurumlar arası bir danışmanlığa benzer şekilde, doğrudan hükümet yetkilileri ve politikacılarla yapılan toplantılarla gerçekleştirilir.

**3.2.**Ayrıca, Halkbank, diğer KİT'ler gibi, Türkiye Cumhuriyeti Anayasasında Madde 165.maddesi kapsamında, TBMM'nin denetiminde tabidir. Söz konusu Anayasal hükme göre, *"Sermayesinin yarısından fazlası doğrudan doğruya veya dolaylı olarak Devlete ait olan kamu kuruluş ve ortaklıklarının Türkiye Büyük Millet Meclisi'de gerçekleştirilmesi esasları kanunla düzenlenir."*

Meclis Halkbank nezdindeki bu denetimini Türkiye Cumhuriyeti Sayıştay aracılığıyla asgari 5 kişilik bir denetçi ekibiyle, Banka içerisinde kendilerine daimî olarak tahsis edilmiş bir ofis alanında, rutin olarak, yıl boyunca aralıksız şekilde yürütür.  Sayıştay, işbu sürekli denetimleri sonucunda hazırladığı raporu TBMM Kamu İktisadi Teşebbüsleri komisyonuna iletir; denetim raporları ilgili alt ve üst komisyonlarda görüşüldükten sonra, TBMM genel kurulunda bilgi ve onaya sunulur. Müfettişler, gerekli olduğu durumlarda ara rapor sunabilir.

Müştekilerin bu denetim mekanizmasının amacını ve sıklığını sorguladıklarını anlıyorum. Denetim sıklığı sabittir: daha önce de belirttiğim üzere, beş yasama müfettişi şirket içinde daimi olarak bulunmaktadır. Ayrıca, 6085 sayılı Sayıştay Kanunu uyarınca amaç, devlet kaynaklarının uygun kullanımını sağlamak, devlet yönetiminde hesap verebilirliği ve şeffaflığı tesis etmek ve Halkbank da dahil olmak üzere kamu kurumlarının performansını değerlendirmektedir. Bu, kurumun amaçları doğrultusunda yarattığı faydayı ölçmek ve hesap verebilirliği sağlamak için performans denetimini de içermektedir.

**3.3.** Halkbank aynı zamanda mali açıdan Türk devletiyle bütünleşmiştir, öyle ki Halkbank'ın kârı Hazine tarafından gelir olarak kaydedilmektedir. Bu kârlardaki azalma zorunlu olarak Devletin gelirlerini etkiler. Diğer taraftan Devlet, Halkbank'ın Sermaye Yeterlilik Rasyosunun sağlanması da dahil olmak üzere Halkbank'ın sermayelendirilmesinden sorumludur. Bu nedenle, Halkbank'a yüklenen maliyetler, zararlar veya yükler, Banka'nın faaliyetlerini sürdürebilmesi için Hazine'nin ek sermaye katkıları yapmasını gerektirir. Son yıllarda Hazine, Banka'nın Devletin bir

kamu ekonomik hizmeti olarak faaliyet göstermeye devam etmesini sağlamak üzere pandemi sırasında defalarca olmak üzere Banka'ya defalarca ek sermeye girişinde bulunmuştur.

Türk Devleti, bir kamu bankası olması nedeniyle Halkbank'ın uzun vadeli dış borçlanmasına da kefil olmaktadır. Çok sayıda uluslararası anlaşmada Türk Devleti Halkbank'ın borç yükümlülüklerine kefil olarak listelenmiştir.

## 4. HALKBANK ÇALIŞANLARININ İSTİHDAM SİSTEMİ

Türk idare hukukunda kamu görevlilerinin istihdamına ilişkin tek bir sistem bulunmamaktadır. Birden fazla rejim vardır ve birçok kamu kurumunun kendi mevzuatlarıyla düzenlenmiş istihdam rejimleri bulunmaktadır. Halkbank'ta bu konuda bir örnektir ve çalışanları bazı yönlerden özel iş hukukuna tabiyken bazı yönlerden de açıkça özel çalışanlardan farklı muamele görmektedir.

