UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                              :

DANIEL HUGHES, et al.,             :
                                              ;

                 Plaintiff,      :       23 Civ. 6481 (MKV)
                                              :

   - v. -                        :
                                            :

TURKIYE HALK BANKASI, A.S., et al.,  :
                                            :

               Defendant.    :
                                            :
-----------------------------------------------------------------x

 

## **MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN SUPPORT OF MOTION TO INTERVENE AND FOR A STAY**

 

 

 

 

                                                 DAMIAN WILLIAMS
                                                 United States Attorney
                                               Southern District of New York

Michael D. Lockard
Jonathan Rebold
Assistant United States Attorneys,
    *Of counsel*

# TABLE OF CONTENTS

Page

Background ............................................................................................................................1

   I.   The Civil Proceedings ................................................................................ 1

   II.  The Criminal Proceedings ......................................................................... 2

        A.  The Indictment of Zarrab ................................................................ 3

        B.  The Indictment of Halkbank Officer Mehmet Hakan Atilla ............................. 3

        C.  Zarrab's Guilty Plea and Atilla's Conviction ................................................. 4

        D.  The Indictment of Halkbank ........................................................... 5

            1.  The Gold Method ................................................................. 6

            2.  The Fake Food Method ........................................................ 7

            3.  Halkbank's Lies to Treasury to Protect the Scheme ............................. 8

        E.  Proceedings in the Halkbank Prosecution ..................................... 8

Discussion ..........................................................................................................................9

   I.   Relevant Law ....................................................................................... 9

   II.  Application ........................................................................................ 11

        A.  The Government Should Be Permitted to Intervene ........................................ 11

        B.  The Government's Request For a Stay Should Be Granted ............................ 12

            1.  The Extent of Overlap ........................................................ 12

            2.  The Status of the Criminal Case ........................................... 12

            3.  Lack of Prejudice to the Parties ........................................... 13

            4.  The Interests of the Court ................................................... 14

            5.  The Public Interest ............................................................. 14

            6.  A Stay is Warranted Under 18 U.S.C. § 2336 ...................................... 16

Conclusion ........................................................................................................................17

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634 (S.D.N.Y. 1991) . 17

*Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) .................................................................. 11

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1952) .................................................................... 17

*Doe v. Indyke*, 2020 WL 5518384 (S.D.N.Y. 2020) ................................................................. 12, 14

*Exch. Comm'n v. Baston*, 2023 WL 6850320 ....................................................................... 11, 13

*First Merchants Enterprise, Inc. v. Shannon*, 1989 WL 25214 (S.D.N.Y. 1989) ........................ 11

*In re Par Pharmaceutical, Inc. Sec. Litig.*, 133 F.R.D. 12 (S.D.N.Y. 1990) ................................. 14

*Johnson v. New York City Police Dep't*, 2003 WL 21664882 (S.D.N.Y. 2003) ..................... 12, 16

*Karimona Investments, LLC v. Weinreb*, 2003 WL 941404 (S.D.N.Y. 2003) .............................. 14

*Kashi v. Gratsos*, 790 F.2d 1050 (2d Cir. 1986) .......................................................................... 12

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) ............................................................................. 12

*Maldonado v. City of New York*, 2018 WL 2561026 (S.D.N.Y. 2018) .................................... 13, 14

*Okoli v. Cty. of Nassau*, 2015 WL 8207496 (E.D.N.Y. 2015) ....................................................... 12

*Phillip Morris Inc. v. Heinrich*, 1996 WL 363156 (S.D.N.Y. 1996) .............................................. 17

*Rosenthal v. Giuliani*, 2001 WL 121944 (S.D.N.Y. 2001) ............................................................ 11

*S.E.C. v. Abdallah*, 313 F.R.D. 59 (N.D. Ohio 2016) ................................................................... 10

*S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618 (S.D.N.Y. 2003) ......................... 13, 16

*S.E.C. v. Chestman*, 861 F.2d 49 (2d Cir. 1988) .......................................................................... 11

*S.E.C. v. Doody IV*, 186 F. Supp. 2d 379 (S.D.N.Y. 2002) ........................................................... 13

*S.E.C. v. Nicholas*, 569 F.Supp.2d 1065 (C.D. Cal. 2008) ..................................................... 10, 17

*Touhy v. Ragan*, 340 U.S. 462 (1951) ........................................................................................ 16

*Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007 (E.D.N.Y. 1992) ........................... 10

*United States v. Atilla*, 966 F.3d 118 (2d Cir. 2020) ..................................................... 5, 8, 16, 17