**4.1.** Kamu tüzel kişileri, kamu görevlisi veya memur statüsünde personel istihdam edebileceği gibi, tamamen özel hukuk hükümlerine tabi çalışan da istihdam edebilir. Çalışanların istihdam rejimleri, bu kurumların statüsünü doğrudan etkileyen bir olgu değildir. Türkiye'de kamu görevlilerinin istihdamına ilişkin genel Kanun, 657 Sayılı Devlet Memurları Kanunudur. Diğer yandan; Türkiye'de her kamu kurumunun veya kamu tüzel kişisinin istihdam rejimi kendi kuruluş mevzuatı ile belirlenebilir.

Türkiye'deki idari teşkilat yapısı, Devlet ile bağlı kuruluşların ilişkisi doğru şekilde anlaşılmadıkça, bu konudaki tartışmalar doğru olmayan yorumlara neden olabilir. Şöyle ki; Türk idari teşkilatının "tüzel kişilerden" oluştuğu kabul edilmektedir. Bu tüzel kişiler ise, kuruluş mevzuatlarının belirlediği oranda özerktirler. Bu özerklik onları devlet teşkilatı dışına çıkarmaz. Sadece, işleyişlerini kolaylaştırmak için bazı kararlarını kendileri tarafından alınmasına izin verir. Dolayısıyla; kamu kurumları (1) kendi mevzuatları ile belirlenmiş esaslara göre personel alımı yapabilirler veya (2) Genel Kanunlara (657 Sayılı Devlet Memurları Kanunu, 375 Sayılı Kanun Hükmüne Kararname gibi) göre personel alımı gerçekleştirebilirler. Dolayısıyla bugün, Devlete



bağlı olan tüm kamu kurumları, bu iki ilkeye dayalı olarak personel istihdam etmektedir.

Bu nedenle, personel istihdamının Devlet tarafından doğrudan yapılması, hiçbir kamu kurumu için söz konusu değildir. Cumhurbaşkanının, Anayasanın 104. Maddesinin verdiği yetkiye istinaden sadece üst düzey kamu görevlilerini atama yetkisi bulunmaktadır. Diğer kamu görevlileri alımı, açıklandığı şekilde her kurum tarafından tabi olduğu mevzuat hükümlerine uygun şekilde gerçekleşmektedir.

Kamu kurumlarında tek tür istihdam yöntemi de bulunmamaktadır. Kamu kurumunun niteliği, faaliyet türü ve özellikleri dikkate alınarak farklı istihdam yöntemleri tercih edilebilmektedir. Farklı istihdam türleri arasında, atanma usuller, haklar ve yetkileri ve sorumluluklar ve ayrıcalıklar bakımından farklılıklar olabilir. Örneğin, kamu kurumlarında İş Kanunu hükümlerine göre tamamen özel hukuka tabi, hiçbir ayrıcalığı olmayan personel istihdam edilebileceği gibi, sözleşmeli veya geçici personel istihdamı da mümkündür. Bu her bir statünün hak ve yükümlülükleri tamamen farklı olabilir.

Bu açıklamalar göstermektedir ki; Türk İdari Teşkilatının yapısı gereği, her kurumun personel alımı usulleri ve sahip olduğu personel rejimi, tabi oldukları mevzuat ile belirlenmektedir.

**4.2** Halkbank üst yönetim, yukarıda açıklandığı üzere Devlet tarafından belirlenmekle beraber, Halkbank da diğer kamu kurumları gibi kendi mevzuatına tabi olarak personel alımı gerçekleştirmektedir. Bununla birlikte, birkaç özellik, Halkbank çalışanlarının özel sektör çalışanlarından farklı bir muameleye tabi tutulduğunu göstermektedir:

- Halkbank, çalışanlarını merkezi yönetimdeki bazı kurumların açtığı memuriyet sınavlarını temel alan sınavlarla istihdam etmektedir.
- Ayrıca özel bankalardan farklı olarak, Halkbank'ın yurtdışında yapacağı görevlendirmelerde Halkbank çalışanlarına hizmet damgalı gri pasaport verilmektedir. Bu pasaportlar, Halkbank çalışanlarının devlet adına çalıştıkları esasına göre düzenlenmektedir.
- Halkbank personeli, kamu personeline tahsisli, devletin sosyal tesislerinden faydalanabilmektedir. Bunlar arasında eğitim ve dinlenme te-



sisleri, çocuk bakım merkezleri, sosyal yardım tesisleri ve kamu personeline açık olan ancak özel sektör çalışanlarına açık olmayan diğer kamu yararına tesisler yer almaktadır.