*United States v. Downe*, 1993 WL 22126 (S.D.N.Y. 1993) ......................................................... 12

*United States v. Reza Zarrab et al.*, 15 Cr. 867 (RMB) (S.D.N.Y.) ................................................ 1

*United States v. Turkiye Halk Bankasi, A.S.*, 16 F.4th 336 (2d Cir. 2021) ........................... 9, 10, 1

*Volmar Dist., Inc. v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993) .............................. 14, 15

**Statutes**

18 U.S.C. § 1349 ................................................................................................. 3, 4, 5

18 U.S.C. § 1956 ................................................................................................. 3, 4, 5

18 U.S.C. § 1956(h) ............................................................................................... 4, 5

18 U.S.C. § 2333(d)(2) .............................................................................................. 1

18 U.S.C. § 2336(b) ....................................................................................... 1, 15, 16

18 U.S.C. § 2336(c) ................................................................................................. 18

18 U.S.C. § 371 ...................................................................................................... 4, 5

22 U.S.C. § 8804(a)(1)(A) .......................................................................................... 7

28 U.S.C. § 1605(a)(2) ............................................................................................... 9

50 U.S.C. § 1701 ........................................................................................................ 3

50 U.S.C. § 1702 ........................................................................................................ 3

50 U.S.C. § 1703 ........................................................................................................ 3

50 U.S.C. § 1704 ........................................................................................................ 3

50 U.S.C. § 1705 .................................................................................................. 3, 4, 5

50 U.S.C. § 1706 ........................................................................................................ 3

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 1, 15, 16, 2

Federal Rule of Civil Procedure 24 ..................................................................... 10, 13

The United States of America (the "Government") respectfully submits this memorandum of law in support of its motion (1) to intervene and (2) for a stay of all proceedings in this matter pending the resolution of the pending criminal cases against Turkiye Halk Bankasi, A.S. ("Halkbank") and Reza Zarrab ("Zarrab").

Counsel for Halkbank in this action has advised the Government that Halkbank does not object to the requested stay, except with respect to Halkbank's pending motion to dismiss (D.E. 31-36), which Halkbank believes should be excepted from a stay, including appeals. Counsel for the plaintiffs in this action has advised the Government that Plaintiffs do not object to the requested stay, and that plaintiffs believe 18 U.S.C. § 2336(b) requires a stay of Halkbank's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Counsel for Zarrab in the criminal cases has advised he Government that Zarrab does not object to the requested stay.

## BACKGROUND

### I.      The Civil Proceedings

On July 26, 2023, Daniel Hughes and others (the "Plaintiffs"), various American civilians, servicemembers, and contractors serving in Afghanistan, and their family members, filed a complaint against Halkbank and Zarrab (the "Complaint") (D.E. 1)[1] seeking compensatory, punitive, and treble damages pursuant to 18 U.S.C. § 2333(d)(2) based on injuries Plaintiffs allege to have suffered as a result of attacks committed, planned, and authorized by the Islamic Revolutionary Guard Corps ("IRGC"), an Iranian military and intelligence organization that is responsible to the Supreme Leader of the Islamic Republic of Iran.

---

[1] In this memorandum, references to "D.E." are to entries in the electronic docket in this matter and ("Crim. D.E.") are to entries in the electronic docket in *United States v. Reza Zarrab et al.*, 15 Cr. 867 (RMB) (S.D.N.Y.) .

The Complaint alleges that Halkbank and Zarrab aided and abetted the IRGC and conspired with the IRGC with respect to the attacks alleged in the Complaint by laundering money for the National Iranian Oil Company ("NIOC"), a state-owned Iranian oil company that has been identified by the U.S. Department of the Treasury ("Treasury") as an agent or affiliate of the IRGC.

Beginning on September 13, 2023, counsel filed notices of appearance for Halkbank. (D.E. 5, 8, 10.) On December 22, 2023, Halkbank moved to dismiss the Complaint (D.E. 31, 32), arguing that Halkbank was immune under the Foreign Sovereign Immunities Act ("FSIA"), that the Anti-Terrorism Act barred the claims, that the Court lacked personal jurisdiction over Halkbank, that the action should be dismissed on *forum non conveniens* grounds, and that the Complaint failed to state a claim. Plaintiffs opposed the motion to dismiss on February 9, 2024. (D.E. 40.)

On February 22, 2024, Plaintiffs publicly filed a redacted proof of service as to Zarrab and a motion to file the unredacted proof of service under seal. (D.E. 45, 46.) On February 23, 2024, Halkbank opposed the sealing motion. (D.E. 47.)