- Halkbank bazen Halkbank ve diğer kamu kurumları arasında geçici görevlendirmelerle personel atar veya personele özel görevlendirmeler yapar. Halkbank ve diğer devlet kurumları arasındaki bu görevlendirmelere özel bankalar için izin verilmemektedir.

- Statü gereği, Halkbank'ın şube müdürleri ve üst düzey yöneticileri bulundukları mülki idarede protokolde yer almaktadır. Başka bir ifadeyle, kamu görevlilerinin katıldığı törenlerde Halkbank şube müdürleri ve yöneticileri de devlet protokolünün bir parçasıdır.

- Cumhurbaşkanlığı İnsan Kaynakları Ofisi'nde, Halkbank çalışanları "kamu çalışanı" olarak listelenmekte ve Hazine ve Maliye Bakanlığının personel dizininde değerlendirilmektedir.

## 5. HALKBANK'IN TÜRK KAMUOYU NEZDİNDEKİ ALGISI

Gerek resmî kurumlara ait sınıflandırmalarda gerekse kamuoyu algısında Halkbank, Türkiye'de çok net biçimde bir devlet bankası ve kamu bankası olarak görülmektedir.

Örneğin, yukarıda açıklandığı üzere, Halkbank yöneticileri ve şube müdürleri kamu etkinliklerini kutlayan devlet görevlileri protokolüne dahil edilmiştir.

Buna ek olarak, Cumhurbaşkanı ve Hazine ve Maliye Bakanı gibi devlet yetkililer, Halkbank tarafından başlatılan yeni devlet programlarını sık sık duyurmaktadır. Örneğin, 2019 yılında Başbakan Yardımcısı, küçük ve orta ölçekli işletmelere 250 milyar lira kullandırılmasının bir parçası olarak "esnaf ve sanatkarların finansmana daha kolay erişebilmeleri için yeni bir kredi ga-



ranti fonu" duyurdu. Başbakan Yardımcısı, "Yeni fon, ABD'nin esnaf ve sanatkarların finansmana erişimini hızlandırmak için devlet tarafından işletilen Halkbank'ın himayesinde başlatılacak" dedi.[2] 2019'da Türkiye Cumhurbaşkanı, TBMM'de yaptığı bir konuşmada "kamu bankası Halkbank'ın 350.000 yerel işletmeye 22 milyar Türk lirası (4 milyar Amerikan Doları) teşvik sağlayacağını" ve başka bir kamu bankasının "borçlu bireylerin kredi kartı borçlarını ödemeleri için kredi sağlayacağını" duyurdu.[3] Türkiye kamuoyunun gözünde Halkbank, devletin merkezi organlarıyla yakından ilişkilidir, devletin bir parçası olarak işlev görür ve devlet fonlarını kullanarak devlet programlarını yönetir.

PROF. DR.
MELİKŞAH YASİN

İSTANBUL ÜNİVERSİTESİ
HUKUK FAKÜLTESİ



---

[2] https://www.hurriyetdailynews.com/turkish-govt-to-launch-new-credit-guarantee-fund-to-ease-tradespeoples-access-to-financing--109391

[3] https://www.aa.com.tr/en/economy/turkey-president-erdogan-announces-new-social-support-measures/1358899

## PROF. DR.
## MELİKŞAH YASİN
ISTANBUL UNIVERSITY FACULTY OF LAW
FACULTY MEMBER AT THE DEPARTMENT OF
ADMINISTRATIVE LAW

I, Dr. Melikşah Yasin, hereby declare the following:

My background and credentials were covered in the declaration I previously submitted in this case. I respectfully refer the reader to those materials.

I have been asked to explain, within the framework of Turkish administrative law, several additional questions concerning the points I described in my expert opinion dated December 20, 2023, which I submitted for this lawsuit and pertained to the legal status of Türkiye Halk Bankası Anonim Şirketi ("Halkbank" or "the Bank"), the Turkish Wealth Fund ("TVF"), and Türkiye Varlık Fonu Yönetimi Anonim Şirketi ("TVF A.Ş.," translated as the Turkish Wealth Fund Management Company) and their legal relationship with the state as well as the relationships between the legislative, executive, and judicial branches of the Republic of Türkiye ("the Republic" or "the State"); accordingly, I have prepared this supplemental declaration to be submitted to the United States District Court for the Southern District of New York ("SDNY") for the civil case (Docket No. 23-cv-6481) currently under litigation.