## II.     The Criminal Proceedings

Halkbank, several of its former officers, Zarrab, and others have been charged for their participation in the largest known scheme to evade United States financial sanctions against the Government of Iran—a scheme to launder billions of dollars' worth of Iranian oil proceeds out of Halkbank. *See infra* at 4-8. Halkbank held accounts for the Central Bank of Iran ("CBI") and NIOC where the Republic of Turkiye ("Turkiye") paid Iran for its purchases of Iranian oil and petroleum products, which were subject to strict limitations under U.S. sanctions relating to Iran, NIOC, CBI, and the Iranian petroleum sector. These sanctions were in response to the unusual and extraordinary threat the Government of Iran and its actions pose to the United States' national security, economy, and foreign policy: the Government of Iran's sponsorship of terrorism, pursuit of an illicit nuclear and ballistic missiles programs, and human rights abuses.

From 2012 until 2016, Zarrab (a Halkbank customer and the owner and operator of money-services and gold-trading businesses), Halkbank, Halkbank's senior officers, and certain Turkish government officials conspired to launder Iran's oil proceeds out of Halkbank, in violation of U.S. sanctions, to create a vast pool of Iranian government-controlled funds that could be clandestinely sent anywhere in the world, including huge sums laundered through the U.S. financial system. Halkbank, its officers, and Zarrab developed a scheme to used gold shipments and fictitious food sales, funded with NIOC oil money, to disguise billions of dollars' worth of illicit finance for the Government of Iran as permissible private trade and humanitarian assistance. To promote and protect this scheme, Halkbank and its senior officers repeatedly lied to Treasury officials about Halkbank's business with Iran. The scheme was also fueled by huge bribe payments from the Iranian oil money, paid to, among others, Halkbank's general manager (its chief executive officer) and to a Turkish Minister (equivalent to a Cabinet member).

### A.     The Indictment of Zarrab

On December 15, 2015, an indictment, 15 Cr. 867 (RMB), was filed under seal in this District charging Zarrab and others with conspiring to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706; to commit bank and wire fraud, 18 U.S.C. § 1349; to launder money, 18 U.S.C. § 1956; and to defraud the United States, 18 U.S.C. § 371. (Crim. D.E. 2.) Zarrab was arrested on March 21, 2016.

### B.     The Indictment of Halkbank Officer Mehmet Hakan Atilla

On March 27, 2017, Mehmet Hakan Atilla, who was then Halkbank's head of International Banking, was arrested in New York pursuant to a criminal complaint, 17 Mag. 2197. Atilla was charged in a superseding indictment, S3 15 Cr. 867 (RMB), filed on April 7, 2017. (Crim. D.E. 212.)

On September 6, 2017, a superseding indictment, S4 15 Cr. 867 (RMB) (the "S4 Indictment") (Crim. D.E. 293), was filed charging Zarrab, Atilla, Suleyman Aslan, Levent Balkan, Mehmet Zafer Caglayan, and others with conspiring to defraud the United States, 18 U.S.C. § 371; conspiring to violate the IEEPA, 50 U.S.C. § 1705; bank fraud, 18 U.S.C. § 1344; conspiring to commit bank fraud, 18 U.S.C. § 1349; money laundering, 18 U.S.C. § 1956(a)(2)(A); and conspiring to commit money laundering, 18 U.S.C. § 1956(h). Aslan is Halkbank's former general manager who received millions of dollars' worth of bribes from Zarrab in connection with the money laundering scheme, and Balkan is Halkbank's former head of foreign operations. Caglayan is the former Turkish Minister of the Economy who received tens of millions of dollars' worth of bribes from Zarrab in connection with the money laundering scheme.

## C.      Zarrab's Guilty Plea and Atilla's Conviction

On October 26, 2017, Zarrab pleaded guilty to a seven-count superseding information, S5 15 Cr. 867 (RMB), before the Honorable Richard M. Berman, United States District Judge. (Crim. D.E. 364.)

On November 27, 2017, trial commenced against Atilla on the charges in the S4 Indictment before Judge Berman. At trial, Zarrab testified as a witness for the Government. During Zarrab's testimony, among other things, he described how, after his cooperation in the Government's investigation became known through his public trial testimony from days earlier, Turkish officials seized his assets in Turkiye and those of his family members and associates and criminally investigated him for espionage. (Crim. D.E. 416 (Trial Tr. 1046-49).)