In line with this request, I submit below, my explanations on these matters.

I have received a payment to prepare this legal opinion in line with the market rates and commensurate with the standard fees I usually charge for such services.

I declare under penalty of perjury under the laws of the United States of America that the explanations I have made below truly and correctly reflect my opinions and conclusions regarding the questions posed before me within the scope of this report.

This report was signed on 02/27/2024.



TO THE BEST OF MY
KNOWLEDGE AND ABILITY,
I ATTEST THIS TO BE A TRUE
AND EXACT COPY OF
THE ATTACHED TEXT
CERTIFIED TRANSLATOR
Şerif Ahmet SAMAN

1

## 1. HALKBANK'S GOVERNMENTAL PURPOSE AND CURRENT FUNCTIONS

**1.1.** In the first expert opinion I submitted to the Court, I discussed the relationship between the state and the economy in Türkiye in general terms, beginning from the founding of the Republic, and explained the establishment purposes of State-Owned Enterprises.

The Constitution of 1982 requires the state not only to monitor and regulate the economy, but also to participate in it by providing public economic services.

When the status of State Banks is specifically considered, it is necessary to highlight one point to ensure that the philosophy underlying the establishment of public banks in particular is understood: One deficiency felt most sorely in the foundational years of the Republic was the inadequacy of accumulated capital and the lack of a national banking system. Prior to the Republic's creation, there was no meaningful banking system in Anatolia. Attaining the goal of national development and the creation of a banking sector that could support economic development was the common purpose of all State Banks founded during that period, not only Halkbank's. Therefore, there is no doubt about the fact that Halkbank was created for public interests. Indeed, the fact that such organizations were defined as "state-owned enterprises" in the Constitution; that the Constitution placed them under a public supervision mechanism; and that the Constitution considered them public legal entities serves to indicate that they are definitely subject to a legal status entirely different from private banks. In essence, no doubts exist regarding this matter in the doctrines of Turkish Administrative Law and relevant holdings.

**1.2.** Plaintiffs appear to assert that over time Halkbank and the other State Banks changed into and became ordinary commercial banks. That is not a reasonable conclusion based on the available facts and Turkish law.

There are two reasons for this:

*First,* the Constitutional and legal regime within which Halkbank and the other State Banks operate has not changed, and still considers these public institutions. The "principle of legality" applies in Turkish Administrative Law, which provides that the duties and powers of public legal entities may *only* be regulated via legislation (and, following the Constitutional changes in 2017, via Presidential Decrees in appropriate matters). It is not possible for the duties and powers of a public legal entity to change

without an amendment in their foundational legislation or decree or a relevant change to the Constitution. In other words, duties and powers of public legal entities cannot on their own respond to societal or economic change; their relevant legislation would need to be amended if considered necessary. Or, their public nature (their belonging to the state) would need to be terminated through privatization. Therefore, it would not be possible to claim that there has been a change in the legal status or duties and authorities of state-owned enterprises in general, and Halkbank in particular, in the absence of such an amendment. While at one time Halkbank was reorganized as a joint stock company to give the State the ability to privatize the Bank if it wished, the State ultimately decided not to privatize the Bank and its shares were taken out of the Privatization Administration. Regardless, the reorganization into a joint stock company did not change the Constitutional and fundamental legal regime within which the Bank operates: it remains a State Economic Enterprise under the Constitution, subject to constitutional and statutory control and regulation. The reorganization also did not eliminate the Bank's public and governmental functions, which the Bank continued performing after its reorganization and continues to perform to this day.

*Second*, state-owned enterprises' involvement in some commercial activities does not change their legal status. Under Turkish Administrative Law, state-owned enterprises are created in part to engage in economic activities in the first place. As it was explained in my first opinion, Turkish Administrative Law calls such activities "economic public services". Besides, Turkish Administrative Law also allows public legal entities, which were not established for economic purposes, to engage in economic activities, as well, to the extent the legislation they are regulated under permits. For example, to the extent their legislation permits, many public legal entities may be involved in revenue-generating activities. Such commercial activities would certainly not render them commercial enterprises. For example, it is a known fact that these state universities engage in economic activities and own various commercial operations, but there is no doubt that these universities are Public Legal Entities. Such commercial activities surely do not change the legal status of these universities.