On January 3, 2018, the jury found Atilla guilty on five counts of the Indictment: conspiracy to defraud the United States, conspiracy to violate the IEEPA, conspiracy to commit bank fraud, conspiracy to commit money laundering, and substantive bank fraud. By judgment entered on May 16, 2018, Judge Berman sentenced Atilla principally to a term of imprisonment of

32 months. (Crim. D.E. 518.) The judgment and sentence were affirmed on appeal. *See United States v. Atilla*, 966 F.3d 118 (2d Cir. 2020).

### D.      The Indictment of Halkbank

On October 15, 2019, a superseding indictment, S6 15 Cr. 867 (RMB) (the "S6 Indictment") (Crim. D.E. 562) was filed charging Halkbank with conspiring to defraud the United States, 18 U.S.C. § 371; conspiring to violate the IEEPA, 50 U.S.C. § 1705; bank fraud, 18 U.S.C. § 1344; conspiring to commit bank fraud, 18 U.S.C. § 1349; money laundering, 18 U.S.C. § 1956(a)(2)(A); and conspiring to commit money laundering, 18 U.S.C. § 1956(h).

As alleged in the S6 Indictment, Halkbank is a commercial bank that is majority owned by the Government of Turkiye. (S6 Ind. ¶ 1.) Halkbank participated in a years-long scheme to violate the United States' economic sanctions on Iran. (*Id.*)

During the time period of the charged offenses, Halkbank held accounts for CBI and NIOC. Halkbank participated in several types of illicit transactions for the benefit of Iran, aimed at creating a pool of hidden Iranian funds in Turkiye and the United Arab Emirates in the names of front companies. From there, the funds were used to make international payments on behalf of the Government of Iran and Iranian banks, including transfers in U.S. dollars that passed through the U.S. financial system in violation of U.S. sanctions laws. (*Id.* ¶¶ 1-6.)

Halkbank was central to the scheme, because the bank held the proceeds of Iran's sale of oil and gas to Turkiye's state-owned energy companies in accounts for the CBI, NIOC, and the National Iranian Gas Company ("NIGC"), all of which were sanctioned by the United States at the time. (S6 Ind. ¶¶ 3, 8.) Due to U.S. sanctions against Iran and the anti-money laundering policies of U.S. banks, Iran was constrained in how it could use the funds, and, in particular, could not use them to make international payments through the U.S. financial system. (*Id.* ¶¶ 3, 8-24.)

As a result, Halkbank executives worked with Zarrab, a Turkish businessman and gold trader, corrupt Turkish government officials, and Iranian government and bank officials to devise a scheme through which Iran could surreptitiously access its oil proceeds freely, without scrutiny from the international community. (*Id.* ¶¶ 2, 5, 7.) The scheme involved, among other things, fraudulent gold and humanitarian trade transactions run through Halkbank and Zarrab's companies. (*Id.* ¶¶ 4, 25-65.)

The purpose of this scheme was to evade the sanctions' restrictions on Iranian access to oil and gas proceeds at Halkbank and create an enormous, anonymous slush fund for Iran. Because the funds would not nominally be attributable to Iran, the Government of Iran could direct the funds anywhere across the globe free of the effect of sanctions, including through the U.S. financial system. (*Id.* ¶¶ 6, 34-35.) More than $1 billion was laundered through the U.S. on behalf of the Government of Iran and Iranian entities. (*Id.* ¶¶ 48, 64.) At the same time, by disguising these transactions as being exempt from U.S. sanctions and lying to Treasury officials, Halkbank ensured the continuity of this profitable business, while also avoiding itself being sanctioned by the United States and losing its ability to transact with U.S. banks. (*Id.* ¶¶ 4-5, 15-21.)

### 1.     The Gold Method

One method Halkbank and its co-conspirators used was a scheme involving purported gold shipments. Halkbank conspired with Zarrab and its Iranian government and banking clients to transfer Iranian oil proceeds to exchange houses and front companies controlled by Zarrab so that the money could be converted into gold, exported from Turkiye, and converted back into cash or currency to be used for international financial transfers on behalf of Iranian persons and entities. (S6 Ind. ¶¶ 26, 28.) These gold transactions on behalf of the Government of Iran and Iranian banks, if revealed to Treasury, exposed Halkbank to sanctions under Executive Order 13622 and the Iranian Freedom and Counterproliferation Act ("IFCA"), 22 U.S.C. § 8804(a)(1)(A) (2013). (*See*

S6 Ind. ¶¶ 26-27.) After the gold was exported to the U.A.E., Zarrab's companies often repurchased the gold in U.S.-dollar transactions in order to reimport it to Turkiye so that it could be used in the scheme again, resulting in more than $900 million in transactions through the U.S. financial system. (*Id.* ¶ 48.)