**1.3.** It is true that state-owned banks—in addition to engaging in public and governmental functions—engage in commercial activities and conduct various banking activities like other banks. However, this certainly would not mean that they possess the same status as commercial banks. First of all, as it will be explained below



with relevant examples, significant differences exist between the legislation to which State-owned banks and Private banks are subject. Second, they differ in their purposes. The sole and ultimate goal of state-owned banks is not to make profits; it is to contribute to the State in the performance of its Constitutionally-mandated economic duties as explained above. This has a real effect on the conduct of the enterprises. The sole and ultimate goal of private banks, on the other hand, is to maximize profits.

## 2.  EXPLANATIONS ABOUT HALKBANK'S LEGAL AND ORGANIC RELATIONSHIP WITH THE STATE

As explained above, there is no doubt that Halkbank is a state-owned bank under Turkish Administrative Law and its involvement in commercial activities certainly does not negatively affect this status as part of the state administration. As I explained in my original declaration, Article 123 of the Turkish Constitution includes a principle of the integrity of the administration stating that "the administration is a whole with its organization and duties," and Halkbank is part of this administration.

It might be illuminating to explain this relationship through actual data and the Bank's own practices to better describe and substantiate the matter that Halkbank is not a commercial bank but an agency of the Turkish State.

### 2.1. The Services the Bank Currently Provides that Prioritize the Public Benefit, and Examples of Several Privileges Conferred on the Bank by Law

One of the duties assigned to the State in the Constitution of 1982 is provided in Article 173, according to which *"The State shall take measures to protect and support tradespeople and artisans."*

The primary public purpose of Halkbank's creation by statute in 1933 was to establish banking activities aimed at economically supporting and protecting tradespeople and artisans as mandated to the State by the Constitution's above-referenced Article 173.

Other state-owned banks similarly have their own specific duties prioritizing the public.[1]

In fact, Halkbank's corporate Articles of Association directly incorporate the State's Constitutional duty. Article 4, paragraph 5 of Halkbank's Articles of Association provides the Bank's purpose as including "offer[ing] credit facilities to tradesmen and merchants as well as to small and medium sized enterprises directly or through Credit Cooperatives for Tradesmen and Merchants." Such a description of public duties could not be found at any commercial bank. This regulation is further evidence that the Bank has been performing a function Constitutionally assigned to the State.

There are numerous examples of such public duties and privileges reflected in practice. Many of these public duties are assigned by and regulated by legislation, regulation, Presidential Decrees, or decisions of the Council of Ministers. Some of them will be shared as examples in this report only to give some idea.

- The Republic of Türkiye utilizes only Halkbank to provide subsidized and low-interest loans to tradespeople and artisans. The subsidized portions of these loans, extended at costs lower than the prevailing market rates, are covered by the central government budget; and this practice is particular to state-owned Halkbank only.

- **The Decree of Council of Ministers No. 27477** promulgated in the Official Gazette on 01.29.2010; mandates certain lending to artisans, tradespeople, and cooperatives associated with them. The Bank initiated direct disbursements on 04.01.2010. In direct disbursements of Treasury-backed loans, upper limits were arranged based on the customers' rating group.

- The State also directly determines decisions such as whether Halkbank will grant extensions on loan payments as a matter of policy. For example, as per

---

[1] Article 45 of the Turkish Constitution, titled "Protection of agriculture, animal husbandry, and persons engaged in these activities" provides that *"The State facilitates farmers and livestock breeders in acquiring machinery, equipment and other inputs in order to (...) increase crop and livestock production in accordance with the principles of agricultural planning."* One of the agencies established for the fulfilment of this duty assigned to the State with regard to agricultural activities is the Türkiye Ziraat Bankası ("Agriculture Bank of Türkiye"). As it can be seen, there is no doubt that each one of the three state-owned banks is a public entity in essence, founded to perform a particular duty which is assigned to the state by the Constitution.



the scope specified in Presidential Decree No. 2023/6789, promulgated in the duplicate Official Gazette dated 02/14/2023, numbered 32104, the payments for the Treasury and Finance Ministry's interest-subsidized loans disbursed by the Bank to tradespeople and artisans on and before 02/06/2023 were deferred for six months free-of-interest, due to the earthquakes occurring on 02/06/2023.