Halkbank and its co-conspirators converted billions of dollars' worth of Iran's oil proceeds into gold so that it could be moved to the U.A.E. In 2011, the year before the scheme began, Turkiye reported exporting approximately $55 million in gold to Iran. In 2012, after the gold scheme was implemented, Turkiye reported exporting approximately $6.5 billion in gold to Iran. Similarly, Turkiye's reported exports of gold to the U.A.E. rose from approximately $280 million in 2011 to approximately $4.6 billion in 2012. The funds laundered from Halkbank through Zarrab and his companies were responsible for the vast majority of this increase. (*Id.* ¶ 31.)

### 2.    The Fake Food Method

As sanctions against the supply of gold and currency to Iran broadened, Halkbank instructed Zarrab to start a new laundering method using fake shipments of humanitarian goods to Iran. (S6 Ind. ¶¶ 50-52.) Under U.S. sanctions in effect at the time, Halkbank was subject to sanctions if it permitted Iranian oil funds to be used for any purpose other than buying Turkish goods for import to Iran, or buying food, agricultural products, and medicine. (*Id.* ¶¶ 18, 50.) Zarrab's companies created false documentation purporting to show purchases and shipments of food from the U.A.E. to Iran, in order to justify transfers of Iranian oil proceeds to Zarrab's companies as representing the purported purchase funds. (*Id.* ¶¶ 50, 54.)

Halkbank coached Zarrab on how to doctor the records to protect Halkbank from detection and sanction. This included correcting obvious errors such as mismatches between stated food quantities and maximum capacities of imaginary vessels which purportedly transported the food, as well as obvious falsehoods about the country-of-origin of the imaginary food. (*Id.* ¶¶ 54-56.) If

Zarrab could not provide a document—such as bills of lading, because they are a traceable record—then Halkbank altered its typical compliance requirements to excuse those records from Zarrab's transactions. (*Id.* ¶ 54.)

### 3. Halkbank's Lies to Treasury to Protect the Scheme

Halkbank's senior-most officials, including Aslan and Atilla, repeatedly lied to senior Treasury officials in order to protect the scheme and itself. Among other things, Halkbank lied about its compliance and due diligence efforts, lied about the identities of the gold buyers, lied about purportedly ending its role in facilitating gold sales to Iran, and lied about the scope of its relationship with Zarrab. (*See, e.g.*, S6 Ind. ¶¶ 4-5, 40, 42-43, 45-46, 63; *see also Atilla*, 966 F.3d at 129 (Halkbank officials also "repeatedly lied to Treasury officials to conceal the sanctions avoidance scheme")).

### E. Proceedings in the Halkbank Prosecution

Following the Government's motion for contempt (Crim. D.E. 592), Halkbank authorized counsel to appear on its behalf on February 27, 2020. (Crim. D.E. 603, 604, 605, 606) and was arraigned on March 31, 2020.

On August 25, 2020, Halkbank moved to dismiss the S6 Indictment (Crim. D.E. 645), arguing that it was immune under the FSIA and the federal common law of foreign sovereign immunity, among other grounds. By Decision and Order dated October 2, 2020, Judge Berman denied the motion. (Crim. D.E. 674.) By subsequent order, Judge Berman set a trial date of May 3, 2021. (Crim. D.E. 686.)

Halkbank filed an interlocutory appeal of the denial of its motion to dismiss under the FSIA and federal common law of foreign sovereign immunity (Crim. D.E. 679) and on December 21, 2020, the Second Circuit issued an order staying the criminal proceedings pending appeal. (Crim. D.E. 696.)

The Second Circuit affirmed Judge Berman's order denying the motion to dismiss, holding that (i) even if the FSIA applies to criminal cases, Halbank was not immune because the exception to foreign sovereign immunity set forth in 28 U.S.C. § 1605(a)(2), relating to commercial activities of a foreign state, applied; and (ii) Halkbank was also not immune under the federal common law of foreign sovereign immunity. *See United States v. Turkiye Halk Bankasi, A.S.*, 16 F.4th 336 (2d Cir. 2021) .

The Supreme Court granted Halkbank's petition for a writ of certiorari. On April 19, 2023, the Court affirmed the Second Circuit in part, holding that the FSIA does not apply in criminal proceedings, and remanded for further consideration of Halkbank's assertion of immunity under the federal common law. *See Turkiye Halk Bankasi, A.S., v. United States*, 598 U.S. 264 (2023).