- Tax collection in Türkiye is now the assignment of public banks only. Public banks have been conferred a privilege in tax collection by the relevant legislation of the Turkish Revenue Administration concerning the collection of taxes by public banks, which reads: *"The taxes, duties, penalties and other receivables prosecuted and collected by tax offices ... will continue to be collected by means of the (specified public banks), apart from the collections done by the cashiers' desks at tax offices."* Although private banks were previously permitted to collect some taxes, the State has determined that is, in general, no longer appropriate and has restricted authority to State Banks including Halkbank. This shows the government treats Halkbank and other State Banks differently from private banks.

- Similarly, the official letter from Republic of Türkiye's Directorate General of Customs, Ministry of Trade, dated 05.21.2020, numbered 73421605-020 on "Signatory Authority Transfer for Protocol" states that "*the protocols signed between our Ministry of Trade, the Ministry of Treasury and Finance and private banks concerning the collection of payables such as customs tax to be collected on imports, VAT, Housing Development Fund, Countervailing Duties, Import Duties which the tax payers are obligated to pay were terminated with the Approvals of said Authorities dated 02.14.2020*", and it is thereby ensured that the collection of these public receivables is conducted exclusively by means of state-owned banks. These customs duties form a significant percentage of the State's revenue and can be collected only by state banks.

- In Türkiye, by law transactions for construction in Organized Industrial Zones are facilitated by Halkbank only, and it is Halkbank that provides the intermediation and control services for the necessary funding. Organized Industrial Zones are programs created by the Ministry of Industry to redevelop certain areas of the country. Halkbank is the exclusive bank responsible for administering the financial aspects of these developments. It does not receive interest on loans; instead, it receives a commission according to a schedule of commissions that applies to arms of the state.



- Financial resources of public agencies are managed at public banks, including at Halkbank, in accordance with the bases and procedures provided in the Ministry of Treasury and Finance's "Communique on Public Treasurers." Public banks are therefore effectively the treasury vaults of the State, used to manage the funds of state institutions including those included as part of the national budget. The Central Bank transfers ministries' funds to accounts held at Halkbank and other state banks, with which the ministries conduct their business. Other state institutions whose funds are not part of the general budget open and maintain their accounts directly with Halkbank and other state banks. Cash payments by the State as well as all payments and accounts under the general and supplementary budgets thus take place through state banks.
- Halkbank receives several tax exemptions as a state bank:

  For example:
  - The fourth paragraph of Article 3 in Law No. 4603 on the structure of the bank reads; "*the transactions that will be made under the framework of this law and the papers that will be issued in accordance with these transactions shall be exempt from all kinds of taxes, duties and fees.*"

  - Likewise, as per the following provision of Article 29/m of the Expenditures Tax Law No. 6802, "the loans Türkiye Halk Bankası extends to small and medium-sized industrial enterprises; or the fees the Bank receives in exchange for the facilitation services it provides for the foreign trade transactions of such enterprises; and the fees received as part of the loans it extends to craftspeople and artisans under the sureties of Craftspeople and Artisans Surety Cooperatives; and the fees such cooperatives collect from their members in exchange for the relevant expenditures" are exempted from the banking and insurance transactions tax.

## 3. THE LEGAL, FINANCIAL AND ORGANIC CONNECTION BETWEEN HALKBANK MANAGEMENT AND STATE OFFICIALS, AND THE SUPERVISION OF THE BANK

**3.1** Since Halkbank is a State Bank, its management is determined by the State. In its capacity as the Bank's general assembly, the Republic of Türkiye selects the directors, and formal management of the Bank is conducted via the decisions taken by the directors. A Deputy Minister is always included in Halkbank's Board of Directors



which is comprised of members appointed by Türkiye. The Board ensures in the State's name that Halkbank performs its activities, and conducts the necessary controls. These audits and controls are not subject to any time limitations. The Board is empowered to audit the Bank's activities at any time and frequency.

Board Members, located at the top of Halkbank's decision-making mechanisms, are personally selected by the Republic of Türkiye to represent the Republic. Therefore, decisions taken by Halkbank bear the signatures of these managers who are appointed to represent the government itself.