On remand, oral argument was held on February 28, 2024. The appeal is pending decision and the stay of the criminal proceedings before the district court remains in effect.

## DISCUSSION

A stay of these proceedings is warranted in order to prevent the proceedings from interfering in the pending criminal proceedings against Halkbank and Zarrab.

## I.    Relevant Law

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact."

As a general rule, courts "have allowed the government to intervene in civil actions— especially when the Government wishes to do so for the limited purpose of moving to stay

discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also S.E.C. v. Abdallah*, 313 F.R.D. 59, at 64 (N.D. Ohio 2016) (quoting *S.E.C. v. Nicholas*, 569 F.Supp.2d 1065, 1068 (C.D. Cal. 2008) for the proposition that "numerous courts have allowed the United States government to intervene in a civil case for the purpose of moving to stay discovery and other proceedings until resolution of a related criminal case."). Intervention is warranted because the Government's interests in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represents the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff nor the defendants have this identical interest."). The Government also has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988); *see also Sec. Exch. Comm'n v. Baston*, No. 23 Civ. 5347 (MKV), 2023 WL 6850320, at *1-2 (granting Government's motion to intervene in S.E.C. enforcement proceedings); *Rosenthal v. Giuliani*, No. 98 Civ. 8408 (SWK), 2001 WL 121944, (S.D.N.Y. Feb. 9, 2001) ("[I]t is well-established that the Government may intervene in a federal civil action to stay discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact."); *First Merchants Enterprise, Inc. v. Shannon*, No. 88 Civ. 8254, 1989 WL 25214, *2 (S.D.N.Y. Mar. 16, 1989) ("Where the government contends that an ongoing criminal investigation would be prejudiced were certain civil discovery concerning the same facts and circumstances to proceed, permissive intervention to argue that claim is appropriate.").

Courts have the inherent power to stay civil cases in the interests of justice pending the completion of criminal prosecution. *See Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936); *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986). Courts routinely grant applications to stay civil proceedings in order to protect a pending criminal case. *See, e.g.*, *Doe v. Indyke*, 20 Civ. 484 (JGK) (DF), 2020 WL 5518384, at *3 (S.D.N.Y. Sep. 14, 2020); *Johnson v. New York City Police Dep't*, 01 Civ. 6570 (RCC) (JCF), 2003 WL 21664882, at *2 (S.D.N.Y. July 16, 2003); *United States v. Downe*, No. 92 Civ. 4092, 1993 WL 22126, at *14 (S.D.N.Y. Jan 26, 1993); *Okoli v. Cty. of Nassau*, 15 Civ. 0701 (JS) (SIL), 2015 WL 8207496, at *2-3 (E.D.N.Y. Dec. 7, 2015).

Courts generally apply a six-factor test in determining whether to stay a civil action pending the resolution of a related criminal matter, considering: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendant has been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation balanced against the prejudice to the plaintiffs if delayed; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest. *Indyke*, 2020 WL 5518384, at *3; *see also Maldonado v. City of New York*, No. 17 Civ. 6618 (AJN), 2018 WL 2561026, at *1 (S.D.N.Y. June 4, 2018); *S.E.C. v. Beacon Hill Asset Mgmt. LLC*, No. 02 Civ. 8855, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003); *S.E.C. v. Doody IV*, 186 F. Supp. 2d 379, 381 (S.D.N.Y. 2002).

## II.    Application

### A.    The Government Should Be Permitted to Intervene

The Government should be permitted to intervene for the purpose of seeking a stay of the Civil Proceedings under both Rule 24(a)(2) and (b)(2) of the Federal Rules of Civil Procedure. Under Rule 24(a)(2), the Government has an interest in seeking to stay the proceedings in order to prevent interfering with the Criminal Proceedings, which interest is not identical to that of by any

other party and which may be impaired absent the Government's ability to seek a stay. See Baston, 2023 WL 6850320, at *2. Under Rule 24(b)(2), the Court should exercise its discretion to permit intervention "given the common questions of law and fact underlying this action and the [Criminal Proceedings]." *Id.*

### B.     The Government's Request For a Stay Should Be Granted

Here, the factors weigh heavily in favor of a stay.