Apart from the organic relationship between the Government officials and Bank executives, Bank executives hold consistent and regular meetings with central government officials as well. Board members; the General Manager and Deputy General Managers frequently meet the President of the Republic of Türkiye, Minister of the Treasury of Finance, and other government officials. These meetings might concern the overall course of affairs and policies within the scope of the public duties entrusted to Halkbank by Türkiye, or they might take place as part of various official gatherings. Hence the public duty and privileges given to the bank which are aforementioned, require and oblige communication in this context. As a practical matter, the views of the shareholder that owns more than 90% of Halkbank's shares and regulates it as a matter of law are solicited frequently and incorporated into Halkbank's management decisions. This is accomplished with meetings directly with government officials and politicians, much like an intergovernmental or interagency consultation.

**3.2.** Like other state-owned enterprises, Halkbank is also subject to audit by the Grand National Assembly of Türkiye (TBMM) under Article 165 of the Constitution of Republic of Türkiye. According to the said Constitutional provision, "The principles governing the scrutiny of the accounts of public institutions and partnerships where more than half of the capital directly or indirectly belongs to the State, by the Grand National Assembly of Türkiye, shall be regulated by law." As per Law No. 3346 on the supervision of the National Assembly, the audit authority is exercised on the National Assembly's behalf by the Turkish Court of Accounts.

The National Assembly thus audits Halkbank, through the Turkish Court of Accounts. These audits are routinely performed throughout the year with a team of five auditors at an office which is permanently allocated to them inside the Bank. The Court of Accounts presents this report, prepared through these continuous audits, to the Turkish National Assembly's Commission on Public Enterprises. Once the audit reports are reviewed by the relevant lower and higher commissions, they are presented for the

information and approval of the National Assembly's plenary session. The auditors can file interim reports whenever necessary or appropriate.

I understand that plaintiffs have questioned the purpose and frequency of this auditing mechanism. The frequency is constant: as I have mentioned, five legislative auditors have a permanent presence within the company. And in line with the Turkish Court of Accounts Law Numbered 6085, the purpose is to ensure the appropriate use of state resources, ensure accountability and transparency of state administration, and evaluate the performance of public entities including Halkbank. This includes a performance audit to measure the benefit created by the entity in line with its objectives, and to ensure accountability.

**3.3.** Halkbank is also financially integrated with the Turkish State, such that Halkbank's profits or losses are ultimately the State's profits or losses. Halkbank's profits are recorded as revenue by the Treasury. Reduction in those profits necessarily affects the revenues of the State. On the other hand, the State is responsible for capitalizing Halkbank, including ensuring the Bank's Capital Adequacy Ratio. For that reason, costs, losses, or burdens placed upon Halkbank require the Turkish Treasury to make additional capital injections to allow the Bank to maintain its activities. In recent years, the Treasury has repeatedly injected additional capital to the Bank, including numerous times during the pandemic to allow the Bank to continue functioning as a public economic service of the State.

The Turkish State also guarantees Halkbank's long-term foreign borrowing because it is a public bank. In numerous international agreements, the Turkish State is listed as guarantor of Halkbank's debt obligations.

## 4. THE EMPLOYMENT SYSTEM OF HALKBANK PERSONNEL

Turkish administrative law does not have a single system of employing public officials. There is more than one regime, and many public institutions have their own employment regimes regulated by their own statutes. Halkbank is one example, with its employees being in some ways subject to private employment law and in others clearly treated differently from private employees.

**4.1.** Public legal entities can employ personnel who are completely subject to private law provisions, as well as public officials or personnel with officer status. The regime on employment of personnel is not a fact that directly affects these institutions' status.

In Türkiye, the general Law on employment of public officials is Public Servants Law numbered 657. On the other hand, the employment regime of each institution or public legal entities can be determined with their own statute of establishment.

Unless the administrative organization structure in Türkiye and the relationship of the State and the affiliated institutions are understood correctly, discussion on this topic might lead to inaccurate interpretations. Namely, as stated above the Turkish administration organization consists of "legal entities". These legal entities are autonomous in proportion determined by their own statute of establishment. This autonomy does not exclude them from the state organization. It only allows them to make some of their own decisions by themselves to facilitate their operations. Thus, public institutions (1) can recruit personnel according to the rules specified within their own statutes, or (2) can recruit personnel according to the General Laws (Public Servants Law Numbered 657, Executive Order Numbered 375). Therefore, nowadays all public institutions affiliated with the State, recruit personnel based on these two principles.