#### 1.     The Extent of Overlap

The issues in the criminal case overlap substantially with those presented in the civil case, weighing in favor of a stay. Indeed, the Complaint's allegations that Halkbank and Zarrab are liable for the Plaintiffs' injuries entirely track the facts alleged in the S6 Indictment. *Compare* Compl. ¶¶ 63 & 84-102 *with* S6 Ind. ¶¶ 1-8 & 25-65. Further, the Complaint explicitly relies upon evidence and testimony from the criminal proceedings, including the "ongoing criminal prosecution of Halkbank for the acts alleged herein." *See* Compl. ¶ 63. "'The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter.'" *Indyke*, 2020 WL 5518384, at *3 (quoting *Volmar Dist., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

> Denying a stay where there is significant factual overlap between the civil and criminal cases may . . . expand the rights of criminal discovery beyond the limits of Rule 16(b) of the Federal Rules of Criminal Procedure, expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the case.

*Id.* In light of the substantial overlap between the criminal case and the civil action, as outlined above, this factor militates in favor of a stay.

#### 2.     The Status of the Criminal Case

The status of the criminal case also weighs in favor of a stay, as both Halkbank and Zarrab have been indicted and their cases remain pending. Zarrab has pleaded guilty and is awaiting

sentencing, while Halkbank is awaiting trial upon the resolution of its appeal. "Whether the defendant has been indicted has been described as 'the most important factor' to be considered in the balance of factors." *Maldonado*, 2018 WL 2561026, at *2 (quoting *Karimona Investments, LLC v. Weinreb*, No. 02 Civ. 1792 (WHP) (THK), 2003 WL 941404, at *3 (S.D.N.Y. Mar. 7, 2003); *see also In re Par Pharmaceutical, Inc. Sec. Litig.*, 133 F.R.D. 12, 13-14 (S.D.N.Y. 1990) (noting that "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment" (collecting cases)).

### 3.    Lack of Prejudice to the Parties

The private interests of the Plaintiffs and of Halkbank do not weigh against a stay. Halkbank consents to the requested stay, except with respect to its pending motion to dismiss (D.E. 31-36), including appeals. Counsel for Halkbank has further advised the Government that it believes the parties should not be precluded from seeking to lift the stay after any appeal from the Court's ruling on the motion to dismiss is final.

Plaintiffs consent to the request for a stay, and take the position that 18 U.S.C. § 2336(b) requires a stay of Halkbank's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Zarrab consents to a stay pending the completion of the Criminal Proceedings against him.[2]

Accordingly, because neither the Plaintiffs, Zarrab, nor Halkbank oppose the stay, except with respect to the pending motions to dismiss, there can be no prejudice to any party from a stay.

---

[2] Zarrab has not yet answered the Complaint and no counsel has entered an appearance on his behalf in this action. Based on the Government's discussions with Zarrab's criminal counsel, we understand that he also consents to the requested stay. Counsel for Plaintiffs have, in addition to their consent to the requested stay, agreed effectively to extend Zarrab's time to answer by committing not to seek a default judgment against Zarrab and to consent to a motion to vacate any default judgment entered against Zarrab while this motion is pending. Counsel for Halkbank has similarly advised that they do not object to staying Zarrab's time to respond to the Complaint.

### 4.      The Interests of the Court

The interests of the Court weigh in favor of a stay. Given the factual overlap between the civil and criminal cases, allowing the criminal matter to be resolved in the first instance may result in a narrowing of the factual and legal issues in the civil proceedings. *See Volmar Dist., Inc.*, 152 F.R.D. at 40. Accordingly, the interests of judicial economy are better served by the stay the Government seeks. Moreover, permitting any discovery to proceed in this lawsuit may afford Halkbank with a broader array of discovery than it is entitled to in the criminal case, such as witness deposition testimony. *See Johnson*, 2003 WL 21664882, at *2 ("[T]he civil action, if not stayed, might . . . expand the rights of discovery beyond the limits of the state's criminal procedure law, expose the basis of the defense to the prosecution, or otherwise prejudice the criminal case.").

### 5.      The Public Interest

The civil proceedings are likely to significantly interfere with the criminal proceedings. Particularly in light of the complete overlap of the factual allegations in the Complaint with those at issue in the prosecution, the civil proceedings are likely to result in discovery proceedings relating to witnesses who testified at the *Atilla* trial and who are likely to testify at the Halkbank trial; and potentially discovery requests directed at the Government. On March 26, 2024, counsel for Plaintiffs delivered requests pursuant to 18 U.S.C. § 2336(b), 28 C.F.R. §§ 16.21 – 16.29, and *Touhy v. Ragan*, 340 U.S. 462 (1951), to the Government seeking records regarding the investigation of Halkbank and others.[3]

Discovery proceedings relating to the Government's records, witnesses, and potential witnesses will substantially interfere with the prosecution. *See, e.g.*, *SEC v. Beacon Hill Asset*

---

[3] As noted above, Plaintiffs' position is that, pursuant to § 2336(b), a stay of discovery also requires a stay of Halkbank's motion pursuant to Rule 12(b)(6) because Plaintiffs seek to discover the investigative files of the Government.

*Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (granting government's motion to stay and noting the "principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'") (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952)); *Nicholas*, 569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

The civil proceedings also create risks for the safety of witnesses. As described above, Zarrab has cooperated with the Government and testified at Atilla's trial. In response to that cooperation, Turkish officials retaliated against and sought to intimidate Zarrab by seizing assets, commencing Turkish criminal proceedings, and taking actions against his family members and associates.[4] (Crim. D.E. 416 (Trial Tr. 1046-49)). That Zarrab's status as a witness is already

---

[4] Another witness at the Atilla trial, a former Turkish law enforcement officer, offered similarly compelling testimony about the retaliation he suffered as a result of his role in an investigation of

publicly known does not eliminate these risks, and the Government assesses that there are serious risks to Zarrab's safety and security resulting from his status as a witness persist. For example, Halkbank has moved to unseal the Plaintiffs' proof of service of the Complaint on Zarrab, which risks disclosure to Halkbank and to the public (including the Government of Turkiye) of details regarding Zarrab's residence and person, increasing the risks to his safety. Additional personal information about Zarrab would likely be disclosed in the course of civil discovery, which would also pose risks to his security.

### 6. A Stay is Warranted Under 18 U.S.C. § 2336

A stay is further warranted under 18 U.S.C. § 2336(c), which provides that the Attorney General may intervene in any civil action under § 2333 (as these proceedings are) and seek a stay. Section 2336(c)(1) further provides that the stay "shall be granted if the court finds that the continuation of the civil action will substantially interfere with a criminal prosecution which involves the same subject matter and in which an indictment has been returned," for six months, which can be renewed in additional six-month increments "until the criminal prosecution is completed or dismissed." As described above, the continuation of this action will substantially interfere with the *Halkbank* prosecution, the matters involve the same subject matter, and an indictment has been returned. A stay is thus required under the plain language of § 2336(c)(1).

---

Halkbank and its co-conspirators for some of the same conduct underlying the charges in the S6 Indictment. *See, e.g.*, Crim. D.E. 420 & 426 (Trial Tr. 1378-84, 1390-91, 1782-84, 1793-94, 1833-37).

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court (i) permit the Government to intervene in this action, and (ii) enter an Order staying these proceedings until the criminal proceedings against Halkbank have concluded. A proposed Order is annexed hereto.

Dated: April 8, 2024
      New York, New York

DAMIAN WILLIAMS
United States Attorney

By: _____
      Michael D. Lockard
      Jonathan Rebold
      Assistant United States Attorneys
      (212) 637-2193 / -2512

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                            :

DANIEL HUGHES, et al.,               :
                                              :

                       Plaintiff,        :          23 Civ. 6481 (MKV)
                                              :

     - v. -                               :
                                              :

TURKIYE HALK BANKASI, A.S., et al.,   :
                                              :

                       Defendant.      :
                                              :
------------------------------------------------------------------x

WHEREAS, the United States of America (the "Government") has requested to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure; and

WHEREAS, the Government has requested the stay of all proceedings in this action until the conclusion of criminal proceedings against Turkiye Halk Bankasi, A.S. and Reza Zarrab, 15 Cr. 867 (RMB) (S.D.N.Y.) (the "Criminal Proceedings");

WHEREAS, there is considerable overlap between this matter and the Criminal Proceedings; there is no prejudice to the parties from the requested stay; there is a strong public interest in preventing the civil discovery rules from being used to improperly obtain discovery in the criminal case; judicial economy is ensured from the requested stay; and

WHEREAS, the Court having found that good cause exists allow the Government to intervene and for a stay of proceedings in this action during the pendency of those criminal proceedings;

IT IS HEREBY ORDERED THAT:

1.     All proceedings in this action shall be stayed until further Order of this Court [except the pending motion at docket entries 31 through 36, including any appeal therefrom]

[except that the Court shall stay its decision on the motion pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure].

                            SO ORDERED.


Dated:  April ___, 2024
       New York, New York                     _____
                                     HON. [                         ]
                                     UNITED STATES DISTRICT JUDGE