For this reason, it is out of the question for public institutions that personnel recruitment be done directly by the State. The President only has the authority to assign senior public officials pursuant to the authority given by Article 104 of the Constitution. As stated, the employment of other public officials is done by each institution according to the statute provisions which the institution is subject to.

There is not a single type of employment in public institutions. Different methods can be preferred by taking the character, operation type and attributes of the public institution into consideration. There might be distinctions between different types of employment in terms of procedures of assignment, rights and authorities, and responsibilities and privileges. For example, according to Labor Law provisions it is possible to employ contracted or provisional personnel as well as, employing personnel who have no privileges and are completely subject to private law. Each statute's right and obligations might be purely different.

These statements show that according to the structure of the Turkish Administration Organization, each institution's procedures for personnel employment and the personnel regime it has are determined by the statute which they are subject to.

**4.2.** As explained above, Halkbank's top management is determined by the State and Halkbank also recruits personnel based on its own statute, the way that other public institutions do. Besides, several features demonstrate that Halkbank employees are treated differently from private industry employees:

- Halkbank recruits its employees through exams based on the civil service exams offered by certain institutions in the central government.

- Furthermore, unlike private banks, a gray passport with a service stamp is issued to Halkbank employees for their assignments abroad. These passports are issued on the basis that Halkbank employees are performing work on behalf of the government.

- Halkbank employees can access government benefits dedicated to public personnel. These include education and recreation facilities, child care centers, social assistance facilities, and other governmental benefit facilities that are open to public personnel but not to private industry employees.

- Halkbank sometimes assigns or details personnel on temporary assignments between Halkbank and other government institutions. These assignments between Halkbank and other government institutions are not permitted for private banks.

- As a matter of statute, Halkbank's branch managers and senior executives are part of the protocol in the local administration where they are based. In other words, on ceremonial occasions that involve a contingent of public officials, Halkbank branch managers and executives are included as part of the government protocol.

- Halkbank employees are listed as "public employees" according to the Republic of Türkiye's Presidential Human Resources Office, and are listed in the personnel directory of the Ministry of Treasury and Finance.

## 5. THE PERCEPTION OF HALKBANK IN THE EYES OF THE TURKISH PUBLIC

Both under the classifications made by official agencies and in the public eye, Halkbank is very clearly viewed as a government bank and a public bank.

For example, as described above, Halkbank executives and branch managers are included within the protocol for state officials celebrating public events.



YASIN                                                                                    11

In addition, government officials, such as the President and the Minister of Treasury and Finance, frequently announce new government programs launched by Halkbank. For example, in 2019 the Deputy Prime Minister announced "a new credit guarantee fund for tradespeople and craftspeople to gain easier access to financing," part of making 250 billion liras available to small and medium sized businesses. The news noted, "The new fund will be launched under the auspices of the state-run Halkbank to increase and accelerate tradespeople and craftspeople's access to financing, said [the Deputy Prime Minister]."[2] In 2019, Türkiye's President announced in a speech to the Turkish Parliament that "state-owned bank, Halkbank, would provide 22 billion Turkish liras ($4 billion) in incentives to 350,000 local business," and that another state bank "will provide loans for debt-stricken individuals to pay their credit card obligations."[3] In the eyes of the Turkish public, Halkbank is closely associated with the central organs of government, functions as part of the government, and administers government programs using government funds.

PROF. DR.
MELİKŞAH YASİN

ISTANBUL UNIVERSITY
FACULTY OF LAW



TO THE BEST OF MY KNOWLEDGE AND ABILITY I ATTEST THIS TO BE A TRUE AND EXACT COPY OF THE ATTACHED TEXT
CERTIFIED TRANSLATOR
Şerif Ahmet SAMAN

---

2   https://www.hurriyetdailynews.com/turkish-govt-to-launch-new-credit-guarantee-fund-to-ease-tradespeoples-access-to-financing--109391

3   https://www.aa.com.tr/en/economy/turkey-president-erdogan-announces-new-social-support-measures/1358899